**No. 23-4044**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
_____

RODOLFO T. ASUNCION,

Plaintiff-Appellant,

v.

THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,

Defendant-Appellee.

_____

On Appeal from the
United States District Court for the District of Hawaii
CV-23-00119 LEK-KJM (The Honorable Leslie E. Kobayashi)

---

**BRIEF OF APPELLANT**

---

Shawn A. Luiz, Esq.
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
(808) 538-0500 Telephone
(808) 564-0010 Facsimile
Attorneyluiz@gmail.com

Attorney for Plaintiff-Appellant
RODOLFO T. ASUNCION

## INDEX

I.      STATEMENT OF JURISDICTION………..............…..........……........1

II.     ISSUE PRESENTED……....................………………….…...…......2

III.    REVIEWABILITY AND STANDARD OF REVIEW………................2

IV.     STATEMENT OF THE CASE……………....…………….............…...3

V.      STATEMENT OF FACTS……………………........................................4

VI.     SUMMARY OF THE ARGUMENT………………………….…….......9

VII.    ARGUMENT …………………………...………………………...........9

VIII.   CONCLUSION AND SUMMARY OF REQUESTED RELIEF...…29

IX.     CERTIFICATE OF COMPLIANCE………………………….…30

X.      STATEMENT OF RELATED CASES……………………...….…..30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)....................................16

*Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).............24

*Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994)...............................................3

*Bowden v. United States*, 323 U.S. App. D.C. 164, 106 F.3d 433, 437 (D.C. Cir.

1997)............................................................................................22

*Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011).......................22

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837,

104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)...............................................................20

*Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 411 (7th Cir. 1989)..............22

*Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003)....................22

*Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991)..................................3

*Garcia-Quintero v. Gonzales,* 455 F.3d 1006, 1011-1012 (9th Cir. 2006).............20

*Hernandez v. Spacelabs Med. Inc., 3*43 F.3d 1107, 1108-09, 1112 (9th Cir. 2003).

...................................................................................................................................3

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008)...................................................16

*Lynn v. W. Gillette, Inc.,* 564 F.2d 1282, 1286 n.3 (9th Cir. 1977)........................12

*Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003)....................................................................................26

*Matsushita Elec. Indus. Co*., 475 U.S. at 587........................................17

*Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 380 (5th Cir. 2019)……......25

*McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, \*11-12*.............................................................................*23, 24*

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008)....................................................................................17

*Simmons v. Peavy—Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)...........24

*Thermo Credit, LLC v. Cordia Corp.*, No. 12-1454, 2013 U.S. Dist. LEXIS 14671, 2013 WL 425930, at \*6 (E.D. La. Feb. 4, 2013).....................................................24

*Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1284 (9th Cir. 1993)................22

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)....................................................................................24

*Walker v. Tyson Foods Inc*., 723 F. App'x 387, 388 (8th Cir. 2018)...............12, 21

*Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 134 L. Ed. 2d 209, 116 S. Ct. 1261 (1996).........................................................3

*Wyatt v. Terhune*, 315 F.3d 1108, 1117-18 (9th Cir. 2003)...................................22

*United States v. Georgia-Pacific Co*., 421 F.2d 92, 96 (9th Cir. 1970)................25

## Statutes

28 U.S.C. Section 1291................................................................1

28 U.S.C. Section 1331................................................................1

28 U.S.C. Section 2107(a).............................................................2

29 U.S.C. § 794a(a)(1)................................................................20

42 U.S.C. § 1981a....................................................................1

42 U.S.C. Section 2000e et seq........................................................1

42 U.S.C. § 2000e-2..................................................................21

42 U.S.C. § 2000e-3..................................................................21

42 U.S.C. § 2000e-5..................................................................21

42 U.S.C. § 2000e-5(f)(1)........................................................13, 21, 22

42 U.S.C. § 2000e-16(c).............................................................22

Title VII of the Civil Rights Act of 1964 (Title VII)..................................1

## Regulations

29 CFR 1614........................................................................25

29 C.F.R. § 1614.407................................................................22

29 C.F.R. § 1614.407(a)..........................................................21,22

## Rules

Federal Rules of Appellate Procedure, Rule 4(a)(1)....................................2

Federal Rule of Civil Procedure, Rule 54.............................................1

Federal Rule of Civil Procedure, Rule 56(a)............................................................16

Federal Rule of Civil Procedure, Rule 59 (e)............................................................1

Federal Rule of Civil Procedure Rule 60(b)............................................................3

Ninth Circuit Rule 28-2.2............................................................1

## I.     STATEMENT OF JURISDICTION

Pursuant to Ninth Circuit Rule 28-2.2, Plaintiff-Appellant Rodolfo T. Asuncion, Jr. ("Asuncion") submits the following statement of jurisdiction:

a.     The United States District Court for the District of Hawaii ("the District Court") had subject matter jurisdiction over this action against Defendant-Appellee, The Honorable Lloyd J. Austin, III, Secretary of Defense, ("Austin"), pursuant to 28 U.S.C. Section 1331 and title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e et seq. and 42 U.S.C. § 1981a.

b.     The District Court entered final judgment ("entitled, Clerk's Judgment in a Civil Case" ["Clerk's Judgment"]) on all claims for relief in the underlying action on 10/31/2023 (Excerpts of Record ["ER"] 1; D.C. Doc No. 23).  The District Court's judgment is final under Federal Rule of Civil Procedure 54 and this Honorable Court has jurisdiction pursuant to 28 U.S.C. Section 1291.

c.     Asuncion appeals from the (1) "CLERK'S JUDGMENT" entered on 10/31/2023 (ER 1; D.C. Doc No. 23); the (2) Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial Summary Judgment on 09/14/2023 (ER 4; D.C. Doc No. 20); and the Court Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 10/11/2023 (ER 2; D.C. Doc No. 22).

d.     Asuncion's Notice of Appeal from the Clerk's Judgment was filed on

10/31/2023 (ER 1; D.C. Doc No. 23) and is timely pursuant to 28 U.S.C. Section

2107(a) and Federal Rules of Appellate Procedure 4(a)(1).

## II.    ISSUE PRESENTED

A.     Did the District Court commit legal error when the District Court

instructed the Clerk of the Court to close the case [enter "CLERK'S

JUDGMENT"] on 10/31/2023?

B.     Did the District Court commit legal error when the District Court

entered "the Order Granting Defendant's Motion to Dismiss Complaint [ECF NO.

1], or in the Alternative for Partial Summary Judgment on 09/14/2023?

C.     Did the District Court commit legal error when the District Court

entered "Court Order Denying Plaintiff's Motion for Reconsideration of the Order

Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the

Alternative for Partial Summary Judgment, Filed 10/11/2023?

## III.   REVIEWABILITY AND STANDARD OF REVIEW

Asuncion contends that the District Court erred when the District Court

entered the "Order Granting Defendant's Motion to Dismiss Complaint [ECF NO.

1], or in the Alternative for Partial Summary Judgment on 09/14/2023 (ER 4; D.C.

Doc No. 20).

A district court's ruling that a Title VII action is barred by the statute of limitations is reviewed de novo. <u>See</u> *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1108-09, 1112 (9th Cir. 2003). A district court's grant of summary judgment is also reviewed *de novo*. *Id.* <u>See also</u>, *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 134 L. Ed. 2d 209, 116 S. Ct. 1261 (1996). The appellate court must determine, ***viewing the evidence in the light most favorable to the nonmoving party***, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

Asuncion further contends that the District Court erred when the District Court entered the "Court Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 10/11/2023 (ER 2; D.C. Doc No. 22).

A denial of a motion for reconsideration under Rule 59(e) is construed as one denying relief under Rule 60(b) and will not be reversed absent an abuse of discretion. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991).

## IV.   STATEMENT OF THE CASE

Asuncion filed his Complaint on March 3, 2023. [Dkt. no. 1.]

On June 6, 2023, Austin filed Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment ("Motion"). [Dkt. no. 8.]

On July 18, 2023, Asuncion filed his memorandum in opposition to the Motion. [Dkt. no. 14.]

On July 25, 2022, Defendant filed his reply. [Dkt. no. 16.]

The District Court entered the Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial Summary Judgment was entered on 09/14/2023 (ER 4; D.C. Doc No. 20).

Asuncion then moved for reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial Summary Judgment.

The District Court entered the Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 10/11/2023 (ER 2; D.C. Doc No. 22). The District Court entered final judgment ("entitled, Clerk's Judgment in a Civil Case" ["Clerk's Judgment"]) on all claims for relief in the underlying action on 10/31/2023 (ER 1; D.C. Doc No. 23)

This appeal follows.

## V.    STATEMENT OF FACTS

Asuncion filed his Complaint on March 3, 2023. [ER, Tab 6, Dkt. No. 1].

Asuncion served in the National Guard and during his service he was deployed to

Iraq. [*Id*. at ¶¶ 24, 31]. Asuncion was a Defense Logistics Agency ("DLA")

civilian employee for thirty years. DLA is a part of the United States Department

of Defense ("DOD"). [*Id*. at ¶¶ 2–3]. Asuncion "is a handicapped person within the

meaning of the Rehabilitation Act of 1973 [('the Rehab Act')] by reason of his

impairments that makes it difficult and burdensome for [him] to complete his work

tasks without a reasonable accommodation." [*Id*. at ¶ 6]. (ER 6; D.C. Doc No. 1).

Asuncion's direct supervisor was Colleen R. Weaver ("Weaver"). [*Id*. at ¶

8]. Before Weaver became his direct supervisor, previous direct supervisors

"informally reasonably accommodated [Asuncion's] qualifying disabilities... on an

'as needed' basis." [Id. at ¶ 14]. (ER 6; D.C. Doc No. 1).

After Weaver became Asuncion's direct supervisor, Weaver implemented

informal policies that failed to reasonably accommodate his handicap. *Id*. at ¶¶ 16-

19. (ER 6; D.C. Doc No. 1).

After Weaver learned about Asuncion's disability, he informed Weaver that

he previously provided the required paperwork to the former director and

supervisor.  Although Weaver asserted, she never received the paperwork

establishing Asuncion's disability, Asuncion stated that, the paperwork is in

Asuncion's Electronic Official Personnel File ("EOPF"). *Id*. at ¶¶ 22–27. (ER 6;

D.C. Doc No. 1).

In one alleged incident, Weaver asked Asuncion about his disability when

Asuncion asked her for assistance with a task and Weaver told Asuncion to do it

himself. Asuncion informed Weaver that the noise from the machine needed to

perform the task negatively impacts his post-traumatic stress disorder ("PTSD").

*Id*. at ¶¶ 28–31. Weaver asked Asuncion for documentation regarding his disability

"instead of checking for a record of [his] impairments and informal reasonable

accommodation." [*Id*. at ¶ 32.] Weaver "then directed [Asuncion]'s colleague to

assist him." [*Id*. at ¶ 33.] In February 2019, during a site visit from Mark Shadinger

("Shadinger") – a Production Manager and Asuncion's third-level supervisor –

Asuncion told Shadinger about his PTSD. Shadinger asked Asuncion for verifying

paperwork, and Asuncion told Shadinger that he provided the paperwork to

pervious management. According to Shadinger, he was not able to find any

previous paperwork in Asuncion's file. *Id*. at ¶¶ 34–36. (ER 6; D.C. Doc No. 1).

Asuncion alleged he asked Weaver for a reasonable accommodation when

he requested a desk and a wagon to help him with organization. Weaver denied his

request. Id. at ¶¶ 52–53. Weaver falsely claimed that Asuncion created a hostile

work environment for her. Weaver made hostile and derogatory statements about

disabled veterans to Asuncion. *Id*. at ¶¶ 58–59. On December 17, 2019, Weaver

asked Asuncion if he was carrying any weapons or illegal drugs. *Id*. at ¶ 70.

In December 2019, Asuncion filed an Equal Employment Opportunity

("EEO") claim on the basis of disability discrimination. *Id*. at ¶ 76. (ER 6; D.C.

Doc No. 1).

On February 11, 2020, Weaver called base police on Asuncion, but the

police did not find him "to be a danger to the health and safety of himself or

others." [Id. at ¶ 71–72.] On March 2, 2020, Weaver and Shadinger berated

Asuncion for "jump[ing] the chain of command with his complaints." [*Id*. at ¶ 73.]

On September 14, 2020, Weaver informed Asuncion that he did not receive an

annual cash or time-off award because he was rated poorly on his performance

evaluations, although his performance evaluations showed positive ratings. *Id*. at ¶

74 & n.3. (ER 6; D.C. Doc No. 1).

On December 10, 2020, DLA issued a written acknowledgment that

Asuncion could file a formal complaint. On February 21, 2021, Asuncion was

placed on paid administrative leave without details of any alleged misconduct. Id. ¶

77, ¶ 78 & n.4. On February 26, 2021, Asuncion's access to classified information

was suspended because a report of investigation allegedly substantiated claims that

Asuncion made threatening statements at work in December 2019, January 2020,

and March 2020. *Id*. at ¶¶ 81, 86. On March 16, 2021, Asuncion was placed on an

7

indefinite suspension without pay. On April 21, 2021, Asuncion received a Notice

of Decision Indefinite Suspension (Non-Disciplinary), which was his official

notice that he was placed on indefinite suspension without pay for a failure to

maintain access to classified and sensitive information. *Id*. at ¶ 88. (ER 6; D.C.

Doc No. 1).

A final agency decision relating to Asuncion's EEO complaint was issued on

November 4, 2022. *Id*. at ¶ 4. (ER 6; D.C. Doc No. 1).

Asuncion alleged a discrimination claim against Defendant for a failure to

provide meaningful and effective accommodations in violation of Section 504 of

the Rehab Act. Id. at ¶ 110. (ER 6; D.C. Doc No. 1).

The events sufficed to make out a Title VII claim that should have

proceeded beyond summary judgment, however the Court found otherwise based

on Appellee raising an affirmative defense of the statute of limitations, despite its

FAD that contained contrary language to the Appellee's newly stated position in its

moving papers in support of Summary Judgment.  See ER, Tab 3 at page 45.

Despite the plain and unambiguous language found in the DLA's FAD (See ER,

Tab 3 at page 45), the District Court entered the Order Granting Defendant's

Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial

Summary Judgment was entered on 09/14/2023 (ER 4; D.C. Doc No. 20).

After Asuncion moved for reconsideration, the District Court entered the Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 10/11/2023 (ER 2; D.C. Doc No. 22).

The District Court entered final judgment ("entitled, Clerk's Judgment in a Civil Case" ["Clerk's Judgment"]) on all claims for relief in the underlying action on 10/31/2023 (ER 1; D.C. Doc No. 23)

This appeal follows.

## VI.    SUMMARY OF THE ARGUMENT

The trial court committed reversible error when it granted Austin's Motion to Dismiss, or in the Alternative for Summary Judgment based on the facts of this case, and the evidence submitted in opposition to the motion and the legal authority on point and binding on the trial court.

The District Court abused its discretion when it denied Asuncion's Motion for Reconsideration as the District Court overlooked important facts and law thereby prejudicing Plaintiff in plain error.

## VII. ARGUMENT

### A. The District Court erroneously granted summary judgment in this matter.

As noted in the Complaint filed March 3, 2023, Asuncion's Counsel received the Final Agency Decision on December 4, 2022, which was dated November 4,

2022, due to being unable to access the document earlier through the DODSafe (DLA Case Number DLAF-20-0424) due to an encryption. DLA ultimately emailed Asuncion's counsel an unencrypted version on December 4, 2022. **See ER, Tab 6, pp. 133-134**.

Asuncion's Counsel therefore properly pled in the March 3, 2023, Complaint that "Within 90 days prior to the filing of the Complaint, Plaintiff was issued and received a Notice of Right to File a civil action in an appropriate United States District Court with respect to Plaintiff's charges as set forth below (Final Agency Decision)." **See ER, Tab 6, pp. 133-134**.

In Opposing Appellee's Motion to Dismiss/MSJ, Asuncion and his counsel of record submitted sworn declarations and evidence (emails) establishing that both Asuncion and his counsel of record were unable to access the previously encrypted FAD, and it was not until the FAD was emailed unencrypted, that Asuncion and his counsel of record were able to access the FAD, read it and determine if the FAD was in favorable or unfavorable in order to proceed with drafting and filing a complaint. **See Tab 5, p. 80-129.** Because Appellee had sole possession and control of the FAD and only sent it in an encrypted format that both Asuncion and his counsel of record were unable to access it is patently unreasonable to include the time period from November 8, 2022, until December 4, 2022, in the 90-day calculation of a timely filed Complaint.

Asuncion's counsel inquired whether December 5, 2023, would be the first day to include in the calculation of the 90-days and it appeared to be confirmed by Appellee's agent based on the response to Asuncion's inquiry on the subject. The appellee's agent cited 29 CFR 1614, and stated, "Good morning Attorney Luiz, according to 29 CFR 1614, *the time starts when you as the Attorney received the FAD*. We will not issue a new COS since we have proof you received the FAD via email. A copy will be placed in the complaint file. Thank you Kimberly R. Lewis." **See** Tab 5, p. 80-129.  *Importantly, Lewis' email stated the time starts upon receipt of the FAD, not receipt of notice of the FAD. The encrypted version was never received as it could not be downloaded and opened. Only the unencrypted version was received and that was on December 4, 2022, not November 8, 2022.*

It is preposterous to hold Asuncion to the November 8, 2022, date in the calculation of the 90-days in filing in federal court as Asuncion and his Counsel could not open the encrypted file and read what it said. The Appellee's argument smacked of gamesmanship and put form over substance. Suppose the Agency mailed a blank FAD with no writing on it, or an envelope with nothing in it, or another case's FAD? Should Asuncion be bound by the date the unusable FAD was mailed and received by counsel or should it be when a properly readable FAD was delivered to Appellant's counsel of record? The same happened with the Appellee choosing to email encrypted files that could not be accessed instead of

mailing it as it did the Record of Investigation in two voluminous volumes totaling

hundreds of pages. If large files could be mailed so could small files be mailed.

The District Court erred in placing all blame on Asuncion's counsel rather than on

the Appellee which caused the situation by choosing to send inaccessible encrypted

files. In equity, and balancing the blame, the district court erred in finding

Appellant's counsel more at fault than Appellee's agent who had control and

possession of the FAD and choose the manner and time in which it was to be

transmitted to Asuncion and his counsel.

     The District Court improperly dismissed Asuncion's action filed March 3,

2023. See *Lynn v. W. Gillette, Inc.*, 564 F.2d 1282, 1286 n.3 (9th Cir. 1977) ("It is

the receipt of a Right to Sue letter, not its dispatch, which sets the beginning of

ninety-day period."); See, e.g., *Walker v. Tyson Foods Inc.,* 723 F. App'x 387, 388

(8th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1))(Despite the wording of the

statute, which provides that "within ninety days after the giving of such notice a

civil action may be brought" (emphasis added), the Eighth Circuit has described 42

U.S.C. § 2000e-5(f)(1) as requiring a plaintiff to file a civil action within ninety

days after receipt of a right-to-sue letter from the EEOC.)

     The District Court's decision shows the timeline of the inaccessible

encrypted FAD to the accessible FAD and the dialog between the Appellee's agent

and Asuncion's counsel that led to Asuncion's reasonable belief that December 5,

2023, should have been the first day to include in the 90-day calculation in which

to file in federal court:

> The November 4, 2022 FAD was transmitted via email to Asuncion and Asuncion's counsel – Shawn A. Luiz, Esq. – on November 8, 2022. See Somerville Decl., Exh. B (CUI Certificate of Service); see also id., Exh. C (email dated 11/8/22 to Somerville confirming the FAD was successfully sent to Asuncion and Mr. Luiz); id., Exh. D (email, dated 11/8/22, from Somerville to Asuncion and Mr. Luiz, transmitting the passphrase to access the encrypted file where the FAD was located).

> On November 11, 2022, Mr. Luiz emailed Somerville stating that he could not access the encrypted file to retrieve the FAD and asked for it to be resent in a different format. See Asuncion's concise statement in opposition to the Motion, filed 7/18/23 (dkt. no. 15) ("Asuncion's CSOF"), Decl. Of Counsel ("Luiz Decl."), Exh. 1 (compilation of emails to or from Mr. Luiz regarding the FAD) at PageID.198. On November 14, 2022, Somerville emailed Mr. Luiz stating that the file expired, and he would resend a file. See id. at PageID. 200. Somerville emailed Asuncion and Mr. Luiz another passphrase to access the encrypted file for the FAD on November 14, 2022. See id. At PageID.203. Mr. Luiz replied to Somerville later that same day stating he still could not access the file. See id. At PageID.206, PageID.208.

> On November 21, 2022, Mr. Luiz emailed Somerville stating that he could not open the file and requesting that the FAD be sent through the United States mail. See id. at PageID.210. On December 3, 2022, Mr. Luiz emailed Kimberly Lewis ("Lewis") [Footnote 2: Lewis is the Deputy Director of DLA's Equal Employment Opportunity and Diversity and Inclusion Office. See, e.g., Luiz Decl., Exh. 2 at PageID.218.] and Somerville stating that he had not been able to open the FDA file and requesting that it be sent in a non-encrypted PDF format. See id., Exh. 2 (additional compilation of emails that Mr. Luiz sent or received) at PageID.217. Also on December 3, 2022, Mr. Luiz emailed Bruce McCarty – DLA's General Counsel – asking for a copy of the FDA. See id., Exh. 3 (email from Mr. Luiz to Bruce McCarty dated 12/3/22, forwarding Mr. Luiz's 12/3/22 email to Lewis and Somerville).

> On December 5, Lewis replied to Mr. Luiz, sending a copy of the FAD, and Lewis asking him to acknowledge its receipt. [Id., Exh. 2 at PageID. 218.] Later that same day, Mr. Luiz replied to Lewis confirming receipt of the FAD and asking Lewis to confirm that the statutory timelines to address the FAD would start on

December 5, 2022. See id. at PageID.221. Mr. Luiz emailed Lewis again on
December 13, 2022 asking her to address the question he asked in the December 5,
2022 email. See id. at PageID.225. On December 14, 2022, Lewis replied to Mr.
Luiz stating that, under 29 C.F.R. § 1614, the time begins to run when Mr. Luiz
received the FAD and would not issue a new certificate of service. See id. at
PageID.224. On December 15, 2022, Mr. Luiz replied to Lewis's email with
"[t]hank you!"
[Id. at PageID.229.]

Asuncion also attempted to open the encrypted files when they were sent in
November, but he states he was unable to open them. [Asuncion CSOF, Decl. of
Rodolfo T. Asuncion, Jr. At ¶ 5.] Asuncion also states that DLA sent him copies of
the Record of Investigative file through the United States mail, and he does not
understand why DLA did not mail a copy of the FAD. [Id. at ¶ 9.]

See ER, Tab 4 at pp. 60-62.

In the Motion for Reconsideration, Asuncion's counsel also attached as

Exhibit "1" are true and correct copy of the FAD and provided more detail in

support of having the District Court reconsider its Order Granting Appellee's

Motion to Dismiss/For Summary Judgment. **See ER Tab 3 at pp. 12**:

3. Attached as Exhibit "1" are true and correct copy of the FAD.
4. On page 30 it states, "In lieu of an appeal to EEOC, CP may file a civil
action in an appropriate U.S. District Court within 90 calendar days of receipt of
the final Agency decision."
5. It also states on page 30 to name Llyod Austin as the proper defendant
rather than the head of the DLA which is who I would normally name in a lawsuit
involving a federal defendant.
6. I point this out to show this Honorable Court that I followed both of these
directions on page 30 of the FAD in filing the complaint in addition to the federal
regulation.
7. Declarant respectfully requests that Plaintiff's Motion for Reconsideration
be granted based upon page 30 of the FAD decision which directed Plaintiff to file
his lawsuit within 90 days of receipt of the FAD decision and to name Llyod
Austin as the proper defendant rather than the head of the DLA.
ER Tab 3 at pp. 12:

Despite Asuncion showing clear errors leading to manifest injustice, the

District Court denied Asuncion's Motion for Reconsideration. **See ER Tab 2, p. 7-**

**9:**

Asuncion argues that there were clear errors in the 9/14 Order and that reconsideration is necessary to prevent manifest injustice. See Motion for Reconsideration at 3. He contends that reconsideration should be granted because:

1) in filing this action, he complied with the directions on page 30 of the CUI Final Agency Decision of the Defense Logistics Agency in the Discrimination Complaint of Rodolfo Asuncion (DLAF-21-0424) ("FAD"); [id. at 4;]

2) even if this action was filed after the ninety-day filing period, equitable tolling applies because the misleading statements in the FAD induced Asuncion into allowing the deadline to pass; [id. at 4-6 (citing Coke v. General Adjustment Bureau, Inc., 640 F.2d 584, 595-96 (5th Cir. 1981); Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 95–96 (1990));] and

3) this Court erred in ruling that the ninety-day filing period began to run when Plaintiff received the FAD because he was unable to open and review the FAD and the email transmitting the FAD did not indicate who prevailed, [id. at 7-10 (citing Lynn v. W. Gillette, Inc., 564 F.2d 1282, 1283-86, 1288 (9th Cir. 1977); Plunkett v. Roadway Express, Inc., 504 F.2d 417, 417 (10th Cir. 1974); Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 242 (D.D.C. 2015))].

Arguments 2 and 3 were raised in the underlying motion and rejected by this Court in the 9/14 Order. Plaintiff merely disagrees with this Court's ruling, and his mere disagreement is not grounds for reconsideration. See Fisher, 49 F. Supp. 3d at 735.

Argument 1 was not raised in the underlying motion and, as to Arguments 2 and 3, Plaintiff relies on additional case law that was neither cited in connection with the underlying motion nor discussed in the 9/14 Order. However, this Court will not grant reconsideration based on arguments that could have been raised in connection with the underlying motion. See Streamline Consulting Grp. LLC v. Legacy Carbon LLC, CIVIL NO. 15-00318 SOM/KSC, 2016 WL 1064444, at *1 (D. Hawai`i Mar. 16, 2016) ("This court has denied motions seeking reconsideration of orders based on evidence and/or legal arguments that the party seeking reconsideration could have raised in connection with an original motion."

(citation omitted)). Morever, even this Court considered these additional arguments, they would not alter the analysis and the rulings in the 9/14 Order.

Because Asuncion has not presented any ground that warrants reconsideration of the 9/14 Order, his Motion for Reconsideration is DENIED. The Clerk's Office is DIRECTED to enter final judgment and close the case immediately, pursuant to the 9/14 Order.

IT IS SO ORDERED.
**See ER Tab 2, p. 7-9:**

Summary judgment is only proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; see also *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor".

In this case, the District Court failed to believe the evidence of Asuncion and properly draw all reasonable inferences on behalf of Asuncion, the non-moving

16

party. See *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; see also *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor".

        In this case, the Appellee sent via email an encrypted document that Counsel for Asuncion and Asuncion himself were unable to open and access. It is untenable to count the 90-days statute of limitations from notice of a FAD rather than being able to read the decision. For example, if Asuncion prevailed in the FAD, there would be no reason to file a suit because the Agency would then have 45-days to accept or reject that decision. Moreover, the Court's ruling contravenes the plain and unambiguous language of the FAD on page 30 of the FAD and puts form over substance.

        Moreover, the Appellee failed to disclose in its motion to the Court that the FAD stated Asuncion had 90-days to file in District Court from receipt of the FAD rather than giving notice to Asuncion that Asuncion had 90-days to file in District Court from being given mere notice of the FAD. In the Motion, the Appellee conversely argued that only notice was required not actual receipt as the FAD clearly stated. ("Defendant argues the Complaint is untimely because it was not filed within ninety days after the FAD was received.: ER, Tab 4 (Motion, Mem. in Supp. at 15–18). Compare ER, Tab 3, page 30:

The Final Agency Decision Itself States on page 30:

Filing a Civil Action:
In lieu of an appeal to EEOC, CP may file a civil action in an appropriate U.S. District Court **within 90 calendar days of receipt of the final Agency decision**.
If an appeal to EEOC is filed, a civil action may be filed in an appropriate U.S. District Court **within 90 calendar days of receipt of EEOC's final decision**...
See ER, Tab 3, page 41 (p. 30 on the FAD, itself).
Asuncion properly contended before the District Court that he and his

counsel were unable to open the FAD until December 5, 2022, and therefore the

Complaint is timely because that was the date that the filing window began. See,

ER, Tab 4, e.g., Mem. in Opp. at 5-6.

Asuncion also argued before the District Court that, even if the filing

window began earlier than December 5, 2022, the deadline for filing of the

Complaint should be equitably tolled. See. ER, Tab 4, e.g., Mem. in Opp. at 10.

The November 4, 2022, FAD was transmitted via email to Asuncion and

Asuncion's counsel on November 8, 2022.  See Order, ER Tab 4, p. 7. On

November 11, 2022, Asuncion's counsel emailed Somerville stating that he could

not access the encrypted file to retrieve the FAD and asked for it to be resent in a

different format. Id. On November 14, 2022, Somerville emailed Asuncion's

counsel stating that the file expired, and he would resend a file. Somerville emailed

Asuncion and Asuncion's counsel another passphrase to access the encrypted file

for the FAD on November 14, 2022.  Id. Asuncion's counsel replied to Somerville later that same day stating he still could not access the file. Id. At 7-8.

On November 21, 2022, Asuncion's counsel emailed Somerville stating that he could not open the file and requesting that the FAD be sent through the United States mail. Id. At 8. On December 3, 2022, Asuncion's counsel emailed Kimberly Lewis ("Lewis") and Somerville stating that he had not been able to open the FDA file and requesting that it be sent in a non-encrypted PDF format. Also on December 3, 2022, Asuncion's counsel emailed Bruce McCarty – DLA's General Counsel – asking for a copy of the FDA. Id. On December 5, Lewis replied to Asuncion's counsel, sending a copy of the FAD, and Lewis asking him to acknowledge its receipt. Later that same day, Asuncion's counsel replied to Lewis confirming receipt of the FAD and asking Lewis to confirm that the statutory timelines to address the FAD would start on December 5, 2022. Id. Asuncion's counsel emailed Lewis again on December 13, 2022 asking her to address the question he asked in the December 5, 2022 email. Id. At 8-9.

On December 14, 2022, Lewis replied to Asuncion's counsel stating that, under 29 C.F.R. § 1614, the time begins to run when Asuncion's counsel received the FAD and would not issue a new certificate of service. Id. at 9. On December 15, 2022, Asuncion's counsel replied to Lewis's email with "[t]hank you!". Id. At 9.

19

Asuncion also attempted to open the encrypted files when they were sent in November, but he states he was unable to open them. Asuncion also states that DLA sent him copies of the Record of Investigative file through the United States mail, and he does not understand why DLA did not mail a copy of the FAD. Id.

The Rehabilitation Act states that claims under the Act are governed by the same rights and procedures available in Title VII employment discrimination cases against federal defendants. 29 U.S.C. § 794a(a)(1). 42 U.S.C. § 2000e-5(f)(1) states that civil actions be filed "within ninety days after the [agency's] giving of [final decision] notice."

The implementing regulations state that such a civil action must be brought "[w]ithin 90 days of receipt of the agency final action..." 29 C.F.R. § 1614.407(a).

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), the Supreme Court established a two-pronged framework for judicial review of an administrative agency's interpretation of the statutes and regulations that it administers:

If congressional intent is clear, both the court and the agency must give effect to the unambiguously expressed intent of Congress. If, however, Congress has not directly addressed the exact issue in question, a reviewing court must defer to the agency's construction of the statute so long as it is reasonable.

*Garcia-Quintero v. Gonzales,* 455 F.3d 1006, 1011-1012 (9th Cir. 2006).

20

The Equal Employment Opportunity Commission (EEOC) is an agency of the federal government, created by the Civil Rights Act of 1964 (Title VII). The purpose of the EEOC is to interpret and enforce federal laws prohibiting discrimination. See 42 U.S. Code § 2000e–5

42 U.S. Code § 2000e–5 - Enforcement provisions
(a) POWER OF COMMISSION TO PREVENT UNLAWFUL EMPLOYMENT PRACTICES
The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title.
Accordingly, the EEOC's interpretation of Title VII in order to effectuate the purpose of Title VII to prevent unlawful employment practices is entitled to deference.

The Eighth Circuit has described 42 U.S.C. § 2000e-5(f)(1) as requiring a plaintiff to file a civil action within ninety days after receipt of a right-to-sue letter from the EEOC. See, e.g., *Walker v. Tyson Foods Inc.,* 723 F. App'x 387, 388 (8th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)).

This reading of the statute is consistent with the implementing regulations, which provide that a plaintiff may bring a civil action "[w]ithin 90 days of receipt of the agency final action. . . ." 29 C.F.R. § 1614.407(a) (emphasis added). It is also consistent with the wording of § 2000e-16(c), which provides that a federal employee may bring a civil action "[w]ithin 90 days of receipt of notice of final action. . . ." 42 U.S.C. § 2000e-16(c) (emphasis added).

The Ninth Circuit has not explicitly ruled on the issue of what constitutes as "receipt" under 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1614.407.

The statute of limitations is an affirmative defense and the defendant bears [**7] the burden of proving that the plaintiff filed beyond the limitations period. *See Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1284 (9th Cir. 1993) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense."); *Wyatt v. Terhune*, 315 F.3d 1108, 1117-18 (9th Cir. 2003) ("[I]t is well-settled that statutes of limitations are affirmative defenses, not pleading requirements."). *See also Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) (holding that the burden to prove [*1123] expiration of statute of limitations, as an affirmative defense, rests on the employer); *Bowden v. United States*, 323 U.S. App. D.C. 164, 106 F.3d 433, 437 (D.C. Cir. 1997); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 411 (7th Cir. 1989) (stating that the defendant has burden of proof regarding its affirmative defenses in Title VII actions).

"Under Title VII, a plaintiff must bring suit within 90 days of receiving a right-to-sue-letter from the EEOC." *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011).

*In McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, *1-2,* the Plaintiff Debra McHenry worked as a file clerk at Kean Miller. ECF No. 1, at 10.

She filed an EEOC charge on September 28, 2021. *Id.* ¶ IV(A), at 7. Plaintiff further alleges that she received a right to [*2] sue notice on March 1, 2022 (*id.* ¶ IV(B)), and she attaches a copy of the EEOC's determination notice dated March 1, 2022 (*id.* at 8-9). The EEOC's determination notice reads, in pertinent part:

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice**. **Receipt generally occurs on the date that you (or your representative) view this document.** You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.

*McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, *1-2*

The 90-day limitation period is strictly construed, and it begins to run on the date that the EEOC right-to-sue letter is received.

*McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, *9*

Plaintiff's case is similar to *McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, *11-12*:

Although Plaintiff's *pro se* Complaint alleges that she received the EEOC's determination notice on March 1, 2022, *the evidence submitted in Opposition indicates that the EEOC did not email her notice of the posting to its portal of its March 1, 2022, determination letter until March 16, 2022*. *Based on a March 16, 2022, date, Plaintiff's June 1, 2022 filing is timely.* Further, even if consideration of the evidence attached to Plaintiff's [*12] opposition were not authorized, this Court would be obliged to grant Plaintiff leave to amend her complaint before dismissing it with prejudice under Rule 12(b)(6), which based on the documents provided, would enable her to allege receipt of the EEOC's determination notice on March 16, 2022, rendering her complaint timely.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Dismiss (ECF No. 7) is DENIED.

*McHenry v. Kean Miller LLP, 2022 U.S. Dist. LEXIS 173399, *11-12*

The FAD clearly shows that the Notice stated that Asuncion had 90 days from receipt of the decision, not 90 days from notice of the decision. The FAD, itself, must control the situation here, not the allegations by Appellee that the Notice was the date mere notice was provided to Asuncion. <u>See</u> *McHenry v. Kean Miller LLP*, 2022 U.S. Dist. LEXIS 173399, *7 ("Significantly, when an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls."). *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (stating that if an allegation is contradicted by contents of an exhibit, the exhibit and not the allegation controls) (citing *Simmons v. Peavy—Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)); *Thermo Credit, LLC v. Cordia Corp.*, No. 12-1454, 2013 U.S. Dist. LEXIS 14671, 2013 WL 425930, at *6 (E.D. La. Feb. 4, 2013) (considering documents referenced or attached to complaint and noting that a document that contradicts the pleading takes prominence) (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Moreover, and most importantly, both the Appellee in its FAD on page 30 (ER, Tab 3, page 45 (p. 30 on the document, itself)), Appellee said 30 days from receipt of the FAD not notice of the FAD. Lewis also confirmed this fact:

24

Lewis stated in her December 14, 2022, email that "[a]ccording to 29 CFR 1614 the time starts when you as the Attorney received the FAD." [Id.] ER, Tab 6 at 21.  Lewis specifically quotes the EEOC's implementing regulation interpreting the 90-day Statute of Limitations precisely the same way the EEOC does. The fact that Appellees have come into the litigation and taken an inconsistent position does not save Appellee from its earlier admission against interest. Notions of Equitable estoppel prevents Appellee from assuming inconsistent positions to the detriment of another party.

The Final Agency Decision itself, States on page 30 (**See ER at Tab 3, p. 45**):

> Filing a Civil Action:
> In lieu of an appeal to EEOC, CP may file a civil action in an appropriate U.S. District Court **within 90 calendar days of receipt of the final Agency decision**.
> If an appeal to EEOC is filed, a civil action may be filed in an appropriate U.S. District Court **within 90 calendar days of receipt of EEOC's final decision**...

**See ER, Tab 3, 45** (document itself page 30).

Appellee must be bound by its prior representations to Asuncion. "Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party. *United States v. Georgia-Pacific Co*., 421 F.2d 92, 96 (9th Cir. 1970).  See also *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 380 (5th Cir. 2019) (noting that equitable tolling can excuse an untimely filing when the EEOC

misleads the plaintiff about the nature of her rights); *Jones*, 56 F. App'x at 348

(noting that Title VII's 90-day limitations period may be equitably tolled);

*Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) (equitable

tolling may apply when the EEOC gives an individual incorrect information that

leads the individual to file an untimely charge).

"We apply equitable tolling when an employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge." <u>Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 881.</u>

The DLA Agency cannot mislead Asuncion by writing on page 30, 90 days

from receipt and then later inconsistently argue that it is 90 days from mere notice

of the FAD. Equitable tolling applied in this circumstance because the Appellee's

agency directly issuing the FAD has unclean hands which Asuncion relied upon in

filing the instant action.

Asuncion set forth specific evidence raising a genuine factual question,

especially when considering the evidence in the light most favorable to Asuncion.

The court ruled on form over substance. Asuncion respectfully requests the

dismissal of his action against Austin be reversed and this matter remanded for

further proceedings.

**B. The District Court erroneously denied Asuncion's Motion for Reconsideration.**

In the alternative, Asuncion respectfully requests that the Order Denying his timely motion for Reconsideration be reversed and this matter be remanded for further proceedings. In support of the Motion for reconsideration, Asuncion attached a Declaration of Counsel and a copy of the FAD. See Excerpts, Tab 3, Declaration of Asuncion's Counsel. The Declaration of Counsel in support of the Motion for reconsideration, along with the copy of the FAD showed the egregiousness of the District Court's Decision.

In the Motion for Reconsideration, Asuncion's counsel attached as Exhibit "1" are true and correct copy of the FAD and provided more detail in support of having the District Court reconsider it Order Granting Appellee's Motion to Dismiss/For Summary Judgment. See ER Tab 3 at pp. 12:

3. Attached as Exhibit "1" are true and correct copy of the FAD.
4. On page 30 it states, "In lieu of an appeal to EEOC, CP may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the final Agency decision."
5. It also states on page 30 to name Llyod Austin as the proper defendant rather than the head of the DLA which is who I would normally name in a lawsuit involving a federal defendant.
6. I point this out to show this Honorable Court that I followed both of these directions on page 30 of the FAD in filing the complaint in addition to the federal regulation.
7. Declarant respectfully requests that Plaintiff's Motion for Reconsideration be granted based upon page 30 of the FAD decision which directed Plaintiff to file his lawsuit within 90 days of receipt of the FAD decision and to name Llyod Austin as the proper defendant rather than the head of the DLA.
ER Tab 3 at pp. 12:

Despite Asuncion showing clear errors leading to manifest injustice, the
District Court denied Asuncion's Motion for Reconsideration. **See ER Tab 2, p. 7-9:**

Asuncion argues that there were clear errors in the 9/14 Order and that
reconsideration is necessary to prevent manifest injustice. See Motion for
Reconsideration at 3. He contends that reconsideration should be granted because:

1) in filing this action, he complied with the directions on page 30 of the
CUI Final Agency Decision of the Defense Logistics Agency in the Discrimination
Complaint of Rodolfo Asuncion (DLAF-21-0424) ("FAD"); [id. at 4;]

2) even if this action was filed after the ninety-day filing period, equitable
tolling applies because the misleading statements in the FAD induced Asuncion
into allowing the deadline to pass; [id. at 4-6 (citing Coke v. General Adjustment
Bureau, Inc., 640 F.2d 584, 595-96 (5th Cir. 1981); Irwin v. Dep't of Veterans
Affs., 498 U.S. 89, 95–96 (1990));] and

3) this Court erred in ruling that the ninety-day filing period began to run
when Plaintiff received the FAD because he was unable to open and review the
FAD and the email transmitting the FAD did not indicate who prevailed, [id. at 7-
10 (citing Lynn v. W. Gillette, Inc., 564 F.2d 1282, 1283-86, 1288 (9th Cir. 1977);
Plunkett v. Roadway Express, Inc., 504 F.2d 417, 417 (10th Cir. 1974); Hammel v.
Marsh USA Inc., 79 F. Supp. 3d 234, 242 (D.D.C. 2015))].

Arguments 2 and 3 were raised in the underlying motion and rejected by this
Court in the 9/14 Order. Plaintiff merely disagrees with this Court's ruling, and his
mere disagreement is not grounds for reconsideration. See Fisher, 49 F. Supp. 3d at
735.
Argument 1 was not raised in the underlying motion and, as to Arguments 2
and 3, Plaintiff relies on additional case law that was neither cited in connection
with the underlying motion nor discussed in the 9/14 Order. However, this Court
will not grant reconsideration based on arguments that could have been raised in
connection with the underlying motion. See Streamline Consulting Grp. LLC v.
Legacy Carbon LLC, CIVIL NO. 15-00318 SOM/KSC, 2016 WL 1064444, at *1
(D. Hawai`i Mar. 16, 2016) ("This court has denied motions seeking
reconsideration of orders based on evidence and/or legal arguments that the party
seeking reconsideration could have raised in connection with an original motion."

(citation omitted)). Morever, even this Court considered these additional arguments, they would not alter the analysis and the rulings in the 9/14 Order.

Because Asuncion has not presented any ground that warrants reconsideration of the 9/14 Order, his Motion for Reconsideration is DENIED. The Clerk's Office is DIRECTED to enter final judgment and close the case immediately, pursuant to the 9/14 Order.

IT IS SO ORDERED.
**See ER Tab 2, p. 7-9:**

Asuncion respectfully requests that the District Court's decision denying reconsideration of the Order granting the Appellee's Motion to Dismiss/for Summary Judgement be vacated and this matter remanded for further proceedings.

## VIII. CONCLUSION AND SUMMARY OF REQUESTED RELIEF

Asuncion respectfully requests that the District Court's Judgment and the Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial Summary Judgment was entered on 09/14/2023 (ER 4; D.C. Doc No. 20) be vacated for the foregoing reasons.

In the Alternative, Asuncion respectfully requests that the District Court's Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 10/11/2023 be granted for the foregoing reasons and this action remanded for further proceedings consistent therefrom (ER 2; D.C. Doc No. 22).

## IX.    CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  The brief uses a proportional typeface and a 14-point font and contains **7,728** words.

## X.    STATEMENT OF RELATED CASES

Asuncion is not aware of any cases pending in this Honorable Court that would be deemed related pursuant to Ninth Circuit Rule 28-2.6.

DATED: June 17, 2024.              Respectfully submitted,

_/s/Shawn A. Luiz_
Shawn A. Luiz
Attorney for Plaintiff-Appellant
RODOLFO T. ASUNCION

# ADDENDUM

## 42 U.S. Code § 2000e–3 - Other unlawful employment practices

(a) DISCRIMINATION FOR MAKING CHARGES, TESTIFYING, ASSISTING, OR PARTICIPATING IN ENFORCEMENT PROCEEDINGS

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

(b) PRINTING OR PUBLICATION OF NOTICES OR ADVERTISEMENTS INDICATING PROHIBITED PREFERENCE, LIMITATION, SPECIFICATION, OR DISCRIMINATION; OCCUPATIONAL QUALIFICATION EXCEPTION

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment. (Pub. L. 88–352, title VII, § 704, July 2, 1964, 78 Stat. 257; Pub. L. 92–261, § 8(c), Mar. 24, 1972, 86 Stat. 109.)

## 42 U.S. Code § 2000e–5 - Enforcement provisions

(a) POWER OF COMMISSION TO PREVENT UNLAWFUL EMPLOYMENT PRACTICES

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title.

(b) CHARGES BY PERSONS AGGRIEVED OR MEMBER OF COMMISSION OF UNLAWFUL EMPLOYMENT PRACTICES BY EMPLOYERS, ETC.; FILING; ALLEGATIONS; NOTICE TO RESPONDENT; CONTENTS OF NOTICE; INVESTIGATION BY COMMISSION; CONTENTS OF CHARGES; PROHIBITION ON DISCLOSURE OF CHARGES; DETERMINATION OF REASONABLE CAUSE; CONFERENCE, CONCILIATION, AND PERSUASION FOR ELIMINATION OF UNLAWFUL PRACTICES; PROHIBITION ON DISCLOSURE OF INFORMAL ENDEAVORS TO END UNLAWFUL PRACTICES; USE OF EVIDENCE IN SUBSEQUENT PROCEEDINGS; PENALTIES FOR DISCLOSURE OF INFORMATION; TIME FOR DETERMINATION OF REASONABLE CAUSE

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission

shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d), from the date upon which the Commission is authorized to take action with respect to the charge.

(c) STATE OR LOCAL ENFORCEMENT PROCEEDINGS; NOTIFICATION OF STATE OR LOCAL AUTHORITY; TIME FOR FILING CHARGES WITH COMMISSION; COMMENCEMENT OF PROCEEDINGS

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) [1] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

(d) STATE OR LOCAL ENFORCEMENT PROCEEDINGS; NOTIFICATION OF STATE OR LOCAL AUTHORITY; TIME FOR ACTION ON CHARGES BY COMMISSION

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

(e) TIME FOR FILING CHARGES; TIME FOR SERVICE OF NOTICE OF CHARGE ON RESPONDENT; FILING OF CHARGE BY COMMISSION WITH STATE OR LOCAL AGENCY; SENIORITY SYSTEM

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3) (A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B) In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b), is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for

5

such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is

6

available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) INJUNCTIONS; APPROPRIATE AFFIRMATIVE ACTION; EQUITABLE RELIEF; ACCRUAL OF BACK PAY; REDUCTION OF BACK PAY; LIMITATIONS ON JUDICIAL ORDERS

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2) (A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

(B)On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

(h) PROVISIONS OF CHAPTER 6 OF TITLE 29 NOT APPLICABLE TO CIVIL ACTIONS FOR PREVENTION OF UNLAWFUL PRACTICES

The provisions of chapter 6 of title 29 shall not apply with respect to civil actions brought under this section.

(i) PROCEEDINGS BY COMMISSION TO COMPEL COMPLIANCE WITH JUDICIAL ORDERS

In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

(j) APPEALS

Any civil action brought under this section and any proceedings brought under subsection (i) shall be subject to appeal as provided in sections 1291 and 1292, title 28.

(k) ATTORNEY'S FEE; LIABILITY OF COMMISSION AND UNITED STATES FOR COSTS

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

(Pub. L. 88–352, title VII, § 706, July 2, 1964, 78 Stat. 259; Pub. L. 92–261, § 4, Mar. 24, 1972, 86 Stat. 104; Pub. L. 102–166, title I, §§ 107(b), 112, 113(b), Nov. 21, 1991, 105 Stat. 1075, 1078, 1079; Pub. L. 111–2, § 3, Jan. 29, 2009, 123 Stat. 5.)


## 42 U.S. Code § 2000e–16 - Employment by Federal Government

(a) DISCRIMINATORY PRACTICES PROHIBITED; EMPLOYEES OR APPLICANTS FOR EMPLOYMENT SUBJECT TO COVERAGE

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the

Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Publishing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(b) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; ENFORCEMENT POWERS; ISSUANCE OF RULES, REGULATIONS, ETC.; ANNUAL REVIEW AND APPROVAL OF NATIONAL AND REGIONAL EQUAL EMPLOYMENT OPPORTUNITY PLANS; REVIEW AND EVALUATION OF EQUAL EMPLOYMENT OPPORTUNITY PROGRAMS AND PUBLICATION OF PROGRESS REPORTS; CONSULTATIONS WITH INTERESTED PARTIES; COMPLIANCE WITH RULES, REGULATIONS, ETC.; CONTENTS OF NATIONAL AND REGIONAL EQUAL EMPLOYMENT OPPORTUNITY PLANS; AUTHORITY OF LIBRARIAN OF CONGRESS

Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission shall have authority to enforce the provisions of subsection (a) through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Equal Employment Opportunity Commission shall—

(1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

(2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

(3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken

on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to—

(1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

(2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Equal Employment Opportunity Commission shall be exercised by the Librarian of Congress.

(c) CIVIL ACTION BY EMPLOYEE OR APPLICANT FOR EMPLOYMENT FOR REDRESS OF GRIEVANCES; TIME FOR BRINGING OF ACTION; HEAD OF DEPARTMENT, AGENCY, OR UNIT AS DEFENDANT

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a), or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) SECTION 2000E–5(F) THROUGH (K) OF THIS TITLE APPLICABLE TO CIVIL ACTIONS

The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties..[1]

(e) GOVERNMENT AGENCY OR OFFICIAL NOT RELIEVED OF RESPONSIBILITY TO ASSURE NONDISCRIMINATION IN EMPLOYMENT OR EQUAL EMPLOYMENT OPPORTUNITY

Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

(f) SECTION 2000E–5(E)(3) OF THIS TITLE APPLICABLE TO COMPENSATION DISCRIMINATION

Section 2000e–5(e)(3) of this title shall apply to complaints of discrimination in compensation under this section.

(Pub. L. 88–352, title VII, § 717, as added Pub. L. 92–261, § 11, Mar. 24, 1972, 86 Stat. 111; amended 1978 Reorg. Plan No. 1, § 3, eff. Jan. 1, 1979, 43 F.R. 19807,92 Stat. 3781; Pub. L. 96–191, § 8(g), Feb. 15, 1980, 94 Stat. 34; Pub. L. 102–166, title I, § 114, Nov. 21, 1991, 105 Stat. 1079; Pub. L. 104–1, title II, § 201(c)(1), Jan. 23, 1995, 109 Stat. 8; Pub. L. 105–220, title III, § 341(a), Aug. 7, 1998, 112 Stat. 1092; Pub. L. 108–271, § 8(b), July 7, 2004, 118 Stat. 814; Pub. L. 109–435, title VI, § 604(f), Dec. 20, 2006, 120 Stat. 3242; Pub. L. 111–2, § 5(c)(2), Jan. 29, 2009, 123 Stat. 7; Pub. L. 113–235, div. H, title I, § 1301(b), Dec. 16, 2014, 128 Stat. 2537.)

[1] So in original.


## 42 U.S. Code § 2000e–16a - Short title; purpose; definition

(a) SHORT TITLE

Sections 2000e–16a to 2000e–16c of this title may be cited as the "Government Employee Rights Act of 1991".

(b) PURPOSE

The purpose of sections 2000e–16a to 2000e–16c of this title is to provide procedures to protect the rights of certain government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability.

(c) "VIOLATION" DEFINED

For purposes of sections 2000e–16a to 2000e–16c of this title, the term "violation" means a practice that violates section 2000e–16b(a) of this title.

(Pub. L. 102–166, title III, § 301, Nov. 21, 1991, 105 Stat. 1088; Pub. L. 103–283, title III, § 312(f)(1), July 22, 1994, 108 Stat. 1446; Pub. L. 104–1, title V, § 504(a)(1), Jan. 23, 1995, 109 Stat. 40.)

42 U.S. Code § 2000e–16b - Discriminatory practices prohibited

(a) PRACTICES All personnel actions affecting the Presidential appointees described in section 1219 [1] of title 2 or the State employees described in section 2000e–16c of this title shall be made free from any discrimination based on—

(1) race, color, religion, sex, or national origin, within the meaning of section 2000e–16 of this title;

(2) age, within the meaning of section 633a of title 29; or

(3) disability, within the meaning of section 791 of title 29 and sections 12112 to 12114 of this title.

(b) REMEDIESThe remedies referred to in sections 1219(a)(1) [1] of title 2 and 2000e–16c(a) of this title—

(1) may include, in the case of a determination that a violation of subsection (a)(1) or (a)(3) has occurred, such remedies as would be appropriate if awarded under sections 2000e–5(g), 2000e–5(k), and 2000e–16(d) of this title, and such compensatory damages as would be appropriate if awarded under section 1981 or sections 1981a(a) and 1981a(b)(2) of this title;

(2) may include, in the case of a determination that a violation of subsection (a)(2) has occurred, such remedies as would be appropriate if awarded under section 633a(c) of title 29; and

(3) may not include punitive damages.

(Pub. L. 102–166, title III, § 302, Nov. 21, 1991, 105 Stat. 1088; Pub. L. 104–1, title V, § 504(a)(1), Jan. 23, 1995, 109 Stat. 40.)


## 42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment

(a) RIGHT OF RECOVERY

(1) CIVIL RIGHTS

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e–2, 2000e–3, 2000e–16], and provided that the

complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

(2) DISABILITY

In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of title 29 and the regulations implementing section 791 of title 29, or who violated the requirements of section 791 of title 29or the regulations implementing section 791 of title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

(3) REASONABLE ACCOMMODATION AND GOOD FAITH EFFORT

In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 [42 U.S.C. 12112(b)(5)] or regulations implementing section 791 of title 29, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

(b) COMPENSATORY AND PUNITIVE DAMAGES

(1) DETERMINATION OF PUNITIVE DAMAGES

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(2) EXCLUSIONS FROM COMPENSATORY DAMAGES

Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5(g)].

(3) LIMITATIONS The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

(4) CONSTRUCTION

Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1981 of this title.

(c) JURY TRIAL If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury; and

(2) the court shall not inform the jury of the limitations described in subsection (b)(3).

(d) DEFINITIONS As used in this section:

(1) COMPLAINING PARTY The term "complaining party" means—

(A) in the case of a person seeking to bring an action under subsection (a)(1), the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); or

(B) in the case of a person seeking to bring an action under subsection (a)(2), the Equal Employment Opportunity Commission, the Attorney General, a person who

14

may bring an action or proceeding under section 794a(a)(1) of title 29, or a person who may bring an action or proceeding under title I of the Americans with Disabilities Act of 1990 [42 U.S.C. 12111 et seq.].

(2) DISCRIMINATORY PRACTICE

The term "discriminatory practice" means the discrimination described in paragraph (1), or the discrimination or the violation described in paragraph (2), of subsection (a).

(R.S. § 1977A, as added Pub. L. 102–166, title I, § 102, Nov. 21, 1991, 105 Stat. 1072.)

## <u>PROOF OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing Brief of Appellant and Certificate of Service, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on June 17, 2024.

I HEREBY CERTIFY that a copy of the foregoing document will be duly served by ELECTRONIC MAIL (CM/ECF) to the parties identified below at their last known address on the date indicated below:

CLARE E. CONNORS
Attorney General

SIDNEY SPECTOR
Assistant U.S. Attorney

Attorneys for Defendant-Appellee

DATED:     Honolulu, Hawaii, June 17, 2024.

<u>/s/ SHAWN A. LUIZ</u>

Attorney for Plaintiff-Appellant
RODOLFO T. ASUNCION