**No. 23-4044**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

RODOLFO T. ASUNCION

Plaintiff-Appellant,

v.

THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,

Defendants-Appellee.

---

On Appeal from the United States District Court for the District of Hawaii

---

# EXCERPTS OF RECORD
## Volume 1 of 1

---

SHAWN A. LUIZ, Esq.
*Attorney at Law*
*841 Bishop Street, Suite 200*
*Honolulu, Hawaii 96813*
*(808)538-0500 Telephone*
*(808)564-0010 Facsimile*
*Attorneyluiz@gmail.com*
*Attorney for Plaintiff Appellant*
RODOLFO T. ASUNCION

# INDEX

**Tab No./pp.**

Judgement……………………………………………………Tab 1, p. 5
Docket No. 23 (10/31/2023)

Court Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No.1], or in the Alternative for Partial Summary Judgment, Filed 09/14/23 [Document Number 20]………………………Tab 2, pp. 7-9
Docket No. 22 (10/11/2023)

Selected Portions of Evidence
(In Support of Motion for Reconsideration)…………………...Tab 3, pp. 11-52
Docket No. 21 (09/28/2023)

Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alternative for Partial Summary Judgment…………….…………………….Tab 4, pp. 53-78
Docket No. 20 (09/14/2023)

Selected Portions of Evidence
(Opposing Motion to Dismiss Complaint) ……………………..Tab 5, pp. 80-129
Docket No. 15 (07/18/2023)

Complaint ……………………………………..………..……Tab 6, pp. 131-158
Docket No. 1 (03/03/2023)

Notice of Appeal (minus duplicate exhibits found in tabs 1, 2, 4)
…………………………………………………………… Tab 7, pp. 160-165
Docket No. 24 (11/30/2023)

Docket Sheet……………………………………………………..Tab 8, pp. 167-170

**PROOF OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing Brief of Appellant and Certificate of Service, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on June 17, 2024.

I HEREBY CERTIFY that a copy of the foregoing document will be duly served by ELECTRONIC MAIL (CM/ECF) to the parties identified below at their last known address on the date indicated below:

CLARE E. CONNORS
Attorney General

SIDNEY SPECTOR
Assistant U.S. Attorney

Attorneys for Defendant-Appellee

DATED: Honolulu, Hawaii, June 17, 2024.

/s/ SHAWN A. LUIZ

Attorney for Plaintiff-Appellant
RODOLFO T. ASUNCION

EXCERPT OF RECORD, TAB 1

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

RODOLFO T. ASUNCION, JR.

Plaintiff,

V.

THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE

Defendant.

JUDGMENT IN A CIVIL CASE

Case: CV 23-00119 LEK-KJM

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Oct 31, 2023, 3:55 pm
Lucy H. Carrillo, Clerk of Court

[ ] **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[✓] **Decision by Court**. This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendant the Honorable Lloyd J. Austin, III, Secretary of Defense, pursuant to the "Order Granting Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment", ECF No. 20, filed on September 14, 2023 and the "EO: Court Order Denying Plaintiff's Motion for Reconsideration of the Order Granting Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment , filed 09/14/23 [Document Number 20], ECF No. 22, filed October 11, 2023.

October 31, 2023
Date

LUCY H. CARRILLO
Clerk

/s/ LUCY H. CARRILLO by EA
(By) Deputy Clerk

EXCERPT OF RECORD, TAB 2

# MINUTE ORDER

CASE NUMBER: CIVIL NO. 23-00119 LEK-KJM

CASE NAME: Rodolfo T. Asuncion, Jr. vs. The Honorable Lloyd J. Austin, III

---

JUDGE: Leslie E. Kobayashi DATE: 10/11/2023

---

COURT ACTION: EO: COURT ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT, FILED 09/14/23 [DOCUMENT NUMBER 20]

On September 14, 2023, this Court issued the Order Granting Defendant's Motion to Dismiss Complaint [ECF NO. 1], or in the Alterative for Partial Summary Judgment ("9/14 Order"). Dkt. no. 20, *available at* 2023 WL 5983760. Before this Court is Plaintiff Rodolfo T. Asuncion Jr.'s ("Asuncion") motion for reconsideration of the 9/14 Order ("Motion for Reconsideration"), filed on September 28, 2023. [Dkt. no. 21.] The motion for reconsideration is suitable for disposition without a hearing and without further briefing. See Local Rule LR7.1(d); Local Rule LR60.1. Asuncion's Motion for Reconsideration is hereby denied for the reasons set forth below.

Because the 9/14 Order was case dispositive, Asuncion's Motion for Reconsideration is "governed by Fed. R. Civ. P. 59 or 60, as applicable." See Local Rule LR60.1. Because no judgment has been issued in this case, Fed. R. Civ. P. 60 applies. See Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Rule 60(b) states, in pertinent part: "On motion and just terms, the court may relieve a party or its legal representative from a final . . . order, or proceeding for the following reasons: . . . or (6) any other reason that justifies relief." The Ninth Circuit has stated:

> We use Rule 60(b)(6) "sparingly as an equitable remedy to prevent manifest injustice." United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993). To receive relief under Rule 60(b)(6), a party must demonstrate "extraordinary circumstances which prevented or rendered him unable to prosecute [his case]." [Cmty. Dental Servs. v.] Tani, 282 F.3d [1164,] 1168 [(9th Cir. 2002)] (citing Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam)).

Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (some alterations in Lal).

As to motions for reconsideration in general, this district court has stated:

> A motion for reconsideration must: (1) demonstrate reasons that the court should reconsider its prior decision; and (2) must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Fisher v. Kealoha, 49 F. Supp. 3d 727, 734 (D. Haw. 2014). The Ninth Circuit has said that reconsideration may be appropriate if: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).
>
> Mere disagreement with a previous order is an insufficient basis for reconsideration. Fisher, 49 F. Supp. 3d at 735. This court "'enjoys considerable discretion in granting or denying the motion.'" Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc)).

Smith v. Frink, Civil No. 20-00377 SOM-RT, 2020 WL 7130511, at *2 (D. Hawai`i Dec. 4, 2020) (footnote omitted).

Asuncion argues that there were clear errors in the 9/14 Order and that reconsideration is necessary to prevent manifest injustice. See Motion for Reconsideration at 3. He contends that reconsideration should be granted because:

1) in filing this action, he complied with the directions on page 30 of the CUI Final Agency Decision of the Defense Logistics Agency in the Discrimination Complaint of Rodolfo Asuncion (DLAF-21-0424) ("FAD"); [id. at 4;]

2) even if this action was filed after the ninety-day filing period, equitable tolling applies because the misleading statements in the FAD induced Asuncion into allowing the deadline to pass; [id. at 4-6 (citing Coke v. General Adjustment Bureau, Inc., 640 F.2d 584, 595-96 (5th Cir. 1981); Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 95–96 (1990));] and

3) this Court erred in ruling that the ninety-day filing period began to run when Plaintiff received the FAD because he was unable to open and review the FAD and the email transmitting the FAD did not indicate who prevailed, [id. at 7-10 (citing Lynn v. W. Gillette, Inc., 564 F.2d 1282, 1283-86, 1288 (9th Cir. 1977); Plunkett

v. Roadway Express, Inc., 504 F.2d 417, 417 (10th Cir. 1974); Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 242 (D.D.C. 2015))].

Arguments 2 and 3 were raised in the underlying motion and rejected by this Court in the 9/14 Order. Plaintiff merely disagrees with this Court's ruling, and his mere disagreement is not grounds for reconsideration. See Fisher, 49 F. Supp. 3d at 735.

Argument 1 was not raised in the underlying motion and, as to Arguments 2 and 3, Plaintiff relies on additional case law that was neither cited in connection with the underlying motion nor discussed in the 9/14 Order. However, this Court will not grant reconsideration based on arguments that could have been raised in connection with the underlying motion. See Streamline Consulting Grp. LLC v. Legacy Carbon LLC, CIVIL NO. 15-00318 SOM/KSC, 2016 WL 1064444, at *1 (D. Hawai`i Mar. 16, 2016) ("This court has denied motions seeking reconsideration of orders based on evidence and/or legal arguments that the party seeking reconsideration could have raised in connection with an original motion." (citation omitted)). Morever, even this Court considered these additional arguments, they would not alter the analysis and the rulings in the 9/14 Order.

Because Asuncion has not presented any ground that warrants reconsideration of the 9/14 Order, his Motion for Reconsideration is DENIED. The Clerk's Office is DIRECTED to enter final judgment and close the case immediately, pursuant to the 9/14 Order.

IT IS SO ORDERED.

Submitted by: Agalelei Elkington, Courtroom Manager

EXCERPT OF RECORD, TAB 3

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500 Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants. | CIVIL NO. 23-00119 LEK-KJM<br><br>**DECLARATION OF COUNSEL** |

## DECLARATION OF COUNSEL

1. I, SHAWN A. LUIZ, Esq. pursuant to 28 U.S.C. Section 1746, hereby declare under penalty of the law that the following is true and correct in response to the Defendant's Motion to Dismiss or for Partial Summary Judgment:

2. I am an attorney licensed to practice law in the State of Hawaii, the U.S. District Court for the District of Hawaii, the Ninth Circuit, the

U.S. Supreme Court, the State of Florida, and the U.S. District Court for the Middle District of Florida, and I am attorney of record for Plaintiff RODOLFO T. ASUNCION, JR.

3. Attached as Exhibit "1" are true and correct copy of the FAD.
4. On page 30 it states, ***"In lieu of an appeal to EEOC, CP may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the final Agency decision."***
5. It also states on page 30 to name Llyod Austin as the proper defendant rather than the head of the DLA which is who I would normally name in a lawsuit involving a federal defendant.
6. I point this out to show this Honorable Court that I followed both of these directions on page 30 of the FAD in filing the complaint in addition to the federal regulation.
7. Declarant respectfully requests that Plaintiff's Motion for Reconsideration be granted based upon page 30 of the FAD decision which directed Plaintiff to file his lawsuit within 90 days of receipt of the FAD decision and to name Llyod Austin as the proper defendant rather than the head of the DLA.

I, SHAWN A. LUIZ, Esq. hereby declare under penalty of law that

the forgoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawaii, September 28, 2023.

                                   */s/ Shawn A. Luiz*

                                    SHAWN A. LUIZ

                                    Attorney for Plaintiff

# CUI

## ATTENTION

Use this space to indicate categories, limited dissemination controls, special instructions, points of contact, etc., if needed.

The information contained in this attachment(s) is intended only for the official use of the individual or entity to whom it is addressed and may contain legally privileged, confidential information or work product. If the reader is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this document is strictly prohibited.

Controlled by: DLA Office of EEO and Diversity
CUI Category: PRVCY
Distribution/Dissemination Control: Dissemination List Controlled (DL Only)
POC: DLA HQs EEO Operations Division /HQEEOInquiries@dla.mil

DISSEMINATION LIST:
DLA Office of Equal Employment Opportunity and Diversity
DLA General Counsel
Complainant and Complainant's Attorney/Representative (if applicable)
Equal Employment Opportunity Commission (EEOC)/Office of Federal Operations (OFO)

Note: Only releasable to personnel with a need-to-know in the above organizations.

## ATTENTION

All individuals handling this information are required to protect it from unauthorized disclosure.

Handling, storage, reproduction, and disposition of the attached document(s) must be in accordance with 32 CFR Part 2002 and applicable agency policy.

Access to and dissemination of Controlled Unclassified Information shall be allowed as necessary and permissible to any individual(s), organization(s), or grouping(s) of users, provided such access or dissemination is consistent with or in furtherance of a Lawful Government Purpose and in a manner consistent with applicable law, regulations, and Government-wide policies.

Standard Form 901 (11-18)
Prescribed by GSA/ISOO | 32 CFR 2002

CUI

CUI

DEFENSE LOGISTICS AGENCY
HEADQUARTERS
8725 JOHN J. KINGMAN ROAD
FORT BELVOIR, VIRGINIA 22060-6221

November 4, 2022

Mr. Shawn A. Luiz
Transmitted via email to: attorneyluiz@gmail

Dear Mr. Luiz:

Enclosed is the final decision of the Defense Logistics Agency (DLA) on your client's complaint (Mr. Rodolfo Asuncion) of employment discrimination, DLA Case Number DLAF-20-0424.

Your client is entitled to appeal this decision to the U.S. Equal Employment Opportunity Commission or file suit in an appropriate U.S. District Court. Procedures are set forth in this decision.

Sincerely,

SAMUEL.JANICE.H.1046995186 Digitally signed by SAMUEL.JANICE.H.1046995186 Date: 2022.11.04 08:28:08 -04'00'

Janice Samuel
Director
Office of Equal Employment Opportunity
and Diversity

Enclosure

cc:
Mr. Rodolfo Asuncion (Complainant) Rodolfo.asuncion31@gmail.com
DLA Headquarters Office of EEO and Diversity
DLA Counsel – DLA Headquarters

Controlled by: DLA HQs Office of EEO and Diversity
CUI Category: PRVCY
Distribution/Dissemination Control: Dissemination List Controlled (DL Only)
POC: DLA Headquarters EEO/ddc.eeo@dla.mil

DISSEMINATION LIST CONTROLLED:

DLA Office of Equal Employment Opportunity and Diversity
DLA General Counsel
Complainant and Complainant's Attorney/Representative (if applicable)
Equal Employment Opportunity Commission (EEOC)/Office of Federal Operations (OFO)

CUI

FINAL AGENCY DECISION

OF THE

DEFENSE LOGISTICS AGENCY

IN THE DISCRIMINATION COMPLAINT OF

RODOLFO ASUNCION

(DLAF-21-0424)

## I. DECISION

After a thorough review and careful analysis of the available facts, it is the final decision of the Defense Logistics Agency (hereinafter "DLA" or "the Agency") that Mr. Rodolfo Asuncion (hereinafter "Complainant" or "CP") has failed to establish that he was subjected to harassment and disparate treatment on the bases of his disability (Mental – PTSD), or reprisal for the filing of the instant complaint.

In examining the allegation of disparate treatment and the Rehab Act, CP failed to demonstrate that his membership in the aforementioned protected statuses motivated management's decisions. He did not demonstrate that other similarly situated employees outside of his protected classes were treated more favorably.

In examining the allegation of harassment, CP was not able to demonstrate that he was subjected to conduct that was unwelcome and due to his membership in a statutorily protected class. As such, CP was not able to meet his burden of proof.

In examining CP's allegation of reprisal, CP was not able to establish a prima facie case. He demonstrates he engaged in EEO protected activity as he filed this instant EEO complaint. However, CP was not able to demonstrate management's action was based on his filing. As such, he is not able to meet his burden of proof regarding reprisal. He also failed to show how management's actions were harassing or hostile in nature for all allegations.

Having considered all the facts in the Report of Investigation (hereinafter "ROI" or "record), Complainant failed to establish he was subjected to disparate treatment and harassment on the bases of disability or reprisal

## II. ISSUES

Whether Complainant was subjected to harassment and disparate treatment by his first line supervisor, Colleen Weaver, based on his disability (mental – PTSD) when the following incidents occurred:

1. On August 28, 2020, Colleen Weaver told CP his weather and safety leave was not approved.

2. On March 2, 2020, Colleen Weaver and Mark Shadinger (third-line supervisor) called CP on the phone to ask him why he jumped his chain of command (J-67-F) and talked to DLA Indo-Pacific leadership.

3. On February 11, 2020, Colleen Weaver called the base police on CP.

4. On December 17, 2019, Colleen Weaver asked CP if he had any weapons or taking illegal drugs.

5. On February 26, 2021, Ms. Karyn Runstrom, Deputy Director, DLA Information Operations (J6) suspended CP access to classified information and assignment of duties that had been designated national security sensitive.

6. On February 12, 2021, CP was placed on paid administrative suspension status; no specification or details of the alleged misconduct was provided at that time.

**DISMISSAL OF CLAIMS**

By letter dated January 21, 2022, the following claims were dismissed by the servicing EEO office, pursuant to 29 CFR § 1614.106.

1. On September 14, 2020, Colleen Weaver (first-line supervisor) explained to CP why he did not receive an annual case or time off award because CP had all 1's on his performance evaluation, which means unacceptable, only to find out the signed copy of CP's performance evaluation was all 3's acceptable.

2. On September 11, 2020, CP found out from Ms. Nakeesha Lawson, DLA Human Resources, he did not receive a time off or cash award.[1]

[1] CP told the EEO Investigator that this claim was framed incorrectly. The claim was originally erroneously accepted as, "On September 11, 2020, Mr. Asuncion found out from Ms. Nakeesha Lawson, DLA Human Resources, he did receive a time off award or cash award" (ROI p. 714).

The subject letter explained that claims 1 and 2 were incorrectly accepted for investigation by letter dated September 29, 2021, and should have instead been dismissed for failure to state a claim pursuant to 29 C.F.R. § 1614.107(a)(1). Further explanation given was that CP failed to state a claim under 29 C.F.R. § 1614.1033 [sic].[2] This may include a claim that does not allege discrimination on a basis encompassed in one of the statutes applicable to federal sector employees. In determining whether a complaint states a claim, the proper inquiry is whether the conduct, if true, would constitute an unlawful employment practice under The EEO statutes[3] (ROI pp. 80-82).

Dismissal of the two above claims is being reversed and discussion of them will be included in the subject FAD. The subject dismissal letter cited 29 C.F.R. § 1614.107(a)(1) which allows for dismissal of a claim pending before or decided by the agency or Commission. The above claims fall within the guise of CP's claim of a pattern of harassment. Aside from that, without specificity of how CP failed to state a claim or specific identification of when the issues were addressed in another forum, it is assumed the hotline complaint mentioned next and reflected in the record of this EEO investigation is this prior forum. A non-EEO harassment investigation stemming from a DLA Office of General Counsel (OIG) Hotline Complaint was conducted on incidents similar to those raised by CP in this case. However, for that investigation, CP did not claim the treatment he was subjected to was attributed to his membership in any of the EEO-protected classes (ROI pp. 216-222).

By memorandum dated March 23, 2022, subject: Change in Amended Issue, the EEO Investigator indicated that on March 4, 2022, she was informed by the Agency that the following claim was not to be investigated because it is being investigated through the U.S. Merit Systems Protection Board (MSPB). The EEO Investigator informed the Agency that CP and the responsible management officials (RMOs) were already questioned about the subject claim; however, it would not be investigated further. This is substantiated by email communication between CP's servicing EEO Office and the EEO Investigator. As such the claim immediately below is dismissed per 29 C.F.R. § 1614.107(a)(4) (ROI pp. 102-104).

1. On April 21, 2021, CP was issued a "Notice of Decision – Indefinite Suspension (non-disciplinary)" letter, effective August 1, 2021, from his Electronic Duplicating System Technician position and the federal service for failure to maintain access to classified and sensitive information.[4]

Dismissal of this claim is hereby substantiated since CP filed this claim with MSPB (see MSPB appeal attached).

---

[2] The reference of 29 C.F.R. 1614.1033 appears to have been a typographical error. It is believed that 29 C.F. R. 1614.103 should have been referenced instead.
[3] *Cobb v. Department of the Treasury*, EEOC Request No. 05970077 (Mar 13, 1997).
[4] CP raised this specific issue with the MSPB under docket number SF-0752-21-0540-I-2. A MSPB decision was reached on April 4, 2022 (ROI pp. 102-104).

## III. PROCEDURAL HISTORY

Complainant initiated contact with an EEO Counselor on September 18, 2020, and filed a formal complaint on September 15, 2021.[5] By letter dated September 29, 2021, a total of six (6) issues were accepted for EEO Investigation. Two letters dated January 21, 2022, were issued to CP. One letter rescinded acceptance of claims one and two in "Dismissed Claims" section of the FAD, for failure to state a claim. Claims one through four in the "Issues" section of the FAD were accepted for investigation. The second letter dated January 21, 2022, accepted claims five and six in the "Issues" section of the FAD. By memorandum dated March 3, 2022, CP was informed that the claim of issuance of a "Notice of Decision – Indefinite Suspension on April 21, 2021" was dismissed due to the claim being addressed with the MSPB. The EEO complaint was investigated October 25, 2021-March 21, 2022. By letter dated April 22, 2022, the ROI along with explanation of right to request either a hearing the with the EEOC or a FAD based on the merits was issued to CP. CP and his attorney received the ROI and rights letter on May 11, and May 12, 2022 respectively. CP neither requested a hearing with the U.S. Equal Employment Opportunity Commission (EEOC) nor a final agency decision based on the merits. As a result, by letter dated July 14, 2022, CP's servicing EEO Office requested a FAD in accordance with 29 C.F.R. 1614.108(f) (ROI pp. 6-9, 13, 75-78, 80-82, 84-96, 98-100).

**RELIEF SOUGHT**

As reflected in the formal complaint, CP requests: cash award and time off; Early out buy out and retire on the spot after having paper in hand; Pain and suffering going to VA doctor and calling hotline; and same treatment she[6] gives others (ROI p. 7). [7]

CP later stated that there was nothing anyone could do for him now. He just wanted to go to court and get the case over with, as he has been through so much. He said he does not deserve the increased attacks he has been subjected to whenever he tried to explain himself (ROI p. 720).

## IV. BACKGROUND[8]

The subject incidents occurred at DLA Document Services, (J67F) Western Division, Pearl Harbor, Hawaii.[9] CP[10] said he could not identify his position's title, series, and grade because he

---

[5] CP filed his formal complaint December 2020 via traditional United States Postal Service. Due to the Covid-19 pandemic, the Agency instituted an indefinite maximum telework policy and therefore, did not receive the hardcopy formal complaint until September 15, 2021 (ROI p. 98).
[6] CP does not specify who he referring to when he says "she". (ROI p. 7).
[7] Sic (ROI p. 7).
[8] The EEO Investigator did not obtain the disability status of anyone interviewed (ROI pp. 731-731, 823-824, 894-895, 911-912, 917-918, 933-934, 939-940, 945-946, 950-951, 955-956, 959-960).
[9] S2 and S3 are duty-stationed at Port Hueneme, California (ROI pp. 824, 894-895).
[10] CP's declaration statement to the EEO Investigator is not signed (ROI pp. 721, 730).

has been suspended since February 2021, but has been in the position for approximately 30 years. He did share that he works in Pearl Harbor, Hawaii.

Concerning his disability, CP said that he should be identified as an individual with a disability in DLA records because he provided the Agency with forms related to his disability, and his disability rating of 5.0, which he received when he exited the military. CP also stated that he gave the agency a letter from his physician when he returned from war.[11] CP identified his disabilities as PTSD and anxiety, and shared that he had a heart attack. CP said his disability impacts his interactions with others because they perceive him as having something wrong with him, see him as being 'off' and are fearful of him because he has PTSD. CP shared that the problems has interacting with others results from his PTSD. His disability impacts his ability to perform his daily job activities depending on the circumstance. CP says he talks to whomever approaches him about his job. He said he tells them he will run the job and provides them with a sample. However, S1 opposes how he does his job. He said after the two discuss a specific request without time restriction, he runs a sample. He added that though he is not the fastest at doing his job because of how he interacts, he succeeds in getting his job done (ROI p. 711).

CP said he explained to S1 that he needs time for his monthly appointments with his doctor. According to CP as a reasonable accommodation for his medical condition, he requested both a desk and wagon to help him with organization. However, S1 denied his request shortly after she arrived. This was after she told staff to come to her office if they have any questions. He said the first time he requested his RA was in front of everyone (ROI p. 712).

CP said information about how to file a discrimination case is posted on the public bulletin boards, and he has been taking training and following the guidelines (ROI p. 712).

**Ms. Colleen Weaver** (Supervisor, Production Operations Specialist, GS-0301-11; hereinafter referred to as "Supervisor 1" or "S1") was CP's first-level supervisor and the management official CP said discriminated against and harassed him. S1 said she knows of CP's prior EEO activity and denies ever making remarks about veterans with disabilities (ROI pp. 819-820).

According to S1, the essential function of CP's job is to run the Xerox d110 black ink only copier. However, she is not aware of any limitations his disability imposes on his ability to perform the essential functions of his job because he never provided any paperwork supporting his disability. S1 said she learned of CP's disability status when she once asked him why he was not wearing his safety shoes at work. CP shared that he was not able to wear them due to a foot injury he acquired while with the National Guard. She said he became angry and yelled at her when she asked him for documentation to substantiate that, and shared that he provided his paperwork to Boby Kadamoto (former Director) and Claire Terada (former Supervisor and Director). He also

[11] CP provided no dates as to when he provided the letter and from what war he was returning (ROI p. 723).

told her she can find the paperwork in his Electronic Official Personnel File (EOPF). He never provided her with any paperwork. S1 said the second time she asked CP about his disability was when he needed a job cut in half. According to S1, the day prior she advised CP that either she would assist him, or she would find someone to help him because his colleague needed to focus on a specific task. That next day when CP asked the colleague to assist him, the colleague reminded him to ask S1 for assistance. He eventually approached S1 for assistance, to which she initially directed him to cut it himself. That's when he informed her the noise from the cutter negatively impacts the post-traumatic stress disorder (PTSD) he developed from his deployment in Iraq. S1 said again, she asked him for documentation concerning his disability and again he never provided her with such. S1 then directed CP's colleague to assist him (ROI pp. 710-711; 731-732; 732; 823-824; 894-895).

According to S1, during the February 2019 site visit of **Mr. Mark Shadinger** (Production Manager, GS-0303-13;[12] hereinafter referred to as "Supervisor 3" or "S3") CP informed S3 that he has PTSD. However, when S3 asked for verifying paperwork, CP informed him that he provided it to previous management. When S3 returned from the site visit, he inquired with both DLA Human Resources (HR) and DLA Office of General Counsel (DG) concerning any paperwork that may have been on file regarding CP's disability; he learned there were no reasonable accommodations (RAs) on record concerning CP's PTSD (ROI p. 733).

S1 blames CP for causing the hostile work environment and said the situation with him has caused her tremendous anxiety the past two years. According to S1, the subject EEO complaint is the fourth time she has responded to questions concerning CP and believes that he pursues different routes to address his concerns when he does not get the desired results. It is her belief that this is CP's way of retaliating against her. S1 added that since CP's absence from the workforce starting February 2021, the work environment feels more pleasant, and no one feels that they have to walk on eggshells. She said she is no longer afraid to report to work (ROI pp 732).

S1 said she completed the following discrimination and harassment training: Prevention of Sexual Harassment (POSH) and Sexual Assault Prevention and response (SAPR) Training, March 2021 and 2020; and Understanding Disability and RA Training, September 2021, December 2020 and 2019.

**Ms. Dianne Flores** (Supervisory Production Manager, GS-0301-12; hereinafter referred to as "Supervisor 2" or "S2") was CP's second-level supervisor. S2 said she asked CP if he had a reasonable accommodation after he mentioned having a disability. According to her, he said it is on file, but her research with DG and HR did not result in finding such. According to S2, CP was also responsible for reviewing print requests, setting up print jobs, sending the jobs to the printer,

[12] At the time of the alleged incidents, S3 worked at DLA J67F, Western Division, Port Hueneme, California. According to the EEO Investigator, S3 has since retired from federal service (ROI pp. 823-824, 990).

reviewing the finished product to ensure the specific requirements were met, leading paper into the equipment, and completing offline binding, drilling, and mailing (ROI pp. 894-895).

S2 said she knows of the Agency's discriminatory and harassment policies courtesy of the DLA Master Labor Agreement, and her requirement to know about it through her management position. She shared that she completed Understanding Disability and Reasonable Accommodations for Supervisors/Managers in 2021, DLA Workplace Harassment Prevention and Response in 2017, and also Leadership Education and Development, and Applied Human Resources Management for Supervisors in 2009 (ROI pp. 894-896).

**S3 is CP's third level supervisor.** According to S3, in 2018 [13] he inquired with DG and HR about the disability status of CP after learning of CP's disrespect towards his leadership. He said DG and HR informed him that there is no known disability or RA on file for CP. S3 said he learned of the Agency's policy concerning discrimination and harassment (non-sexual) when he first reported to DLA as a GS-02 39 years prior. He said he takes annual discrimination and harassment training via the Learning Management Systems (LMS)[14] (ROI pp. 823-824).

**Mr. Nicholas Janik** (Business Manager, GS-0301-14/Division Chief for DLA J67F (Production Operations; CP's 4th line supervisor; hereinafter referred to as "Supervisor 4" or "S4")[15] is CP's 4th level supervisor. He believes he learned of DLA's discrimination and harassment policies through DLA-provided training, but could not recall specifically when the training occurred. He recalled last completing the training January 27, 2022 (ROI pp. 919-920).

S4 said he has no knowledge of CP possessing a disability or having need of an assistive device or medication. He said CP's duties require him to prepare electronic or hard-copy documents for reproduction/printing, bindery, and shipment. He is not aware how any disability CP possesses impacts his job performance (ROI pp. 918-919).

At the time of the alleged incident, **Mr. Richard Tebeau** (Deputy Director, DLA Strategic Data Services, GS-0301-15; hereinafter referred to as "Supervisor 5" or "S5")[16] was CP's 5th-level supervisor. He said never met CP in person, but first encountered CP during a February 9, 2022, MSPB Zoom hearing concerning CP's indefinite suspension. It was not until after CP filed his MSPB[17] appeal that he learned CP allegedly had a disability; and thus has no knowledge of CP needing an assistive device or medication, and the way CP's alleged disability impacts his job performance (ROI pp. 927-929).

---

[13] S1 indicated that S3 inquired with DG and HR regarding CP's claim of a disability in 2019, an immaterial difference from S3's account.
[14] S3 did not provide the date he last completed related training (ROI p. 824).
[15] S4 works at Tinker AFB, Oklahoma City, Oklahoma (ROI p. 918).
[16] S5 is currently Director of DLA Document Services, GS-0301-15, with a duty station of New Cumberland, Pennsylvania (ROI p. 927).
[17] According to S5, on August 30, 2021, CP filed an appeal with MSPB, Western Regional Office, concerning his indefinite suspension. A hearing was held February 9, 2022; a decision had not been met at the time of this EEO investigation (ROI p. 932).

S5 said he does not know when he learned of the Agency's policies concerning discrimination and harassment, but believed he became aware of them through his managerial/supervisory functions. He last completed Harassment, No Fear, and Disability and Reasonable Accommodation training in 2021 (ROI p. 930).

**Angel Colon** (Deputy Commander, GS-15/senior DoD civilian for DLA Indo-Pacific; hereinafter referred to as "Supervisor 6" or "S6") said he has no working relationship with CP; (ROI pp. 735, 905-906).

S6 said CP shared his disability status during an office visit. S6 said because of CP's disability, he allowed CP to visit with him as desired. S6 believed he was a listening ear for CP and provided him with advice when asked. He said he told CP to set aside his negative feelings towards S1 and his colleagues, get along with them, and focus on submitting his work on time and with minimal errors. S6 believed the talk calmed CP down for few days before he returned to his negative attitude. S6 said he learned of DLA's policy concerning discrimination and harassment during his initial supervisory training in 2010. He last completed discrimination and harassment training December 29, 2016 (ROI pp. 906-907).

**Ms. Karyn Runstrom** (Deputy Chief Information Officer, SES Tier I; hereinafter referred to as "Supervisor 7" or "S7") said she had no working relationship with CP. She said she was given the Agency's discrimination and harassment policy upon her arrival to DLA in 2001. She could not recall the exact date, but believed she last took discrimination and harassment training within the past 6-12 months of the subject EEO investigation (ROI p. 941).

**Holroyde Rocha** (Electronic Duplicating Technician, GS-06; hereinafter referred to as "Employee 1" or "E1") did not address any of the specific incidents of the subject CP, but rather shared what she knew about the work environment. E1 shared that she and CP share the same first and second level supervisors. E1 said sometimes between 2005-2010, CP showed her the letter he gave to their former supervisor identifying the limitations resulting from his disability. She recalled that CP had a prior complaint but was not sure if it was an EEO complaint opposing discriminatory practices against disabled veterans. E1 said CP informed her that he was going to file the subject EEO complaint after the SWAT team visited him (ROI pp. 945-948).

E1 believed CP was subjected to retaliation for questioning and complaining about things. She said CP did not show signs of having a disability. She said that CP was treated differently. She added for the 25 years she's worked with CP, none of the prior supervisors seemed to have any problems with him (ROI pp. 947-948).

E1 said she witnessed S1 harass and discriminate against CP, and recalled an incident (date not provided) in which a colleague gave all of the bindery employees, including CP, surplus office

supplies. However, the next day S1 moved the supplies to her office and claimed them as hers. CP had to ask her any needed supplies; unlike their colleague, Guy Yamafuji (ROI p. 947).

E1 recounted another incident centered around COVID-19. One day S1 informed that she would be the only employee in the workplace if there would be a need to quarantine because she was essential. However, a week before the quarantine, they were all given a letter to sign that identified them all as "essential workers" (ROI p. 947).

According to E1, S1 denied CP's request to move a pallet of paper close to the copy machine for better access. He was the designated copy person because of his disability. Two to three weeks later, S1 removed CP from being the copy person, and placed him with E1 in the scanning department. The copying duties were given to E2, and the pallet was moved to where CP wanted it moved (ROI pp. 947-948).

E1 believes her completion of EEO training (discrimination and harassment) is up-to-date, though she could not recall when it was completed (ROI p. 946).

**Guy Yamafuji** (Electronic Duplicating System Technician, GS-0303-06; hereinafter referred to as "Employee 2" or "E2") share the same first and second level supervisors as CP. He said he only speaks to CP when necessary. He said it may have been in the late 2000's when CP informed him he could not carry anything over 30 pounds. E2 shared that he never saw S1, S2, or S3 treat CP any differently than other employees (ROI p. 956)

E2 believes the Agency has a discrimination and anti-harassment policy. He said he probably just heard about it, though he could not recall when. He also could not recall when he last completed discrimination and anti-harassment training (ROI p. 956).

**Edgar Manzano** (Automated Publishing System Operator, GS-06; hereinafter referred to as "Employee 3" or "E3") said he and CP get along very well and have the same first and second-level supervisors. He said CP is on light duty and cannot lift or carry heavy items (ROI p. 951). E3 said he never witnessed S1, S2, S3, or any management official harass or treat CP different than other employees.

When asked if he is aware of the Agency's discrimination and anti-harassment policy, E3 shared that annual Prevention of Sexual Harassment and Sexual Assault is taken through LMS, and he last took discrimination and anti-harassment training December 15, 2021 (ROI p. 951).

**Merle Dela Rosa** (hereinafter referred to as "Employee 4" or "E4") was mentioned by CP as being aware of S1's statement that everyone would get a cash award. E4 was not interviewed for this complaint (ROI pp. 712-714).

**Shari Hashimoto** (Electronic Duplicating Systems Technician, GS-07; hereinafter referred to as "Employee 5" or "E5") was interviewed by the EEO Investigator. However, she provided no input concerning the subject incidents (ROI pp. 959-961).

**Nakeesha Lawson** (Human Resources (HR) Specialist, GS-0201-12; hereinafter referred to as "Subject Matter Expert 1" or "SME 1") said CP informed her he had a disability upon her arrival to DLA Human Resources in Hawaii in 2019 (ROI p. 964).

SME1 learned of the Agency's discrimination and anti-harassment policy when she first joined DLA in 2008, but does not recall the date of her last training (ROI p. 964).

**ISSUE 1: On September 14, 2020, Colleen Weaver (first-line supervisor) explained to CP why he did not receive an annual cash or time off award because CP had all 1's on his performance evaluation, which means unacceptable, only to find out the signed copy of CP's performance evaluation was all 3's acceptable.**

According to CP, on May 27, 2020, S1 informed her staff[18] that everyone received an award and time off and asked to be notified by staff if they had not received one. CP said he and E4 raised their hands signaling they did not receive an award. According to CP, E4 later informed him that she eventually received an award within the next two days; however, he had not. He said S1 kept informing him that she was working on it and did not know why he had not received an award (ROI pp. 712-714).

CP also stated that when he signed it [his performance rating][19], he saw that his initial rating reflected all 3's and no negative comments. After he signed the rating, he later saw that his rating contained negative comments about him. CP accused S1 of later adding those negative comments after he signed his initial rating. CP alleges S1 did not provide him with a copy of his rating, though he requested it. He said he left her office angry and called his doctor, who told him to leave so he did (ROI pp. 713-714).

CP believes S1 harassed him by not providing the information he should have been given and telling him that she owed him no explanation.[20] He explained that he is being harmed because he is missing pay, is being treated differently than others, and his work environment is worsening. CP did not have any witnesses concerning his performance appraisal (ROI pp. 713, 715).

According to S1, September 2020, she informed CP that S2 and S3 decide who receives cash and time-off awards; specifically, S2 decided not to give CP a time-off or cash award. She

[18] CP stated that Merle Dela Rosa (retired), Shery Hashimoto, Guy Yamasota, Edgar Monzono, and Roy Holycha were present when S1 announced that everyone would be receiving an award (ROI p. 714).
[19] While discussing the claim concerning the cash or time-off award, CP transitioned into discussing what the FAD writer believes is his performance rating (ROI p. 713).
[20] CP provided no explanation of what S1 owed him an explanation for; therefore, it is assumed he is talking about his award status (ROI p. 713).

admitted that she marked CP's performance as '1' and notated all issues she had with his performance during the rating period. However, her 1st-line supervisor advised her to change her ratings to 3's (fully successful) because she talked with CP each time (sic.), and advise CP that improvement is needed for the next DPMAP rating period. S1 said she did just that when meeting with CP, but left her comments on the rating. She said she informed him that it was her duty as his supervisor to notate both the good and the bad. She described CP's reaction as upset, angry, and agitated, and said that he is the only one in the shop who does any work and will be the last one standing in the shop because he is a vet. S1 interpreted CP's comment as a threat (ROI pp. 734-735).

S2 admitted that it was her decision to not give CP an award. CP had issues with productivity, work quality, meeting on-time delivery, jumping his chain of command, failing to follow security protocol for classified jobs. She believed S1 did not have enough documentation to support rating CP as a "1", which he why he was given the rating of "3". She said one time she discussed with CP his concerns about his rating and not receiving an award and explained his productivity issues. However, CP did not want to take accountability, and continued to experience performance issues after the subject rating period (ROI p. 896).

S2 recalled that prior to the subject incident, S1 explained to CP the issues with his quality of work and how it cost the shop $3500; the conversation between S1 and CP was documented via a memorandum of record that was given to S2. Also, with the assistance of HR, CP was issued an official Letter of Warning on March 2, 2020, regarding quality assurance. She said CP got upset and irritated when she asked him to request an RA; he also told her one was already on file. She said CP is combative in meetings they had to address his issues. She said he would speak over them, call them liars, and threaten to raise his issues through the chain of command. That made it hard to share with him their concerns. They would follow-up their discussions with a memorandum for record[21] (ROI p. 897).

According to S3, he was CP's second-level supervisor the first half of the subject rating period, and S2 became CP's second-level after she was hired the second half of the rating period. This made S3 CP's 3rd level supervisor. S3 said he, S2, and S1 met to discuss CP's rating. He recalled S1 wanting to give CP the rating of "1 – unacceptable" for three of his major performance elements. He said he and S2 were concerned about that based on the information, documentation, and overall knowledge of what S1 provided CP during the performance year. He said after review of the documentation and conversation with Evelyn Fox of HR, it was decided that the rating of "1" was not supportable. Therefore, it was decided to rate him as "3 – fully successful" and recommend zero shares due to the write-ups S1 had of his performance for that rating cycle (ROI pp. 825-826).

[21] S2 did not state if the MFRs were given to CP (ROI p. 897).

S3 added that he never spoke with CP about the rating. He said S1 addressed the rating and met with CP and documented his poor performance throughout the rating cycle. He believes CP knew what could result from his poor performance. S3 shared that was the only employee with performance issues or warnings concerning their performance. However, each year, other employees received "fully successful" ratings without getting a monetary case award (ROI pp. 826-827).

S6 said CP came by his office to share that he believed he was unfairly treated concerning his rating and bonus denial. He said CP became immediately agitated when he directed CP to address his concerns with his immediate supervisor. According to S6, CP wanted him to address the issue with S1 and the leadership team. S6 shared that he recommended to CP that he contact the DLA Employee Assistance Program (EAP) and his VA doctor due to his increased agitation and behavior. He also informed CP their meeting would end if he did not calm down. S6 said he took no action because he believed S1's actions were justified due to CP's lack of workplace performance, and his failure to take responsibility. S6 said he also knew of CPs negative attitude towards S1 (ROI p. 907).

Both E2 and E3 said they were present when S1 stated that everyone on staff were going to receive both a cash and time off award. They offered no further statements about the incident (ROI pp. 952, 956).

**ISSUE 2: On September 11, 2020, CP found out from Ms. Nakeesha Lawson, DLA Human Resources, he did receive a time off or cash award.[22]**

CP said he went to SME1 concerning his award out of frustration at S1's failure to provide an explanation about his award status, He learned from SME1 that he did not receive an award (ROI p. 714).[23]

CP believes this incident subjected him to harassment because S1 allowed him to continually ask about his award status without providing him with any explanation (ROI p. 714).

S1 substantiated CP's statement by sharing that he did not receive a time-off or cash award (ROI p. 741).

S2 said she shared with S1 that she decided to not give CP an award based on his failure to meet production standards for the past year, its cost to the organization in revenue loss, and his failure to follow security protocol (ROI pp. 897-898).

[22] CP informed the EEO Investigator that this claim was incorrectly framed, and instead should have read that, 'On September 11, 2020, CP learned from DLA Human Resources that he did not receive a time off or cash award' (ROI p. 714)
[23] For this issue, CP reiterated much of what he stated for the preceding issue (ROI pp. 712-715).

According to SME1, she took no action on this issue. She shared that CP reached out to her to inquire about whether or not he received an award. After doing some searching within HR, she emailed S1 on September 11, 2020, to ask if a performance award for CP was submitted. S1 directed SME1 to S3 because she had no input in the time off awards or shares employees received. S3 informed her that they decided not to recommend any performance award shares for CP due to his performance, and mentioned CP had performance issues that were not fully documented by S1. SME said she instructed S1 to ensure CP was informed that he was not going to be receiving an award. She said S3 agreed and instructed S1 to speak to CP (ROI p. 965).

**ISSUE 3: On August 28, 2020, Ms. Weaver told CP his weather and safety leave (WSL) was not approved.**

CP stated that on August 28, 2020,[24] he applied for WSL telephonically with S1 after she advised him to use it to take his COVID test as instructed by his doctor. CP said S1 told him Flores approved it. He took off on that day, and returned to work on Tuesday, as Monday was a holiday.[25] However, two weeks later, S1 informed him that per S3, CP's weather and safety leave was not approved; it was denied by CP's 4th and 5th supervisors after CP's 1st and 2nd level supervisors already approved it. CP said he would not have taken the WSL if he knew it was going to be denied. CP said he really does not know S4 and S5. According to CP, S3 told him there was nothing that could be done to help him. CP said he also followed up with S4 because of an email S4 previously sent encouraging personnel to reach out him if they ever had any problems. However, the harassment just got worse. CP also said this issue reach the Inspector General's Office, who informed him that he did get paid. However, he never received a copy of the signed approved leave form (ROI pp. 715, 716).

CP believed denial of his weather and safety leave was harassing in nature because he received less pay and was pushed into a corner. He also said S1 provided excuses and denied stating CP's request was approved. CP did not identify any similarly situated individuals as relates to this issue (ROI p. 716).

S1 stated that Covid rules were changing daily at the time of the disputed WSL, and the latest Covid policy enacted at the time was used to determine if CP could use WSL in his situation. S1 said she informed CP that his WSL was disapproved. According to S1, S4 was the deciding official concerning approval or disapproval of WSL. She said CP's request for the subject WSL was routed through her, S2, S3, and S4 (ROI p. 735).

S1 does not recall discussing the WSL with CP on August 28, 2020. She said that on August 31, 2020, CP called the shop and informed her his doctor wanted him to have a Covid test. When she asked him what type of leave to charge him, he responded with annual leave because he

[24] August 28, 2020, fell on a Friday.
[25] CP did not provide the specific dates he took off and returned to work (ROI p. 715)

had a lot of it on the books. She shared with him that she was going to check with S2 to see if WSL could be used in this case, and reminded him to check in daily until his test results came back. S1 said after discussion with S2, she informed CP that WSL was available. However, she was later informed that CP could only use WSL after receiving a positive Covid test result. CP's test results were negative for Covid. S1 said she explained all of this to CP when he returned to work the following week, and at that time he did not share that he was offended by the decision to deny him WSL (ROI p. 736).

According to S2, CP used the proper procedure to request leave through S1. It was when his leave request was routed up the chain of command that the use of WSL was denied; and the CP should properly be charged sick leave. S1 asked CP to take sick leave after the WSL was denied. CP did not tell S2 he was offended by being denied WSL (ROI pp. 898-899).

S3 said S1 never approved then cancelled CP's WSL. S3 recalled CP calling S1 on Monday, August 31, 2020, to tell her he was not coming to work because he did not feel well. CP said he did not have any Covid symptoms, but his doctor wanted him to get tested out of precaution. He continued that he could be out of the office for a few days. S2 then informed S3 that an employee, was at the facility several days prior, is being tested for Covid. The facility will remain open since his symptoms were not Covid-related, and there was no contact with anyone who had positive results. The employee's should have the test results within three to five days. On Thursday, September 3, 2020, that CP informed S1 that he did not have Covid. He requested and was approved to use "use or lose leave" to take the remainder of the week off. CP's emails and leave and earnings statements show that his leave was restored for this. CP was never charged SL for his time off. S3 said he never knew CP had an issue concerning WSL. S1 and S2 addressed the situation using the Covid policy in place at that time. DLA Covid Policy and CDC guidance influenced WSL policy (ROI pp. 827-828).

S4 said he was the decision maker who denied WSL for CP. He said WSL was denied for CP because his situation did not fit the rules for approving WSL. He said he made the decision based on whichever policy was in place at that time[26] (ROI p. 919).

**ISSUE 4: On March 2, 2020, Colleen Weaver and Mark Shadinger (third-line supervisor) called CP on the phone to ask him why he jumped his chain of command (J-67-F) and talked to DLA Indo-Pacific leadership.**

CP said on that upon his arrival to work, the gate security guard asked him questions pertaining to COVID symptoms. Resulting from his responses, the guard told him he was not allowed on post and to go home. CP said she informed S1 of this by phone, who told him he still had to come in unless he could produce a note from his doctor. CP said he complied and returned to work with a note from his doctor, which stated CP was a high risk for COVID. However, when

[26] S4 did not specifically identify the policy he followed (ROI p. 919).

he returned and told the guard he had no symptoms, he was allowed on the base. CP said that in S1's absence, he gave the note to the security person to pass to S6[27] and went home (ROI p. 717).

CP considered this incident harassing because he[28] went off on CP during the March 2, 2020 call, accusing CP of going through the improper chain of command for his WSL leave request. CP said they were yelling at each other during the call, so he reported the interaction to Colone in May 2020. He said Colone did not inform him of what he was going to do (ROI p. 717).

S1 did not provide much of a response to the EEO Investigator concerning this incident. Other than stating she did not recall a March 2, 2020, conversation with CP, and took no action against CP concerning, she directed the EEO Investigator to attachments provided with her statement. The attachments S1 provided discussed CP addressing issues with the personnel higher in the organization's leadership structure, not within his immediate reporting chain. This occurred around April 1, 2022, and concerned CP departing work early that day and use of WSL (ROI pp. 743, 781-783).

S3 seemed to recall a different incident in which CP disregarded his chain of command. In this incident, CP was issued a letter of caution on February 22, [year not stated] concerning poor work performance on a specific task, which resulted in $3500 net loss to DLA. When he received the letter, CP screamed and yelled at S1 and said he was going to the Commander. Later that same day, S1, S2, and CP held a phone conference in which CP did not allow S2 to speak, was disruptive, and not listening. The next day, S6 notified S3 that CP visited him about the subject letter and directed them to put a stop to CP jumping his own chain of command and being a disruption workforce. S3 followed up with a conference call with S1 and CP and informed CP to no longer be disruptive, and that he is, again, being cautioned about following his chain of command. S3 said CP was argumentative during the meeting and tried to talk over he and S1. According to S3, CP responded by saying "[expletive] you, I don't have to listen to you", and he can go see S6 when he desires because they are friends. S3 said CP was advised that further actions can be taken against him should his behavior not improve, and he was asked not to speak to his leadership disrespectfully (ROI pp. 829-830).

According to S6, CP became agitated when he refused CP's offer to provide him with medical documentation concerning his inability to work due to Covid. He said he told CP their meeting would end if he did not calm down, to which CP did. He directed CP to provide the letter to S1, and it is his understanding that CP did just that. He said he also reminded CP that he is not his immediate supervisor and advised him that communication is a two-way street and he needed to share his feelings of being ignored and treated unfairly with his supervisor. Based on his follow-up with S1, it did not seem that CP reached out to S1 (ROI p. 908).

---

[27] CP does not identify Mr. Colon's perceived demographic data or position (ROI p. 717).
[28] CP does not specify who 'he' is, but it is assumed CP is referring to S3 (ROI p. 717).

S6 believed CP used his "open-door policy" as a way to jump past his supervisory chain. He shared that CP frequently expressed dislike with his supervisory chain and their failure to manage the work assignments of him and his colleagues. He said he followed up with S1 who shared that CP was assigned less work because he was uncooperative and failed to complete assignments on time and without error (ROI p. 908).

**ISSUE 5: On February 11, 2020, Colleen Weaver called the base police on CP.[29]**

According to CP, there was a SWAT team outside when he arrived at work. However, he proceeded with his workday as normal. He said S1 was not present. At some point during the day, a soldier told CP to answer the door because he had a customer waiting. CP opened the door and saw a security guard standing there. He was so nervous because he was afraid the soldier was there to share bad news concerning his son who was on a security mission. He said the guard recognized him and told him to sit down. He said he asked the guard why he was there, but the guard responded that he was unable to provide any details. According to CP, in December 2019, S1 told S2 to call the police. CP said he was not aware why the police were called, but they asked him questions about things he discussed with S1 in December (ROI pp. 715, 718)

CP said after he was questioned by the police, he resumed working in isolation because people looked at him like he was a killer on the loose. CP said he felt humiliated and ashamed from this incident and said people have since viewed him as bad (ROI p. 718).

S1 said she called the police on CP on January 16, 2020, not February 11, 2020. She said that shortly after the active shooter incident at Joint Base Pearl Harbor Hawaii in December 2019, CP shared that his counselor calls him daily to check on him and ask if he has his gun. She said he shared this with her two more times. In addition, several employees informed her that he made threats towards them by stating "I'm going to kill you" and "You don't want me to go postal on you". All of this was concerning to S1 and led her to be scared around CP, and fearful for her other employees due to the unpredictability of CP's mood and the potential of him getting angry being set off by something (ROI p. 738).

S1 shared that she feels CP causes the hostile workplace. S1 said in another incident on November 25, 2019, CP called to state he had a heart attack and was in the hospital. When he returned to work on December 2, 2019, S1 informed him that he needed to finish a bindery job that was started by E1. CP responded by yelling that he "didn't need this [expletive], and didn't need to be here', and threatened to file a complaint against her. S1 said she calmed CP down, got him into her office and explained without raising her voice that he could not address her that way. CP then apologized for his behavior. She added that CP always makes a statement about possessing a gun when no one else is around (ROI p. 738).

[29] According to CP, the police response on February 11, 2020, relates to CP's claim in Issue 4 that S1 called the base police on him (ROI pp. 718, 719).

S1 admitted to calling the base police in response to CP's actions on December 2, 2019. She said after they responded onsite, she followed them to the base police station to make a statement. They read her statement and told her to wait while they go back to the shop to talk to CP. They returned and informed her that CP was "all bark and no bite", has no filter when he talks, is former military, and has PTSD. S1 said a few days later, CP informed her that he was upset about having to talk to the police; she did not respond to his comment. S1 said she took the action she did based on her belief that CP's statements posed a threat to her safety and well-being. She did not take the actions she did because of his disability (ROI pp. 738-739).

According to S2, CP showed signs of distress after the active shooter incident that occurred at Pearl Harbor in early December. Per S2, S1 said CP mentioned recently being in contact with an EAP counselor, and said his counselor called him to make sure he did not take his firearm to work that day. S2 said she asked S1 to contact the base military police or NCIS as CP may have had mental health issues and be in possession of a firearm. It was then when S1 informed her that CP had mentioned this twice before. S1 filed a report with base security on January 16, 2020. S2 added that she was concerned for S1's safety, and added that S1 was distraught at lack of concern, and requested to change her hours so not to arrive at the same time as CP during the dark early morning hours. S2 said after she accommodated S1's request, S1's husband would physically walk her into work out of concern for her safety (ROI pp. 899-900).

S2 said for the most part, employees tried not to interact with CP out of fear. Over the years, he has yelled, threatened to punch someone, and called several of them liars. She said that from what she understands, CP's behaving has been allowed for years, and it is disappointing that prior supervisors did not address this behavior. (ROI pp. 900-901).

S3 said on January 15, 2020, S2 informed him by email of an incident that occurred between CP and S1, in which CP informed that he was in contact with an EAP Counselor, and that his counselor reached out to him to ensure that he did not bring any firearm with him to work. S2 said she asked S2 to contact base military police and NCIS as CP appeared to have mental health issues and may be in possession of a firearm (ROI p. 830). S3 said he later learned that this was the third time CP spoke to S1 about a gun or firearms; the other two times were in December [2019], around the time of the active shooter incident at Pearl Harbor (ROI p. 830).

S3 said he never spoke to CP about this incident, and addressed the issue with HR and DG the day after the incident. He has not heard CP making any threats concerning guns and weapons. S3 believed they did what was best for the employees by calling the proper authorities who are equipped to deal with situations such as this. They relied on their DLA training for active shooter situations to guide them through how best to handle the situation with CP (ROI p. 830).

**ISSUE 6: On December 17, 2019, S1 asked CP if he had any weapons or taking illegal drugs.**

According to CP, the day before, there was an active shooter incident in which one person flipped out like him, went to see a military doctor, and shot himself and three people. CP said he went to his doctor the day of the incident. The following day in a staff meeting S1 shard how she was emotionally hurt by the incident. CP said he defended shooter because the shooter sought help, and said the incident could have been prevented (ROI p. 719).

During the meeting, CP shared the questions his doctor asks him during each visit. He said S1 then turned around and asked him those same questions, specifically does he have a weapon – to which CP replied that he does not, - and if he takes drugs, to which he replied only what is prescribed for him. He said he answered them because he had nothing to hide. CP believes he should not be treated that way because he has PTSD. CP said after that, S1 called S2 and told S2 to call the police[30] (ROI p. 719).

CP said he did not feel harassed when S1 asked him the questions. He was bothered when the police arrived, which made him feel ashamed and led his colleagues to think badly of him. CP said he did not inform S1 or anyone else in management that S1's actions were unwelcomed and harassing. He added that looking back, he sees that S1 was just trying to continually harass him (ROI p. 720).

S1 denied this incident occurred (ROI pp. 739-740).

S2 said S1 never asked CP if he was taking drugs. She said they have documented incidents of threats and incidents in which CP yelled at colleagues in front of customers. She added that she and S1 had been in their respective positions for a short time, and they could tell that CP did not care for S1. S2 said she needed to protect her employee which is why she recommended she go to security. They both saw how fellow employees tip-toe around CP (ROI pp. 900-902, 907).

S3 referred to earlier statements made in his declaration when asked about this incident (ROI pp. 832-833).

**ISSUE 7: On February 26, 2021, Ms. Karyn Runstrom, Deputy Director, DLA Information Operations (J6) suspended CP access to classified information and assignment of duties that had been designated national security sensitive.**

CP said he received a letter in the mail signed by S5 and S7. According to CP, the letter stated that on February 12, 2021, DLA Intelligence Security Office issued a report accusing CP of making threatening statements in the workplace, and there were serious concerns about CP's judgement and reliability. As a consequence, his access to classified information was being

---

[30] According to CP, the police arrived months later as reflected in issue 3 (ROI p. 718).

suspended pending review and clearance by the DOD Consolidated Adjudication Facility. CP was directed to **Mr. Edward Woo** (Security Specialist, hereinafter referred to as "Employee 6" or "E6") if he had questions, and was never given the actual report in order to provide a rebuttal statement. He said he may have been given the opportunity to appeal the action, but did not know how. He added that he was trying to get an attorney (ROI pp. 725-726).

CP said this incident was harassing in nature because it was costing him his job. He said he held a security clearing for over 40 years, but may lose it for no reason. He said he did not speak to S7 about his belief that her actions were unwelcomed and harassing in nature because his anxiety was too bad. However, while in the hospital, he reported this incident telephonically to S4, and said he could not take any more harassment. CP said he never received a response. It is CP's perception that S1 advanced a false narrative about events that occurred over a year prior. Also, S1 views veterans with disabilities – specifically PTSD - as a threat based on comments she made, and she does not want to work with them (ROI p. 726).

CP also believed S1's behavior toward him worsened and was done in retaliation for him opposing her behavior towards veterans with disabilities and informing her he was going to report her to the EEO Office in 2019 (ROI p. 727).

S5 identified S7 as the management official who decided to suspend CP's access to classified information and provided no information pertaining to this incident (ROI p. 933).

S6 said when CP reported the subject incident to him, he directed CP to contact his supervisor. He said he explained the situation to CP and calmed him down when he became defensive during their discussion. S6 believed CP's access was suspended as a result of having been banned from the base due to being considered an insider threat to the workforce, and his inability to perform his duties (ROI p. 914).

According to S7, she decided to suspend CP's access pending review of allegations and final clearance determination by the DoD Consolidated Adjudications Facility. S7 said this resulted from DLA Intelligence and Security Division's recommendation – and General Counsel's concurrence - to suspend CP's access because a report of investigation substantiated allegations that CP made threatening statements in the workplace in December 2019, January 2020, and on March 10, 2020. This decision was guidance by the DLA Instruction 5200.02, Personnel Security Program, dated November 2018 (ROI pp. 940-941).

**ISSUE 8: On February 12, 2021, CP was placed on paid administrative suspension status; no specification or details of the alleged misconduct was provided at that time.**

CP a meeting with S5 and S6 revealed that he was being placed on paid administrative leave due to alleged misconduct. CP was only told the action was based on a hostile investigation.

Apparently, S1 reported CP as a threat in December of 2019, February of 2020, and March of 2020; however, CP denied that he was a threat. CP said a police officer – name unknown by CP - came to speak to him [surrounding occurrences on one of the aforementioned dates], told him to return to work, and characterized him as not being a threat. It is CP's contention that he would have been taken into custody if the police felt he was a threat. CP believes S1 initially told Woo he was a threat and got him to general a report based on her accusations surrounding the events on the aforementioned dates. That report was used in the decision to place him on paid administrative leave status. CP said his card was taken away and he is not allowed to return to work. CP said neither he nor his attorney have been given the report used to placed him on administrative leave while being investigated. He was not able to appeal the suspension because he was in the hospital for several days. In addition, he was searching for an attorney, was not allowed on the base, and did not know how to fill out the forms (ROI pp. 727-728).

CP disputes having been a threat because S1 waited over a year to get an investigation done. He believes S1 continued to push the false narrative of him being hostile to get rid of him. CP said he may be loud, was on treatment and medication, but was not hostile (ROI p. 728).

CP said he was harassed in this incident because his anxiety, stress and PTSD increased as a result of this incident, having to return to his doctor, search for an attorney, and trying to understand why this was occurring after 40 years of service. He said he told S6 all that S1 was doing, but S6 offered no explanation surrounding the events (ROI p. 728).

S1 said she did not play a role in the decision to place CP on administrative leave. According to S1, the reasons CP was placed on administrative leave are explained on the "Memorandum for CP, DLA Document Services, subject: Suspension of Access to Classified Information and Sensitive Information". Basically, there are concerns about his judgment and reliability resulting from the report concerning threatening statements he made in the workplace on December 2019, January 2020, and March 2020, as detailed in a report provided to DLA Intelligence Security Office on February 12, 2021. As a result, his access to classified and sensitive information has been suspended pending review of the allegations and final clearance determination by the DoD Consolidated Adjudications Facility[31] (ROI pp. 820-821).

S4 denied any involvement in placing CP on administrative leave (ROI p. 723).

According to S5, he was the management official who placed CP on paid administrative leave. He said CP was not placed on paid suspension. He added that CP received full pay and benefits while on administrative leave, as an investigation into his alleged miscount was being reviewed by management. S5 said he followed DLAI 1400.25, "Leave Administration" when deciding to suspend CP (ROI p. 935).

[31] S1 references DLA1981 and Evidence File in her supplemental statement. However, such is not found in the record (ROI p. 821).

S6 said he recommended CP's suspension to his immediate supervisor and management, and was thus asked to enforce it. He shared that the decision to suspend CP was made as a result of having received consistent complaints from S1 about CP's behavior, inability to complete his work on time and error free. Also, CP's colleagues and S1 feared CP in their workspace due to his explosive disposition. He added that after CP informed him of weapons at home and he witnessed first-hand CP's angry and explosive outbursts he made the decision with the advice of General Counsel and HR, to deem CP a liability to the welfare of the workforce. S6 said they followed the Hostile Workforce Environment regulation/policy in the decision to suspense CP (ROI p. 915).

## V. APPLICABLE LAW

Complainant alleged he was subjected to disparate treatment and harassment based on his disability. Allegations of employer discrimination on the basis of disability are examined under the Rehabilitation Act (Rehab Act) of 1973, as amended. Allegations of employer discrimination on the basis of reprisal are examined under Title VII of the Civil Rights Act of 1964, as amended (Title VII). Allegations of harassment are examined under the aforementioned statutes.

## VI. ANALYSIS & FINDINGS

### *Disparate Treatment Claim Raised Under Title VII and the Rehab Act*

Disparate treatment is defined as an employer treating an employee in one protected group differently than others not within that protected group. To sustain an allegation of disparate treatment, CP must first establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. The burden then shifts to the Agency to successfully rebut CP's claim by providing a legitimate, non-discriminatory reason for the actions it took. If the Agency is able to successfully accomplish this, the burden then moves back to CP to demonstrate that the Agency's stated reason for its actions were mere pretext for discrimination.[32]

### *Complainant's Prima Facie Case Raised Under the Rehab Act*

To establish a prima facie case of discrimination under the Title VII and the Rehab Act of 1973, CP must meet three elements: (1) he is within the protected groups, and an individual with a disability; (2) he was adversely affected by an Agency decision, action, or change; and (3) other similarly situated individuals outside of his protected class were treated more favorably.

[32] *McDonnell Douglas Corp. v. Green*, 411, US 792 (1973).

It is assumed by CP's claim that he is an individual with a disability. Other than his bare assertion, and absent medical documentation to substantiate CP's disability, we will assume that CP is a member of the protected class of an individual with a disability. He identified his disabilities as PTSD and anxiety, and stated he also he a heart attack. CP explained the ways his PTSD and anxiety impacts his major life activities. He said his disabilities impact his ability to interact with others because they view him as 'off' or are fearful of him (ROI p. 711).

However, CP failed to show at least one similarly situated employee, outside of his protected group who was treated more favorably than him concerning any of his alleged claims of discrimination. To be similarly situated, the person with whom CP is comparing himself must be similar in substantially all aspects, so that it would be expected that they would be treated in the same manner.[33]

***Legal Standard of Review for Harassment (non -sexual)***

Harassment is defined as unwelcomed verbal or physical behavior towards an individual or group of individuals, which persists over a period of time. Harassment is actionable if it is so severe or pervasive that it results in an alteration of the conditions of the Complainant's employment.[34]

***Complainant's Prima Facie Case of Harassment***

To establish a prima facie case of harassment for the bases alleged, CP must meet the following burden: (1) he is a member of a statutorily protected class; (2) he was subjected to unwelcome verbal or physical conduct; (3) the conduct was based on the statutorily protected class; (4) the harassment affected a term or condition of employment or had the effect of reasonably interfering with the work environment; and/or creating an intimidating, hostile, or offensive environment; and (5) there is a basis for imputing liability to the employer.[35]

It is established that CP is a member of the protected class of an individual with a disability, and has engaged in protected EEO activity.

We now move to consider if CP was able to establish that he was subjected to offensive, unwanted verbal or physical conduct involving the protected classes. To determine if the claims CP raised were offensive, we must turn to the reasonable person standard. Specifically, would a reasonable person in the same circumstance as CP, perceive the actions to be offensive? Under the reasonable person standard, examples of offensive workplace behavior include, but are not limited to: yelling, taunting, use of profanity or obscene language, degrading or derogatory

---

[33] *McNeil v. Dep't of Defense*, EEOC Appeal No. 01980212 (June 13, 2001).
[34] Enforcement Guidance on *Harris v. Forklift Systems, Inc.*, EEOC Notice No. 915.002, at 3 (March 8, 1994).
[35] Humphrey v. United States Postal Service, EEOC Appeal no. 01965238 (Oct 16, 1998).

comments or statements, obscene or threatening physical gestures, being ignored or publicly ridiculed, or being subjected to a pattern of persistent and petty behavior.[36]

An examination of the record shows that beyond his bare assertions, CP failed to show how management's actions were done because of his membership in the identified protected classes and how it negatively impacted his work environment in a way that could be considered offensive or hostile in nature. There is no evidence to demonstrate management's actions rose to offensive behavior.

The record shows that the actions management took were in response interactions they have had with CP and complaints his colleagues made concerning his behavior towards them. By removing CP from the workplace via paid and unpaid administrative leave and then placing him on suspension, they took the steps they believed necessary to secure the workforce and mission while investigation into his ability to maintain his security clearance was ongoing.

As such, based on the aforementioned information, we find CP's claim lack the severity and pervasiveness required for a finding of harassment. As discussed above, the record is devoid of evidence reflecting CP's protected classes motivated management's actions towards him. Therefore, CP has failed to make out a prima facie case of harassment.

***Legal Standard of Review for Reprisal***

Title VII makes it illegal for an employer to retaliate against an employee or applicant because they filed a charge of discrimination, complained to an employer or another covered entity about discrimination on the job, or because of participation in an employment discrimination proceeding.

In analyzing an allegation of reprisal, CP must establish that he was subjected to an adverse action that would not have occurred if not for retaliation. CP may establish a prima facie case of reprisal by showing that: (1) he engaged in protected activity; (2) the Agency was aware of the protected activity; (3) he was subsequently subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse treatment.[37]

***Complainant's Prima Facie Case of Reprisal***

Complainant raised reprisal due to the filing of the instant complaint and another complaint raised outside of the EEO process. It is not disputed that CP initiated EEO contact for the subject complaint on September 18, 2020, and filed his formal complaint on September 17, 2021.[38]

---

[36] Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 (March 8, 1994).
[37] *Whitmire v. Dep't of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000).
[38] These dates are based the Counselor's Report, Acknowledgment Letter of Formal Complaint dated September 17, 2021, and the initial acceptance letter dated September 29, 2021. Based on the correspondence, the formal complaint was dated December 24, 2020. the DLA EEO Office received

However, the alleged harassing incidents CP alleges management took were initiated by management before his initiated EEO contact.

A person can allege reprisal if either they engaged in protected EEO activity such as filing a complaint of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination.[39] There is no disputing that the actions management took occurred close in time to CP's filing of the instant complaint. Proximity in time between the protected activity, the adverse action, and the knowledge of agency officials taking or recommending the action are prerequisites to establishing reprisal. But those elements, standing alone, generally will not give rise to a finding of reprisal, though particularly close proximity in time may do so. To prevail, CP must present other evidence tending to establish a retaliatory motive.[40] We find that CP did not provide evidence of any retaliatory motive for management reassigning him, placing him on an unclassified statement of duties, and proposing his removal.

We now move to examine if CP established nexus between his protected activity and the adverse actions. To establish nexus, CP must provide evidence demonstrating that if it were not for his protected activity, he would not have been subjected to the claim spelled out in this case. We find that CP failed to establish nexus. He does not show how management's decisions to reassign him and propose his removal were done because he engaged in protected activity.

Assuming arguendo that CP met the prima facie burdens, we will move to determine if management articulated legitimate non-discriminatory reasons for its actions.

### *ANALYSIS OF ALLEGATION*
### Management's Response

Management provided legitimate non-discriminatory reasons for its actions. As stated previously and shown later, management took action against the employee based on his workplace behavior, performance, and an OIG investigation that resulted in suspension of CP's access to classified material.

### PRETEXTUAL ARGUMENT

Management has presented legitimate non-discriminatory reasons for its actions. CP may, nevertheless, be able to prove discrimination if sufficient evidence of pretext exists. It is CP's burden to show that the agency more likely than not was motivated by discriminatory animus in its actions (e.g., by showing that its explanation is unworthy of belief).[41]

---

CP's formal complaint on September 15, 2021. The Agency implemented maximum telework during Covid-19; therefore, the DLA EEO Office staff did not have access to U.S. mail (ROI pp. 7, 11-13, 71, 75).
[39] https://www.eeoc.gov/retaliation-making-it-personal
[40] *A Guide to Federal Sector Equal Employment Law and Practice*, Ernest C. Hadley, Dewey Publication, Inc. 2019.
[41] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

CP offered no new statements or evidence in his rebuttal statement.

The record shows the following:

On November 1, 2021, CP, E1, E2, E3, and E5 all worked in the same organization and were supervised by both S1 and S2 (ROI pp. 164-165).

The position of Electronic Duplicating System Technician, GS-0303-07, reflected on position description number H1U0968, required secret access (ROI p. 166, 424).

For the rating year of 2018, CP was given an overall performance rating of "3.0 – Fully Successful". His rating official was Carlito Trinidad.[42] No negative comments concerning CP's performance were reflected in his rating. It was mentioned several times that though CP did not have access to classified material, he adhered to all security rules, regulations and procedures and worked to maintain proper access to documents by authorized personnel only (ROI pp. 200-208).

CP received a '3.0 – fully successful' overall rating for performance year 2019; S3 was the rating official. Comments for his performance elements were mostly positive. However, for the element of "performance management", CP was said to sometimes jump over the chain of command sometimes; however, he mostly follows the correct procedures. For the element 4, "Protection of Classified Information", CP was said to no longer handle classified info, but yet knows the procedures and remains current with his training (ROI pp. 191-198).

For the 2020 performance rating year, CP received '3.0 - fully successful' as his overall rating of record, and for each of his performance elements. However, each element contained a performance element narrative from S1, who was CP's rating official and supervisor. The narratives detailed CP's performance deficiencies. For performance element 1, "Safety", CP's work area was described as constantly messy, despite several reminders to staff to keep their areas neat and free of debris. For performance element 2, "Security", CP was said to have used his cell phone in the vicinity of classified information after employees were reminded to put cell phones up until classified reproduction was completed and hard drives removed and stored away. For element 3 "Timely Completion of Duties and Avoiding Potential Problems", CP was said to not have completed work for a customer in a timely manner. For element 4, "Quality of Work Produced", CP was said to have completed numerous jobs crooked and shipped them to the wrong end user. This resulted in the organization having to reprint the jobs, thus costing the organization approximately $3500.00 of printing time, labor, and material costs. S1 mentioned CP was issued a Letter of Warning for this issue. CP was said to complete his workload as assigned for element 5, "Manage Work". Specific instances concerning poor customer service and team interactions were cited in "element 6, Customer Service". CP was said to have yelled at a colleague and his

[42] Carlito Trinidad is not named as a responsible management official for any of the allegations in the instant complaint.

chain of command. He was also accused of hanging up the phone, going outside of his chain of command to address issues (ROI pp. 183-188).

For the 2021 performance rating year, CP was given an overall rating of record of '1.0 - unacceptable' by S1. He was given the rating of 'fully successful' in the performance elements of: safety, security, customer service, work management, and quality of work produced.[43] He earned the rating of 'unacceptable for 'timely completion of duties and avoiding potential problems; this was the only element that contained a narrative from S1 detailing CP's performance. According to S1, CP was late with shipment of print jobs to the customer and also shipped a customer an incomplete job. His avoidable error cost the organization $3149.89 in man hours to reprint the job, and could have been avoided had CP doubled the order's job ticket and proof copy to ensure completion (ROI pp. 170-178).

By undated correspondence, E6 notified CP that his security clearance has been suspended and he was asked to sign letter in acknowledgment of receipt. Reason for the suspense was not provided in the subject correspondence (ROI p. 147).

By memorandum, subject "Subject: Suspension of Access to Classified Information and Sensitive Information",[44] S7 notified CP that his access to classified and sensitive information was suspended pending review and final determination. The suspension was due to concerns S1 had stemming from the DLA Intelligence Security Office report of investigation concerning CP's threatening statement in the workplace December 2019, January 2020, and March 10, 2020 (ROI pp. 141, 423).

By memorandum dated February 12, 2021, "subject: Placement on Administrative Leave", S5 placed CP in administrative leave status pending completion of a management review of an investigation of C's alleged misconduct. It was explained CP was placed in this status due to the serious nature of his alleged conduct and the need to ensure the safety of the workforce. He was ordered to not return to the worksite until either he receives written instruction by management to do so or has to conduct business requiring his on-site presence. CP signed the memorandum acknowledging receipt (ROI p. 249).

By memorandum signed by S5 and dated February 26, 2021, CP was informed that as of that date he will no longer be in a paid administrative leave status, but instead will be placed in an Absent Without Official Leave (AWOL) status starting March 1, 2022. The memorandum explained that by letter dated February 19, 2021, he was order by the Judge Advocate General Corps, U.S. Navy, that he could only return to his worksite with written directions to report to specifical military establishment. He is considered no longer ready, willing, and able to report to

[43] Though CP's rating reflects a summary rating of '1.0', calculations show CP should have been given a summary rating of 2.6. Though the rating is higher, CP's performance still would have been rating as 'unacceptable' based on the assigned range for the ratings (ROI p. 178).
[44] S7 digitally signed the memorandum; however, the date of the signature is not legible (ROI p. 141).

his workplace and will remain in AWOL status unless he has approved leave or the subject order is lifted. The letter further states that continued AWOL can result in disciplinary action up to including removal from Federal service (ROI pp. 142, 250).

By undated memorandum addressed to Captain Jason Adams, DLA Indo-Pacific, "Subject: Finding for Command-Initiated Investigation into Allegations of Harassment and Hostile Work Environment at [CP's Worksite]" an investigative report was written based on allegations that CP made concerning workplace harassment and HWE. The investigator concluded, based on the evidence, that the allegations against CP of fostering harassment and a hostile work environment were substantiated. As a result, the investigator recommended the Commander suspend CP's access to classified material and start the process of revoking his security clearance (ROI pp. 251-296).

By email dated March 18, 2021, while in the hospital, CP shared with S4 that he plans to retire once HR provides him with the proper forms (ROI p. 149)

Preliminary Inquiry Report was issued concerning an investigation of allegation of a hostile work environment and retaliation by S1 towards CP. The Investigation centered around negative performance review comments and disapproval of WSL for COVID testing. CP was one of several individuals interviewed for the inquiry (ROI pp. 216-222).[45]

According to CP's Certificate of Release or Discharge from Active Duty, dated February 1, 2007, CP separated from military service due to physical disability (ROI pp. 155-156).

By email dated February 21, 2022, subject: Classified Printing, E5 informed S1 that she saw CP on his cell phone in the vicinity of classified information after staff was told to not have our cell phones or watches out (ROI p. 841).

DLA Instruction (DLAI) 5200.02, effective November 30, 2018, "subject: Personnel Security Program" allows the Agency and appropriate leadership to take needed actions when there is an occurrence that leads to potential concern of an employee's access to classified or sensitive information. According to DLAI 5200.02, Directors and Commanders of MSC, Regional Commands are among the Agency leadership who can decide whether to suspend access to classified and sensitive information for person in sensitive positions when information is known that can raise doubt about the employee's reliability and trustworthiness. The lowest level of signature authority for such is the Deputy. The DI Chief, Security Division has the responsibility of reporting potentially disqualifying information for personnel in a sensitive position to the Department of Defense Consolidated Adjudication Facility (DoD CAF) for evaluation, and coordinates suspension of access actions with local Command authorities. They also coordinate with the proper HR Office, Command, and supervisor to ensure access to classified and sensitive

[45] This investigation examined the same allegations in this instant EEO complaint (ROI pp.216-222).

information is suspended for applicable personnel until a final favorable determination is made by the DoD CAF. The DI Specialist prepares the suspension memorandum containing the reasons for the action; the MSC Commander or Deputy signs the memo. They ensure coordination with General Counsel and HR occurs in order to advise the Commander of appropriate 'next steps' with the employee (ROI pp. 437, 442, 445, 449-450).

The Agency, as the employer, has broad discretion to set policies and carry out personnel decisions, absent evidence of unlawful motivation.[46] In other words, the U.S. Equal Employment Opportunity Commission (EEOC or Commission) "does not second-guess the business judgment of Agency officials regarding personnel decisions without a demonstrably discriminatory motive."[47]

## VII. CONCLUSION

Based on the aforementioned reasons, CP failed to establish that he was subjected to disparate treatment and harassment based on disability, or reprisal. As such, CP is not entitled to recovery of any damages, fees or costs associated with these claims. If CP does not agree with this decision and the reasons set forth, he may appeal to the EEOC within 30 calendar days of receiving this decision, as provided by 29 CFR §1614.401and 402.

SAMUEL.JANICE.H.1046995186 Digitally signed by SAMUEL.JANICE.H.1046995186 Date: 2022.11.04 08:29:04 -04'00'

Janice Samuel
Director
Office of Equal Employment Opportunity
and Diversity

---

[46] *Burdine at 259; Vanek v. Dep't of the Treasury, EEOC Request No. 05940906 (Jan. 16, 1997).*
[47] *Camden v. Dep't of Justice, EEOC Appeal No. 0120093506 (Jul. 27, 2012).*

APPEAL RIGHTS

This is the final action of DLA on the substantive issues in this complaint of discrimination, DLA Case Number DLAF-20-0424, the corrective action relating thereto, and on the question of Complainant's entitlement to legal fees or costs or compensatory damages. If Complainant does not agree with this decision, he/she may appeal to the EEOC within 30 calendar days of receipt of this decision, as provided by 29 CFR §1614.401 and .402.

Filing an Appeal:

Appeals and supporting documents may be filed with the Office of Federal Operations (OFO)[48] using the EEOC Public Portal located at https://publicportal.eeoc.gov/, a secure, web-based application that allows individuals to create an account, file an appeal of an agency's final action on a formal EEO Complaint, identify a representative and provide their contact information; and submit and receive documents supporting their appeal. If you decide to appeal, be advised in the public portal to select the Agency " DOD DLA Headquarters Operations Division (DDL3)"." For the EEOC Public Portal's User's Guide, Appealing Federal Agency Decisions to the EEOC, go to https://publicportal.eeoc.gov/Portal/content/UserGuides/V7-Appeals_to_the_EEOC.pdf

If CP uses the EEOC Public Portal to submit his/her appeal and/or supporting/opposing statement, the EEOC Public Portal will automatically notify the agency.

CP is not required to send a statement in support of (or in opposition to) an appeal, but s/he can if s/he wants to. If CP does decide to send a statement, he/she must do so within 30 days of the day CP files his/her appeal or, if it is a statement opposing an appeal, within 30 days from the day CP receives a statement in support of appeal from the other party to the case.

If CP needs more time to send EEOC his/her statement, CP can ask for more time in writing. Complainant can request the extension using the EEOC Public Portal, by uploading the request and identifying it as an "Extension Request" document type. Regardless of how CP submits his/her extension request, it must be sent before the 30 days pass. In CP's request, he/she should include specific justification for why s/he needs more time.

If CP does not file an appeal within the 30-day time limit, the appeal will be untimely and may be dismissed by EEOC.

[48] In light of the National Emergency declared by the President due to the Coronavirus (COVID-19), until further notice, OFO has limited access to U.S. Mail; therefore, they are asking that all submissions and communications from both agencies and complainants be digital, via the Public Portal/FEDSEP.

Additional information on appeals to EEOC (i.e., how EEOC decides an appeal, and how to get a status of the appeal) can be found on their website at https://www.eeoc.gov/federal-sector/appeals.

Filing a Civil Action:

In lieu of an appeal to EEOC, CP may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the final Agency decision.

If an appeal to EEOC is filed, a civil action may be filed in an appropriate U.S. District Court within 90 calendar days of receipt of EEOC's final decision. A civil action may be filed any time after 180 calendar days of the date of filing an appeal to EEOC if there has been no final decision by EEOC.

If a civil action is filed, and CP does not have or is unable to obtain the services of a lawyer, the court may be requested to appoint a lawyer to represent him/her in connection with the complaint. In such circumstances as the court may deem just, the court may appoint a lawyer and may authorize the commencement of the action without the payment of fees, costs, or security. Any such request must be submitted in such form and manner as the court may require.

If CP files a civil action, the appropriate department or agency head, as well as his/her official title must be named. Failure to name the head of the department or agency and his official title may result in the loss of any judicial redress to which CP may be entitled. DLA is a component of the Department of Defense (DOD). DOD has determined that The Honorable Lloyd J. Austin, III, Secretary of Defense, shall be named as the defendant in any civil action filed against a DOD component.

Attachment (EEOC Form 573)

# Electronically Appealing this Agency Decision, Associating an Attorney/Representative and Submitting Documentation Using the EEOC Public Portal

The decision you have just received may be appealed to the Equal Employment Opportunity Commission (EEOC). As an alternative to mailing in your appeal, you may now file it using EEOC's Public Portal.

**WARNING!**

**Attorneys and non-legal representatives MUST NOT use the EEOC Public Portal to file appeals on behalf of their clients because the system will incorrectly list the representative as the complainant. Therefore, complainants MUST file appeals themselves through the EEOC Public Portal, regardless of whether they are being represented in their appeal.**

Here are the instructions for filing your appeal in the EEOC Public Portal:

1. The first step is registering for the Public Portal (if you are already registered in the Public Portal, you may skip to #5 below). Go to https://publicportal.eeoc.gov/Portal/Login.aspx, and click on the **Register** link on the upper, right-hand side of the page.

2. Read the EEOC Public Portal's Privacy Policy and click on the **OK** button.
3. Fill out the requested information, being sure to enter the information for the required fields designated by the red asterisk (*). Please note that when you enter your Zip Code and press the **Tab** key, your City and State should auto-populate. Once you enter your email address, click the **Tab** key and then select **Validate**. The Portal will then send an email containing a verification code to the email address you entered. Go to that email account, open the email from "U.S. Equal Employment Opportunity Commission," copy or take note of the code, go back to the Create Account page, paste or enter the code in the box provided, and click **Submit**.

4. Enter at least one telephone number, enter a password twice (to confirm), select and provide the answer to two Security Questions, and click **Submit**. You will then be brought back to the Public Portal Home page.
5. Click on the **Filing with EEOC** icon.

Filing with EEOC

6. In the resulting page, click on the circle next to **Federal Government agency that I applied to, work for, or worked for as a federal employee or contractor**, and then click **Next**.

Federal Government agency that I applied to, work for, or worked for as a federal employee or contractor

7. Read the information provided and click on any links of interest. When done, click **Next**.
8. In the resulting page, click on the circle next to **File a new appeal**. Then click **Next**.
9. Read the information on the next screen. Then click **Next**.
10. A **Confirmation** pop-up will appear reminding you that the EEOC Public Portal does not permit attorneys or representatives to file an appeal on behalf of a complainant. If you, as complainant, are filing the appeal, click **Yes**. If you are an attorney or representative, click **No** and instead have complainant file on their own behalf, naming you as their attorney or representative.
11. Read the information you will need to provide to the EEOC. Make sure that it is available so that you can answer the next questions. When you have gathered that information, click **Next**.
12. Review the **Information about you** page to ensure that it is correct. Upon confirming the information is accurate, click **Continue**.
13. If you **do not** have an attorney or representative, click on the circle for **No**, and click **Next** [***You may skip to #16 below***]. IF YOU ARE REPRESENTED BY AN ATTORNEY OR REPRESENTATIVE, click on the circle for **Yes**, and click **Next**.
14. Fill out the required information designated with a red asterisk (*) (again, when you enter your attorney's/rep's Zip code and hit the **Tab** key, the City and State information will auto-populate), and when complete, click **Next**. The system will send a message to the email address you provided for your attorney/representative asking that they verify that they are representing you.

## Representative Information

(By providing this information you authorize EEOC to verify this person represents you.)

Is this person an attorney?* Yes No

| | | | |
|---|---|---|---|
| Prefix: | | | |
| First Name:* | Amy | Middle: | |
| Last Name:* | Attorney | Suffix: | Esq. |
| Address(1):* | 123 Lawyer Lane | Address(2) | |
| Country:* | United States of America | Zip Code: | 20036 |
| City | WASHINGTON | State: | District Of Columbia |
| Phone Number: | (202) 555-8000 | (At least one phone number must be entered*) | |
| Cell Number: | e.g., 1234567890 | Email:* | ether42@netscapezs.com |

Next Back Return Home

15. In the resulting screen you can add another attorney/representative as necessary or edit the information of an existing attorney/representative. When complete, click **Next**.

16. On the **Agency Information** page, fill out the required information designated with a red asterisk (*) (again, when you enter the agency facility's Zip code and click **Tab**, the City and State information will auto-populate). **When selecting the agency named in your complaint, be sure to select the appropriate component against which you brought your EEO complaint.** You can begin typing the agency/component and select it when it appears, or click on the magnifying glass icon and select the agency/component from the resulting list. The **Agency Complaint number** is the number assigned by the agency against which you filed the complaint – not the EEOC Hearing number. When complete, click **Next**.

Agency Information

Agency named in your complaint:*
ZZ FEDSEP TEST AGENCY x

Agency Complaint number:*
EEO-1234

Location of duty station or local facility in which the complaint arose:*
Address1
Address2
Country/Region*
United States of America
Zip Code
20036
City*
WASHINGTON
State
District Of Columbia

Next | Back | Return Home

17. In the second **Agency Information** page, answer the required information designated with a red asterisk (*). If you requested a hearing before an EEOC Administrative Judge (whether/not a hearing was held), be sure to enter the Hearing Number assigned to your request. When complete, click **Submit Appeal**.

18. The EEOC Public Portal will send to the email address you entered into the Public Portal an initial letter acknowledging your appeal request and providing you with next steps and links to helpful resources.

## How to View Documents and Add Documents to Your Appeal

After electronically filing your appeal, you (and your attorney or representative if you have added them to your appeal) can then add documents that EEOC can use to determine whether the appeal is appropriate, and/or that helps support your appeal.

1. While still logged in, or after having again logged in to the Public Portal, click on the **My Cases** icon.

My Cases

2. Click on the link for the Appeal Number for which you are submitting documentation.

3. In the resulting **My Case** page, you can read the current status of your appeal, add or update attorneys/representatives, and, as directed by the information contained in the **My Documents** section, upload or review existing documentation.

4. To review existing documentation, click on the link for the particular file. Once you click **OK** acknowledging that it may take a while to download, you will be prompted to open the file in the appropriate program, usually Adobe Acrobat, or some other PDF reader. Once you click on your preferred program and click **OK**, the document will open for your review. If you wish, you can save the file to your computer. You can do this for any of the files listed in the **My Documents** section.

5. To add documentation to your appeal, e.g., the agency's final decision on your EEO complaint (**adding this document is strongly recommended**), supporting evidence, or (as permitted by EEOC's regulations) a statement or brief in support of your appeal), click on the **Upload** icon.

6. In the resulting window, select from the **Type of Document** drop-down what kind of document you are adding (e.g., "**Appeal**" if you wish to upload the EEOC Form 573 Notice of Appeal/Petition; "**Agency Final Action**" for the agency's decision on your EEO complaint), and then click on the **Attach Document** button. **DO NOT UPLOAD PASSWORD-PROTECTED DOCUMENTS**.

7. You will then be presented with a **File Upload** screen, where you can navigate to where the file you wish to upload is located, select the file, and click **Open**. The file name will then appear in the **Select file to upload** window. Click **Upload**.

8. If the document you uploaded doesn't immediately appear in the list of documents, click once or twice on your browser's **Refresh** icon. Then the document will appear in the list.

9. The Public Portal will send you and any attorneys/representatives you have added an email indicating that your document was successfully added to the appellate record.

10. Repeat Steps 5 through 8 for any other documentation you wish to upload. **Rather than submitting multiple, separate documents individually, make every effort to combine your documents into a single file.** For example, if you want to submit a statement in support of your appeal, and your statement refers to exhibits, combine the statement and exhibits into one document, and then submit that one document. Doing so allows for more efficient and effective review of your appeal file. We note that there are multiple smart phone apps available that allow you to "scan" multiple-page documents into a single digital file.

**Appeals to the Commission can be made digitally using the Public Portal at https://publicportal.eeoc.gov/Portal/Login.aspx.**

*U.S. Equal Employment Opportunity Commission*

**Management Directive 110**

# NOTICE OF APPEAL/PETITION - COMPLAINANT

TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

| **Complainant Information: (Please Print or Type)** | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code) | |
| E-mail address (if any): | |
| **Attorney/Representative Information (if any):** | |
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |
| **General Information:** | |
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ☐ Yes Date Received ______________ (Remember to attach a copy)<br>☐ No<br>☐ This appeal alleges a breach of a settlement agreement |
| Has a complaint been filed on this same matter with the Commission, another agency, or through any other administrative or collective bargaining procedures? | ☐ No |

| | |
|---|---|
| | ☐ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ☐ No<br>☐ Yes (Attach a copy of the civil action filed) |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the Commission Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the Commission and with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, submitted, or faxed to the Commission at the address above.

Please specify any reasonable accommodations you will require to participate in the appeal process:

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |
| Method of Service on Agency: | |
| Date of Service: | |

**PRIVACY ACT STATEMENT ON REVERSE SIDE.**

**EEOC Form 573 REV 2/09**

**PRIVACY ACT STATEMENT**

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, February 2009
2. **AUTHORITY:** 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and effectively adjudicate appeals filed by federal employees, former federal employees, and applicants for federal employment.
4. **ROUTINE USES:** Information provided on this form may be disclosed to: (a) appropriate federal, state, or local agencies when relevant to civil, criminal, or regulatory investigations or proceedings; (b) a Congressional office in response to an inquiry from that office at your request; and (c) a bar association or disciplinary board investigating complaints against attorneys representing parties before the Commission. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a database for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

You may send your appeal to:

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

**Fax it to (202) 663-7022 or submit it through the Commission's electronic submission portal.**

EXCERPT OF RECORD, TAB 4

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| RODOLFO T. ASUNCION, JR., Plaintiff, vs. THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE Defendant. | CIV. NO. 23-00119 LEK-KJM |
|---|---|

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant the Honorable Lloyd J. Austin, III, Secretary of Defense's ("Defendant") Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment ("Motion"), filed on June 6, 2023. [Dkt. no. 8.] Plaintiff Rodolfo T. Asuncion, Jr. ("Asuncion") filed his memorandum in opposition to the Motion on July 18, 2023, and Defendant filed his reply on July 25, 2022. [Dkt. nos. 14, 16.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Defendant's Motion is hereby granted for the reasons set forth below.

## BACKGROUND

Asuncion filed his Complaint on March 3, 2023. [Dkt. no. 1.] Asuncion served in the National Guard and during his service he was deployed to Iraq. See id. at ¶¶ 24, 31. Asuncion was a Defense Logistics Agency ("DLA") civilian employee for thirty years. DLA is a part of the United States Department of Defense ("DOD"). See id. at ¶¶ 2-3. Asuncion alleges he "is a handicapped person within the meaning of the Rehabilitation Act of 1973 [('the Rehab Act')] by reason of his impairments that makes it difficult and burdensome for [him] to complete his work tasks without a reasonable accommodation . . . ." [Id. at ¶ 6.] Asuncion's direct supervisor was Colleen R. Weaver ("Weaver"). [Id. at ¶ 8.] He asserts that, before Weaver became his direct supervisor, previous direct supervisors "informally reasonably accommodated [his] qualifying disabilities . . . on an 'as needed' basis." [Id. at ¶ 14.] After Weaver became Asuncion's direct supervisor, Asuncion states Weaver implemented informal policies that failed to reasonably accommodate his handicap. See id. at ¶¶ 16-19. After Weaver learned about Asuncion's disability, he informed Weaver that he previously provided the required paperwork to the former director and supervisor. Asuncion states that, although Weaver asserts she never received the paperwork establishing Asuncion's disability, the paperwork is

located in Asuncion's Electronic Official Personnel File ("EOPF"). See id. at ¶¶ 22-27.

In one alleged incident, Weaver asked Asuncion about his disability when Asuncion asked her for assistance with a task and Weaver told Asuncion to do it himself. Asuncion informed Weaver that the noise from the machine needed to perform the task negatively impacts his post-traumatic stress disorder ("PTSD"). See id. at ¶¶ 28-31. Weaver asked Asuncion for documentation regarding his disability "instead of checking for a record of [his] impairments and informal reasonable accommodation." [Id. at ¶ 32.] Weaver "then directed [Asuncion]'s colleague to assist him." [Id. at ¶ 33.] In February 2019, during a site visit from Mark Shadinger ("Shadinger") - a Production Manager and Asuncion's third-level supervisor - Asuncion told Shadinger about his PTSD. Shadinger asked Asuncion for verifying paperwork, and Asuncion told Shadinger that he provided the paperwork to pervious management. According to Shadinger, he was not able to find any previous paperwork in Asuncion's file. See id. at ¶¶ 34-36.

Asuncion alleges he asked Weaver for a reasonable accommodation when he requested a desk and a wagon to help him with organization. Weaver denied his request. See id. at ¶¶ 52-53. Asuncion asserts Weaver falsely claimed that he created a hostile work environment for her. He further states

Weaver made hostile and derogatory statements about disabled veterans to Asuncion. See id. at ¶¶ 58-59. Asuncion states that, on December 17, 2019, Weaver asked him if he was carrying any weapons or illegal drugs. See id. at ¶ 70. In December 2019, Asuncion filed an Equal Employment Opportunity ("EEO") claim on the basis of disability discrimination. See id. at ¶ 76.

On February 11, 2020, Weaver allegedly called base police on Asuncion, but the police did not find him "to be a danger to the health and safety of himself or others." [Id. at ¶ 71-72 (footnote omitted).] On March 2, 2020, Weaver and Shadinger allegedly berated Asuncion for "jump[ing] the chain of command with his complaints." [Id. at ¶ 73.] On September 14, 2020, Weaver informed Asuncion that he did not receive an annual cash or time-off award because he was rated poorly on his performance evaluations, although his performance evaluations showed positive ratings. See id. at ¶ 74 & n.3.

On December 10, 2020, DLA issued a written acknowledgment that Asuncion could file a formal complaint. On February 21, 2021, Asuncion was placed on paid administrative leave without details of any alleged misconduct. See id. ¶ 77, ¶ 78 & n.4. On February 26, 2021, Asuncion's access to classified information was suspended because a report of investigation allegedly substantiated claims that Asuncion made

threatening statements at work in December 2019, January 2020, and March 2020. See id. at ¶¶ 81, 86. On March 16, 2021, Asuncion was placed on an indefinite suspension without pay. On April 21, 2021, Asuncion received a Notice of Decision-Indefinite Suspension (Non-Disciplinary), which was his official notice that he was placed on indefinite suspension without pay for a failure to maintain access to classified and sensitive information. See id. at ¶ 88. A final agency decision relating to Asuncion's EEO complaint was issued on November 4, 2022. See id. at ¶ 4.

Asuncion appears to allege a discrimination claim against Defendant for a failure to provide meaningful and effective accommodations in violation of Section 504 of the Rehab Act. See id. at ¶ 110.

**DISCUSSION**

In the Motion, Defendant argues Asuncion cannot bring claims related to the revocation of his security clearance because they are not subject to judicial review. See Motion, Mem. in Supp. at 10-13. Asuncion states he "is not challenging the suspension of his security clearance in this forum." [Mem. in Opp. at 11 (emphasis omitted).] Specifically, Asuncion clarifies that he "is challenging the underlying discriminatory and retaliatory conduct by his first level supervisor, Colleen Weaver, that occurred prior to the suspension of his security

clearance." [Id.] Accordingly, the only claim before the Court is Asuncion's discrimination claim, which was adjudicated through the EEO process, and a final agency decision was issued on November 4, 2022. The final agency decision found that Asuncion "failed to establish that he was subjected to harassment and disparate treatment on the bases of his disability (Mental - PTSD), or reprisal for the filing of the instant complaint." [Defendant's concise statement of facts in support of the Motion, filed 6/6/23 (dkt. no. 9) ("Defendant's CSOF"), Decl. of Joseph A. Somerville III ("Somerville Decl."),[1] Exh. A (CUI Final Agency Decision of the Defense Logistics Agency in the Discrimination Complaint of Rodolfo Asuncion (DLAF-21-0424) ("FAD")), at 1.]

Defendant argues the Complaint is untimely because it was not filed within ninety days after the FAD was received. See Motion, Mem. in Supp. at 15-18. Asuncion contends he and his counsel were unable to open the FAD until December 5, 2022 and therefore the Complaint is timely because that was the date that the filing window began. See, e.g., Mem. in Opp. at 5-6. Asuncion also argues that, even if the filing window began

[1] Joseph A. Somerville III ("Somerville") was a Complaints Manager at DLA's Headquarters EEO Office from August 2022 to March 2023. See Somerville Decl. at ¶ 1.

earlier than December 5, 2022, the filing of the Complaint should be equitably tolled. See. id. at 10.

## I. Facts Regarding the FAD

The November 4, 2022 FAD was transmitted via email to Asuncion and Asuncion's counsel – Shawn A. Luiz, Esq. – on November 8, 2022. See Somerville Decl., Exh. B (CUI Certificate of Service); see also id., Exh. C (email dated 11/8/22 to Somerville confirming the FAD was successfully sent to Asuncion and Mr. Luiz); id., Exh. D (email, dated 11/8/22, from Somerville to Asuncion and Mr. Luiz, transmitting the passphrase to access the encrypted file where the FAD was located).

On November 11, 2022, Mr. Luiz emailed Somerville stating that he could not access the encrypted file to retrieve the FAD and asked for it to be resent in a different format. See Asuncion's concise statement in opposition to the Motion, filed 7/18/23 (dkt. no. 15) ("Asuncion's CSOF"), Decl. of Counsel ("Luiz Decl."), Exh. 1 (compilation of emails to or from Mr. Luiz regarding the FAD) at PageID.198. On November 14, 2022, Somerville emailed Mr. Luiz stating that the file expired, and he would resend a file. See id. at PageID. 200. Somerville emailed Asuncion and Mr. Luiz another passphrase to access the encrypted file for the FAD on November 14, 2022. See id. at PageID.203. Mr. Luiz replied to Somerville later that same day

stating he still could not access the file. See id. at PageID.206, PageID.208.

On November 21, 2022, Mr. Luiz emailed Somerville stating that he could not open the file and requesting that the FAD be sent through the United States mail. See id. at PageID.210. On December 3, 2022, Mr. Luiz emailed Kimberly Lewis ("Lewis")[2] and Somerville stating that he had not been able to open the FDA file and requesting that it be sent in a non-encrypted PDF format. See id., Exh. 2 (additional compilation of emails that Mr. Luiz sent or received) at PageID.217. Also on December 3, 2022, Mr. Luiz emailed Bruce McCarty - DLA's General Counsel - asking for a copy of the FDA. See id., Exh. 3 (email from Mr. Luiz to Bruce McCarty dated 12/3/22, forwarding Mr. Luiz's 12/3/22 email to Lewis and Somerville).

On December 5, Lewis replied to Mr. Luiz, sending a copy of the FAD, and Lewis asking him to acknowledge its receipt. [Id., Exh. 2 at PageID. 218.] Later that same day, Mr. Luiz replied to Lewis confirming receipt of the FAD and asking Lewis to confirm that the statutory timelines to address the FAD would start on December 5, 2022. See id. at PageID.221. Mr. Luiz emailed Lewis again on December 13, 2022 asking her to

[2] Lewis is the Deputy Director of DLA's Equal Employment Opportunity and Diversity and Inclusion Office. See, e.g., Luiz Decl., Exh. 2 at PageID.218.

address the question he asked in the December 5, 2022 email. See id. at PageID.225. On December 14, 2022, Lewis replied to Mr. Luiz stating that, under 29 C.F.R. § 1614, the time begins to run when Mr. Luiz received the FAD and would not issue a new certificate of service. See id. at PageID.224. On December 15, 2022, Mr. Luiz replied to Lewis's email with "[t]hank you!" [Id. at PageID.229.]

Asuncion also attempted to open the encrypted files when they were sent in November, but he states he was unable to open them. [Asuncion CSOF, Decl. of Rodolfo T. Asuncion, Jr. at ¶ 5.] Asuncion also states that DLA sent him copies of the Record of Investigative file through the United States mail, and he does not understand why DLA did not mail a copy of the FAD. [Id. at ¶ 9.]

## II. Time to File Under the Rehab Act

> The Rehabilitation Act states that claims under the Act are governed by the same rights and procedures available in Title VII employment discrimination cases against federal defendants. 29 U.S.C. § 794a(a)(1). Relevant here is the requirement that civil actions be filed "within ninety days after the [agency's] giving of [final decision] notice." 42 U.S.C. § 2000e-5(f)(1). The implementing regulations state that such a civil action must be brought "[w]ithin 90 days of receipt of the agency final action . . . ." 29 C.F.R. § 1614.407(a). . . .

Lax v. Mayorkas, 20 F.4th 1178, 1182 (7th Cir. 2021) (some alterations in Lax). As the Seventh Circuit noted, "there is

potential for discrepancy between these two texts (the statute says the filing window starts with the agency's 'giving' of notice of the final decision, while the regulations state that the window starts only upon the claimant's 'receipt' of the agency's final decision) . . . ." Id. (citation omitted).

"Although not precisely defined in the statute, regulations, or Ninth Circuit case law, other circuits have held that 'receipt' of final agency action is actual or constructive **notice of the action**, and that it need not be by mail, or even written." McCoy v. Dep't of Army, 789 F. Supp. 2d 1221, 1227 (E.D. Cal. 2011) (emphasis added) (citing Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 116 (3d Cir. 2003) ("[W]e hold that oral notice can suffice to start the 90-day period.")).

This principle also comports with other cases. The facts in Lax are similar to the instant case. There, the plaintiff - Brian Lax ("Lax") - initiated an EEO complaint against his employer, the Federal Emergency Management Agency which is a part of the Department of Homeland Security ("DHS"). Lax, 20 F.4th at 1180. On July 15, 2019, the DHS office for Civil Rights and Civil Liberties issued its final decision regarding the Lax's discrimination claim. The final decision was sent to Lax by email on July 17, 2019. Id. The email informed Lax that the final decision was rendered and attached

to the email was a password-protected document that included, *inter alia*, a copy of the final decision and a certificate of service. Another email was sent a minute later with the password to open the document. See id. at 1180-81.

Lax opened and read the emails that day but stated he was unable to open the file that day due to purported technical difficulties. Lax was able to open the document and read the final agency decision the next day, on July 18, 2019. Lax filed his lawsuit in federal court on October 16, 2019, which was ninety-one days after he received the July 17, 2019 email. See id. at 1181.

"The determinative issue" was "whether Lax's mere receipt of the email commence[d] the filing window, or whether he must have opened and read the attachment to that email to commence the filing window." Id. at 1182. The Seventh Circuit held that Lax's "filing window for purposes of 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1614.407 commenced when he received the email, not when he opened the attachment." Id.

The Seventh Circuit reasoned as follows:

> The Court has further clarified that receiving the notice via traditional mail, without opening or reading that notice, is sufficient to trigger the beginning of the filing period. See Threadgill v. Moore U.S.A., Inc., 269 F.3d 848, 849-50 (7th Cir. 2001). In Threadgill, the plaintiff received the right-to-sue notice via traditional mail but then set it aside without opening it or mentioning it to his

> attorney for nearly seven months. Id. at 849. This, the Court held, qualified as "actual receipt" of the notice even though the plaintiff did not read it. Id. at 850.
>
> Like the plaintiff in Threadgill, Lax asks the Court to refrain from commencing the filing window upon his receipt of the notice, simply because he did not **read** the notice until later. But the Court rejected this argument in Threadgill and Lax offers no reason why that case's holding does not foreclose his arguments here. It is true that, unlike the Threadgill plaintiff, Lax asserts that he was unable—rather than simply unwilling—to read the notice on the day he received it. But under the present set of circumstances, this distinction does not warrant a different result. Lax concedes that he read the body of the email, which clearly indicated that his final agency decision was attached. He therefore knew at that time (without needing to open the attachment) that what he had received was the final agency decision. Furthermore, the certificate of service stated unambiguously that "it shall be presumed that the parties received the foregoing on the date indicated below [07/17/2019] . . . ." If he believed this presumption to be incorrect, he or his attorney could have clarified the date of receipt at any time in the ninety days leading up to the filing deadline. Neither did so.

Id. at 1182-83 (alterations and emphasis in Lax).

Another case similar to Lax and the present case is also instructive. In McDonald v. Saint Louis University, the plaintiff - Rachel McDonald ("McDonald") - filed a discrimination charge with the Missouri Commission of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on September 27, 2021. See Case No. 4:22-cv-01121-SRC, 2023 WL 4262539, at *1 (E.D. Mo. June 29, 2023), *appeal filed*, No. 23-

2624 (8th Cir. July 13, 2023). "The EEOC closed its investigation on May 10, 2022 and uploaded a document to the EEOC Public Portal titled: 'Notice of Right to Sue (Issued on Request).'" Id. (citations omitted). On the same day, McDonald's counsel received an email from the EEOC stating that a document was added to the EEOC Public Portal regarding McDonald's EEOC case. See id. On May 18, 2022, the EEOC sent McDonald's counsel an email with a subject line stating "REMINDER: Important Document for EEOC Charge 28E-2022-00020." Id. (emphasis in original) (quotation marks and citations omitted). The body of that email explained that the EEOC issued a decision, but the email did not contain an attachment of the decision. See id. McDonald and her counsel lost access to the EEOC portal around January or February 2022 and, thus, could not access the decision. On June 21, 2022, McDonald's counsel emailed an EEOC employee requesting the right-to-sue letter and another EEOC employee emailed McDonald's counsel a copy of the May 10, 2022 right-to-sue letter via email on June 28, 2022. McDonald filed her complaint on September 23, 2022. See id.

The district court stated:

> Despite the wording of the statute, which provides that "within ninety days after the **giving** of such notice a civil action may be brought" (emphasis added), the Eighth Circuit has described 42 U.S.C. § 2000e-5(f)(1) as requiring a plaintiff to file a civil action within ninety days after **receipt** of a right-to-sue letter from

the EEOC. See, e.g., Walker v. Tyson Foods Inc, 723 F. App'x 387, 388 (8th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)). But see Hales [v. Casey's Mktg. Co.], 886 F.3d [730,] 736 [(8th Cir. 2018)] ("Title VII allows an aggrieved party to bring a civil action within ninety days after notice of dismissal is given by the EEOC." (citing 42 U.S.C. § 2000e-5(f)(1)). This reading of the statute is consistent with the implementing regulations, which provide that a plaintiff may bring a civil action "[w]ithin 90 days of **receipt** of the agency final action. . . ." 29 C.F.R. § 1614.407(a) (emphasis added). It is also consistent with the wording of § 2000e-16(c), which provides that a federal employee may bring a civil action "[w]ithin 90 days of **receipt** of notice of final action. . . ." 42 U.S.C. § 2000e-16(c) (emphasis added).

Other courts agree that "receipt" of notice starts the ninety-day clock. See, e.g., Lax v. Mayorkas, 20 F.4th 1178, 1182 (7th Cir. 2021) ("Though there is potential for discrepancy between these two texts (the statute says the filing window starts with the agency's 'giving' of notice of the final decision, while the regulations state that the window starts only upon the claimant's 'receipt' of the agency's final decision), this Court has held that the filing window begins when a claimant or his attorney 'actually receives' the right-to-sue notice that accompanies the agency's final decision."); Lynn v. W. Gillette, Inc., 564 F.2d 1282, 1286 n.3 (9th Cir. 1977) ("It is the receipt of a Right to Sue letter, not its dispatch, which sets the beginning of ninety-day period."); Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 242 (D.D.C. 2015) ("[T]he 90-day clock begins the day after the date of receipt of the EEOC right to sue letter."). And the Supreme Court has held that "receipt" includes receipt by a plaintiff's attorney or the attorney's office. See Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 92-93 (1990) (citing 42 U.S.C. § 2000e-16(c)); see also id. ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is

> considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting Link v. Wabash R. Co., 370 U.S. 626, 634 (1962))).

Id. at *2-3 (emphases and some alterations in McDonald).

Moreover, in comparing Lax to its case, the district court in McDonald stated:

> Although in Lax the final agency decision was attached to the email, district courts have held that an email providing a link to access the final agency decision on the EEOC's public portal also starts the ninety-day clock. See, e.g., McNaney v. Sampson & Morris Grp., Inc., No. 2:21-CV-1809, 2022 WL 1017388, at *3 (W.D. Pa. Apr. 5, 2022) (holding that the ninety-day period began to run when the EEOC notified the plaintiff's counsel via email that a decision had been made and provided a link to access the decision); see also Paniconi v. Abington Hosp.-Jefferson Health, 604 F. Supp. 3d 290 (E.D. Pa. 2022) (same); Mason v. Derryfield Sch., No. 22-CV-104-SE, 2022 WL 16859666, at *3 (D.N.H. Nov. 7, 2022) (noting that 29 C.F.R. § 1601.3(b) authorizes the EEOC to issue right-to-sue letters electronically, and holding that the statute-of-limitations period began to run on the date the plaintiff received an email from the EEOC notifying her of a decision regarding her charge of discrimination, even though she did not access the right-to-sue letter through the portal until later).

Id. at *4. The district court found that, "[l]ike the body of the email in Lax, the body of the May 18[, 2022] email put McDonald's counsel on notice that the agency's final decision was available." Id. at *5. Thus, "because McDonald's counsel received the email notification on May 18, 2022, it is irrelevant when her counsel actually followed the link to access

the right-to-sue letter on the EEOC portal, or received a copy of the right-to-sue letter via another means." Id. (citation omitted). The district court then found that McDonald's complaint was untimely filed. See id.

Here, Asuncion and his counsel received notice on November 8, 2022 that a final agency decision was rendered. See Somerville Decl., Exhs. B, C. Although Lax and McDonald are not binding on this Court, they are nonetheless persuasive to the instant case. Similar to those cases, this Court finds that the ninety-day filing window started on November 8, 2022 when Asuncion and Mr. Luiz received notice that a final agency decision was rendered. The November 8, 2022 email was unambiguous in relaying to Asuncion and Mr. Luiz that a final agency decision was rendered. As Asuncion concedes, "[o]n November 8, 2022, the DLA emailed a Final Agency Decision via DoD Safe files." [Mem. in Opp. at 2.] Asuncion does not contest that is when he received notice. Rather, he states that he was unable to access the file. See id. But, like in Lax and McDonald, the ninety-day filing window started when Asuncion received the email, not when he was able to access the document. See Lax, 20 F.4th at 1183; McDonald, 2023 WL 4262539, at *5. The issue of when Asuncion opened the document is not relevant to the start of the filing window, but instead goes to whether equitable tolling is applicable. See McDonald, 2023 WL 4262539,

at *5 ("But while her counsel's inability to access the portal may be relevant to the application of equitable tolling, it does not delay the start of the ninety-day filing window." (citing Lax, 20 F.4th at 1182-83)). Thus, this Court addresses whether equitable tolling applies to Asuncion's untimely Complaint.

**III. Equitable Tolling**

Because the statutory time limit set forth in 42 U.S.C. § 2000e-5(f)(1) is non-jurisdictional, equitable tolling may apply. See Irwin, 498 U.S. at 94-95. "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe of Wisc. v. United States, 577 U.S. 250, 255 (2016) (citation and internal quotation marks omitted).

Asuncion contends equitable tolling applies because Lewis "cites the federal regulation that states 90 days is calculated the [sic] date from the attorney's receipt, not the client's receipt which never happened or from the multiple dates that the Agency attempted to send and resend the FAD encrypted via DoD Safe files." [Mem. in Opp. at 10.] Asuncion is mistaken, however, because he and his counsel were both in receipt of the FAD when they were provided notice that a decision was rendered and given the access code to the document.

Asuncion's argument does not go to whether equitable tolling applies but restates his argument regarding when he was in receipt of the FAD.

Without providing additional argument as to why equitable tolling applies, Asuncion string cites three cases. See id. (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982); Coke v. General Adjustment Bureau, Inc., 640 F.2d 584 (5th Cir. 1981); Canales v. Sullivan, 936 F.2d 755 (2nd Cir. 1991)). Asuncion fails to state why those cases are relevant or support his equitable tolling argument. Zipes is irrelevant here because, there, the United States Supreme Court decided the narrow issue of whether the filing of a timely charge of discrimination under Title VII of the Civil Rights Act of 1964 was a jurisdictional issue or a statute of limitations issue subject to waiver, estoppel, and equitable tolling. See 455 U.S. at 393.

Coke, which is a Fifth Circuit case that was decided before Zipes, held that the time limit provision for Title VII was not jurisdictional and subject to equitable tolling, and further held that there was a genuine issue of material fact as to equitable tolling in the case because there was sufficient evidence to support plaintiff's contention that his employer misrepresented facts that impacted when the plaintiff filed his claim. See 640 F.2d at 595. Here, Asuncion makes no contention

that DLA made misrepresentations. In Canales, the Second Circuit held that equitable tolling may be warranted in cases where a claimant fails to timely file due to mental impairment. 936 F.2d at 758-59. Asuncion does not argue he was unable to timely file his Complaint because of mental impairment.

Lax and McDonald are also instructive as to the issue of equitable tolling. In Lax, the Seventh Circuit held that the district court did not abuse its discretion when it declined to apply equitable tolling, in part, because Lax "was on notice that his filing window started on July 17—beyond the fact that he knew he received the final agency decision that day after reading the body of the email, the attachment itself stated that, 'for timeliness purposes,' it would be presumed that he received it on July 17." 20 F.4th at 1183. In McDonald, the district court declined to apply equitable tolling because, even though the EEOC sent McDonald a copy of the right-to-sue letter over a month after the original email, "McDonald still had forty-one days remaining to file her lawsuit." 2023 WL 4262539, at *6 (citation omitted).

Ultimately, Asuncion failed to diligently pursue his rights, and no extraordinary circumstances prevented him from timely filing his Complaint. Although Mr. Luiz did not read the FAD until December 5, 2022, there was still about sixty-three days to file a timely complaint. This is even more time than

the plaintiff in McDonald had. See id. If Mr. Luiz was concerned with whether sixty-three days was adequate time to draft and file an appropriate complaint for his client, he could have filed a basic complaint to ensure it was filed within the deadline and then filed an amended complaint as a matter of course. See Fed. R. Civ. P. 15(a)(1); see also Irwin, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . .").

While Mr. Luiz states he "reasonably believed that the plain reading of 29 CFR § 1614.407 and the email from Ms. Lewis confirmed that the 90 days to file in federal court commenced from the date . . . that Plaintiff's counsel was able to actually download, open and read" the FAD, [Mem. in Opp. at 8,] this Court is not convinced. First, Mr. Luiz relies solely on 29 C.F.R. § 1614.407 and fails to acknowledge the language in, and interplay of, 42 U.S.C. § 2000e-5(f)(1). This is important here because the language in § 2000e-5(f)(1) only requires "giving" of notice of an agency's final decision. In light of the "potential discrepancy between" § 1614.407(a) and § 2000e-5(f)(1), see Lax, 20 F.4th at 1182, diligence would reasonably require counsel to strongly consider whether interpreting the deadline in the most favorable way to a client's position would

be worth risking a late filing and barring an action from being pursued. Given the circumstances of this case, such an interpretation was not reasonable, particularly because Asuncion had sufficient time to file a timely complaint even after Mr. Luiz was able to read the FAD.

Second, Lewis explicitly informed Mr. Luiz that she would not issue a second certificate of service. See Luiz Decl., Exh. 2 at PageID.224 (email, dated 12/14/22, to Mr. Luiz from Lewis stating, "[w]e will not issue a new COS since we have proof you received the FAD via email"). The original certificate of service states that the FAD was transmitted to Asuncion and Mr. Luiz on November 8, 2022, see Somerville Decl., Exh. B, and Asuncion does not contend otherwise. After Lewis informed Mr. Luiz that a new certificate of service would not be issued, Mr. Luiz acknowledged the DLA's position and replied "[t]hank you!" [Luiz Decl., Exh. 2 at PageID.229 (email, dated 12/15/22, to Lewis from Mr. Luiz).] It is true that Lewis stated in her December 14, 2022 email that "[a]ccording to 29 CFR 1614 the time starts when you as the Attorney received the FAD." [Id.] But, Lewis made it clear that her position was that Mr. Luiz would not be issued a new certificate of service because he previously "received the FAD." See id. It is unclear, then, how Mr. Luiz could have reasonably believed that Lewis confirmed his position, particularly in light of the clear

contradiction of the plain text of the original certificate of service he received. At best, Lewis's response was ambiguous, which would reasonably require a follow-up conversation or an assumption that, because a new certificate of service would not be issued, the original certificate of service still controlled. As in Lax, where the plaintiff had clear notice in the email attachment about what the date was "for timeliness purposes," see 20 F.4th at 1183, so too did Asuncion and Mr. Luiz because the certificate of service clearly indicated that, "[f]or timeliness purposes, it shall be presumed that the parties received the foregoing DLA final agency decision . . . within five (5) calendar days after it was mailed[,]" *i.e.*, on November 8, 2022, [Somerville Decl., Exh. B].

Finally, although Mr. Luiz emailed Somerville and other DLA employees to request a copy of the FDA, he did not appear to be in a particular rush, given the length in time he emailed those employees. Moreover, despite Somerville's number being in his emails to Mr. Luiz as well as Lewis's number being in Somerville's auto-reply email, see, e.g., Mem. in Opp. at 4 (quoting Somerville's auto-reply message containing Lewis's email address and phone number), Mr. Luiz does not state that he called them. Although the DLA employees did not respond immediately to Mr. Luiz's emails, and Mr. Luiz emailed them multiple times, Mr. Luiz was not so concerned that he took it

upon himself to call anyone to ensure the issue was promptly and unambiguously resolved.

While the Ninth Circuit has not explicitly ruled on the issue of what constitutes as "receipt" under 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1614.407, the case law in other circuits clearly illustrate how strict the deadline to file is enforced for claims under Title VII or the Rehab Act. See, e.g., Lax, 20 F.4th at 1183 (holding the filing was untimely by one day and that it was not an abuse of discretion to decline to apply equitable tolling); Miller v. Downtown Bid Servs. Corp., 281 F. Supp. 3d 15, 19 (D.D.C. 2017) ("Courts have strictly construed the ninety-day statute of limitations in Title VII cases" and "will dismiss a suit for missing the deadline by even one day" (brackets, quotation marks, and citations omitted)); Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999) ("We have held that a claim filed even one day beyond this ninety day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement." (citation omitted)). Here, Asuncion filed his Complaint almost a month late.

As the Complaint points out: "This case demonstrates that an ounce of prevention is worth a pound of cure." [Complaint at ¶ 63.] Asuncion had ample time to file his Complaint in a timely fashion, even after DLA sent a PDF version

of the FAD on December 5, 2022. Asuncion and Mr. Luiz were on notice when the filing window started. Instead of taking preventative measures to either file a possibly defective pleading within the statutory filing window or to ensure with certainty that DLA was expressly representing that the filing window started on December 5, 2022, Mr. Luiz gambled and filed Asuncion's Complaint under an interpretation that was most favorable to his client's position despite the very real possibility that it was not reasonable under the circumstances. Indeed, this Court finds that Mr. Luiz's interpretation was not reasonable. This is not a case "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." See Irwin, 498 U.S. at 96. This is also not a case where the "notice of the statutory period was clearly inadequate." See Scholar v. Pac. Bell, 963 F.2d 264, 268 (9th Cir. 1992) (citations omitted). The Supreme Court has made it clear that equitable tolling is applied "only sparingly." Irwin, 498 U.S. at 96. This is, in part, because:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As [the Supreme Court] stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

Although this Court has sympathy for Asuncion, sympathy is not enough to overcome the finding that his Complaint was untimely filed and equitable tolling is not warranted. Defendant's Motion is granted to the extent this Court finds there is not a genuine issue of material fact as to whether Asuncion's Complaint was untimely filed. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Because equitable tolling is not warranted in the instant case, summary judgment is granted in favor of Defendant.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment, filed June 6, 2023, is HEREBY GRANTED. The Motion is GRANTED to the extent that summary judgment is granted in favor of Defendant. The Clerk's Office is directed to enter judgment and close the case on **September 29, 2023**, unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 14, 2023.

/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RODOLFO T. ASUNCION, JR. VS. THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE; CV 23-000119 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

EXCERPT OF RECORD, TAB 5

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500 Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants. | CIVIL NO. 23-00119 LEK-KJM<br><br>**DECLARATION OF RODOLFO T. ASUNCION, JR.** |

**DECLARATION OF RODOLFO T. ASUNCION, JR.**

1. I, RODOLFO T. ASUNCION, JR., pursuant to 28 U.S.C. Section 1746, hereby declare under penalty of the law that the following is true and correct in response to the Defendant's Motion to Dismiss, or for Partial Summary Judgment.

2. I am the named Plaintiff in this matter.

3. I never received a copy of the Final Agency Decision (FAD) from the DLA.

4. Because I am on indefinite suspension without pay, I do not have access to any government phone or computer currently, nor did I have in November and December of 2022.

5. I attempted to access the FAD through the DoD Safe file in November of 2022, but was unable to do so with my personal devices.

6. My attorney, Shawn A. Luiz, called me in November of 2022 and asked if I received a copy of the FAD yet.

7. My attorney told me at that time he could not access the DoD Safe files either.

8. My attorney notified me that he sent emails to the DLA and the DLA's General Counsel the first week of December of 2022, advising them that he was still unable to access the FAD.

9. The DLA mailed copies of the Record of Investigative file via U.S. Mail, which was voluminous and in parts 1 and 2, so I do not understand why the DLA did not just mail my attorney and I a copy of the FAD.

10.I believe the DLA sent the files in non-accessible file formats to make it as difficult as possible for my attorney and I to receive a copy of the FAD so my attorney could file a lawsuit on my behalf.

I, RODOLFO T. ASUNCION, JR. hereby declares under penalty of law that the forgoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawaii, July 18, 2023.

RODOLFO T. ASUNCION, JR.

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500 Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants. | CIVIL NO. 23-00119 LEK-KJM<br><br>**DECLARATION OF COUNSEL** |

## DECLARATION OF COUNSEL

1. I, SHAWN A. LUIZ, Esq. pursuant to 28 U.S.C. Section 1746, hereby declare under penalty of the law that the following is true and correct in response to the Defendant's Motion to Dismiss or for Partial Summary Judgment:

2. I am an attorney licensed to practice law in the State of Hawaii, the U.S. District Court for the District of Hawaii, the Ninth Circuit, the

U.S. Supreme Court, the State of Florida, and the U.S. District Court for the Middle District of Florida, and I am attorney of record for Plaintiff RODOLFO T. ASUNCION, JR.

3. Attached as Exhibit "1" are true and correct copies of the email communications with Somerville in chronological order from earliest to latest.

4. Attached as Exhibit "2" are true and correct copies of the email communications with Lewis in chronological order from earliest to latest.

5. Attached as Exhibit "3" are true and correct copies of the sole email communication with Bruce McCarty, DLA's General Counsel. I never received a response from Mr. McCarty or a copy of the FAD from Mr. McCarty.

6. Attached as Exhibit "4" are true and correct copies of the notification emails to my client apprising him of what was happening with Declarant attempting to secure a readable copy of the FAD.

I, SHAWN A. LUIZ, Esq. hereby declare under penalty of law that the forgoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawaii, July 18, 2023.

*/s/ Shawn A. Luiz*
SHAWN A. LUIZ
Attorney for Plaintiff

**EXHIBIT "1"**

 shawn A. Luiz <attorneyluiz@gmail.com>

## Passphrase to DLAF-20-0420

1 message

**Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)** <Joseph.Somerville@dla.mil> Tue, Nov 8, 2022 at 2:19 AM

To: "rodolfo.asuncion31@gmail.com" <rodolfo.asuncion31@gmail.com>
Cc: "attorneyluiz@gmail.com" <attorneyluiz@gmail.com>

CUI

The passphrase for your DoD Safe is DLAF-20-0420FAD

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

**Re: Passphrase to DLAF-20-0420**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Fri, Nov 11, 2022 at 10:13 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>
Cc: "rodolfo.asuncion31@gmail.com" <rodolfo.asuncion31@gmail.com>

Aloha,

I could not access the file. Can you please resend in a different format?

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Tue, Nov 8, 2022 at 2:19 AM Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil> wrote:

CUI

The passphrase for your DoD Safe is DLAF-20-0420FAD

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

**RE: [URL Verdict: Neutral][Non-DoD Source] Re: Passphrase to DLAF-20-0420**
1 message

**Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)** <Joseph.Somerville@dla.mil> Mon, Nov 14, 2022 at 1:40 AM
To: "shawn A. Luiz" <attorneyluiz@gmail.com>

The file expired, so I will have to resend it to you. Please pick-up the file as soon as you receive the notification.

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, November 12, 2022 3:14 AM
**To:** Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** rodolfo.asuncion31@gmail.com
**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re: Passphrase to DLAF-20-0420

Aloha,

I could not access the file. Can you please resend in a different format?

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

**www.ShawnLuizAttorney.com**

On Tue, Nov 8, 2022 at 2:19 AM Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil> wrote:

> CUI
>
> The passphrase for your DoD Safe is DLAF-20-0420FAD

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

**PassPhrase for DLAF-20-0420**
1 message

**Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)** <Joseph.Somerville@dla.mil> Mon, Nov 14, 2022 at 1:52 AM
To: "shawn A. Luiz" <attorneyluiz@gmail.com>, "rodolfo.asuncion31@gmail.com" <rodolfo.asuncion31@gmail.com>

CUI

The passphrase for the DoD Safe is DLAF-20-0420FAD please pick this up within 48 hours.

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

## PassPhrase DLAF-20-0424

1 message

**Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)** <Joseph.Somerville@dla.mil> Mon, Nov 14, 2022 at 2:43 AM

To: "shawn A. Luiz" <attorneyluiz@gmail.com>, "rodolfo.asuncion31@gmail.com" <rodolfo.asuncion31@gmail.com>

Good morning all,

Please use the following passphrase to open up your DoD Safe file DLAF-20-0424FAD

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

**Re: [URL Verdict: Neutral][Non-DoD Source] Re: Passphrase to DLAF-20-0420**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 14, 2022 at 8:05 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>

Okay. Thank you!

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Mon, Nov 14, 2022 at 1:40 AM Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil> wrote:

The file expired, so I will have to resend it to you. Please pick-up the file as soon as you receive the notification.

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, November 12, 2022 3:14 AM
**To:** Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** rodolfo.asuncion31@gmail.com
**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re: Passphrase to DLAF-20-0420

Aloha,

I could not access the file. Can you please resend in a different format?

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

**www.ShawnLuizAttorney.com**

On Tue, Nov 8, 2022 at 2:19 AM Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil> wrote:

CUI

The passphrase for your DoD Safe is DLAF-20-0420FAD

Joseph S. Somerville III

EEO Specialist

Complaints & Compliance Div (DO-C)

DLA HQs Office of EEO & Diversity

Joseph.somerville@dla.mil

Work Cell: 571-531-8000

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

## Re: PassPhrase DLAF-20-0424

1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 14, 2022 at 8:09 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>
Cc: "rodolfo.asuncion31@gmail.com" <rodolfo.asuncion31@gmail.com>

Aloha,

Sorry; I could not access the files still.

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Mon, Nov 14, 2022 at 2:43 AM Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil> wrote:

> Good morning all,
>
> Please use the following passphrase to open up your DoD Safe file DLAF-20-0424FAD
>
> Joseph S. Somerville III
>
> EEO Specialist
>
> Complaints & Compliance Div (DO-C)
>
> DLA HQs Office of EEO & Diversity
>
> Joseph.somerville@dla.mil
>
> Work Cell: 571-531-8000
>
> Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended for the official use of the individual or entity to who is addressed and may contain legally privileged, confidential information or work product.
>
> Controlled by: DO-DOC
>
> CUI Category: Privacy
>
> Distribution/Dissemination Controls: FED ONLY

POC: Joseph Somerville/571-531-8000

CUI

 shawn A. Luiz <attorneyluiz@gmail.com>

**Fwd: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 14, 2022 at 9:54 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <joseph.somerville@dla.mil>

Sorry, I still cannot open the attachment.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

---------- Forwarded message ---------
From: <NoReplyTo@mail.mil>
Date: Mon, Nov 14, 2022 at 7:19 PM
Subject: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you
To: <attorneyluiz@gmail.com>

This is an automated message sent to you by the DoD SAFE service.

---

**This is a reminder about a drop-off sent to you, that no one has picked up.**
**The drop-off will expire in 24 hours after which it will be automatically deleted.**

---

SOMERVILLE.JOSEPH.SAMUEL.III <joseph.somerville@dla.mil> has dropped off 2 files for you.

**IF YOU TRUST THE SENDER** and are expecting to receive a file from them, you may choose to retrieve the drop-off by clicking the following link (or copying and pasting it into your web browser):

https://safe.apps.mil/pickup.php?claimID=MqUUdx9oKqW6Vw37&recipCode=d8z677

You will be required to enter the claim passcode, which is:
**jmxEfMY6MC9PyYy7**

**This drop-off is encrypted.** To download any files you must have the correct passphrase, which you can only get from the sender.

You have 24 hours to retrieve the drop-off; after that the link above will expire.

The sender has left you a note:

Certificate of Service
Final Agency Decision to CP

Full information about the drop-off:
Claim ID: MqUUdx9oKqW6Vw37

Recipient Code: d8z677
Claim Passcode: jmxEfMY6MC9PyYy7
Drop-off Submitted: 2022-11-08 12:14:05 UTC
Drop-off Completed: 2022-11-08 12:14:08 UTC

— Sender —
Name: SOMERVILLE.JOSEPH.SAMUEL.III
Organization: DLA
Email Address: joseph.somerville@dla.mil

— Files —
Name: FAD Asuncion DLAF-20-0424_11_4_22_signed.pdf
Size: 1.4 MB
SHA-256 Checksum: 1D6A85CF4C5F2A054299205BADD1E798D8442FD1ED887BCAE412A49E16DC434B
Content Type: application/pdf

Name: Certificate of Service_11_8_22_signed.pdf
Size: 89.4 KB
SHA-256 Checksum: 28174FCF320B6D421F1554888A2D452B7469EDD00BD1C3E5AB6E59AF10E6F723
Content Type: application/pdf

 shawn A. Luiz <attorneyluiz@gmail.com>

**Fwd: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 21, 2022 at 11:14 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <joseph.somerville@dla.mil>

I cannot open it. Please mail via U.S. Mail.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

---------- Forwarded message ---------
From: <NoReplyTo@mail.mil>
Date: Sun, Nov 20, 2022 at 7:15 PM
Subject: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you
To: <attorneyluiz@gmail.com>

This is an automated message sent to you by the DoD SAFE service.

---

**This is a reminder about a drop-off sent to you, that no one has picked up.**
**The drop-off will expire in 24 hours after which it will be automatically deleted.**

---

SOMERVILLE.JOSEPH.SAMUEL.III <joseph.somerville@dla.mil> has dropped off 2 files for you.

**IF YOU TRUST THE SENDER** and are expecting to receive a file from them, you may choose to retrieve the drop-off by clicking the following link (or copying and pasting it into your web browser):

https://safe.apps.mil/pickup.php?claimID=jRSnVxJdXkW7o5Xf&recipCode=YrWUHb

You will be required to enter the claim passcode, which is:
**hqFHyWMcwoFkUwhG**

**This drop-off is encrypted.** To download any files you must have the correct passphrase, which you can only get from the sender.

You have 24 hours to retrieve the drop-off; after that the link above will expire.

The sender has left you a note:

Certificate of Service
Final Agency Decision to CP and CP REP

Full information about the drop-off:
Claim ID: jRSnVxJdXkW7o5Xf

Recipient Code:       YrWUHb
Claim Passcode:       hqFHyWMcwoFkUwhG
Drop-off Submitted:   2022-11-14 11:49:06 UTC
Drop-off Completed:   2022-11-14 11:49:10 UTC

— Sender —
Name:          SOMERVILLE.JOSEPH.SAMUEL.III
Organization:  DLA
Email Address: joseph.somerville@dla.mil

— Files —
Name:            Certificate of Service_11_8_22_signed.pdf
Size:            89.4 KB
SHA-256 Checksum: 28174FCF320B6D421F1554888A2D452B7469EDD00BD1C3E5AB6E59AF10E6F723
Content Type:    application/pdf

Name:            FAD Asuncion DLAF-20-0424_11_4_22_signed.pdf
Size:            1.4 MB
SHA-256 Checksum: 1D6A85CF4C5F2A054299205BADD1E798D8442FD1ED887BCAE412A49E16DC434B
Content Type:    application/pdf

 shawn A. Luiz <attorneyluiz@gmail.com>

**Re: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 21, 2022 at 11:14 PM
To: "SOMERVILLE.JOSEPH.SAMUEL.III" <joseph.somerville@dla.mil>

I cannot open it. Please mail via U.S. Mail.
Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Sun, Nov 20, 2022 at 7:15 PM <NoReplyTo@mail.mil> wrote:

This is an automated message sent to you by the DoD SAFE service.

**This is a reminder about a drop-off sent to you, that no one has picked up.**
**The drop-off will expire in 24 hours after which it will be automatically deleted.**

SOMERVILLE.JOSEPH.SAMUEL.III <joseph.somerville@dla.mil> has dropped off 2 files for you.

**IF YOU TRUST THE SENDER** and are expecting to receive a file from them, you may choose to retrieve the drop-off by clicking the following link (or copying and pasting it into your web browser):

https://safe.apps.mil/pickup.php?claimID=uCeyVDsnpo6nFxEi&recipCode=7uBHpF

You will be required to enter the claim passcode, which is:
**NHQMHifGomo39wwY**

**This drop-off is encrypted.** To download any files you must have the correct passphrase, which you can only get from the sender.

You have 24 hours to retrieve the drop-off; after that the link above will expire.

The sender has left you a note:

Certificate of Service
Final Agency Decision to CP and CP REP

Full information about the drop-off:

| | |
|---|---|
| Claim ID: | uCeyVDsnpo6nFxEi |
| Recipient Code: | 7uBHpF |
| Claim Passcode: | NHQMHifGomo39wwY |
| Drop-off Submitted: | 2022-11-14 12:40:27 UTC |
| Drop-off Completed: | 2022-11-14 12:40:30 UTC |

— Sender —

Name: SOMERVILLE.JOSEPH.SAMUEL.III
Organization: DLA
Email Address: joseph.somerville@dla.mil

— Files —
Name: Certificate of Service_11_8_22_signed.pdf
Size: 89.4 KB
SHA-256 Checksum: 28174FCF320B6D421F1554888A2D452B7469EDD00BD1C3E5AB6E59AF10E6F723
Content Type: application/pdf

Name: FAD Asuncion DLAF-20-0424_11_4_22_signed.pdf
Size: 1.4 MB
SHA-256 Checksum: 1D6A85CF4C5F2A054299205BADD1E798D8442FD1ED887BCAE412A49E16DC434B
Content Type: application/pdf

shawn A. Luiz <attorneyluiz@gmail.com>

**Fwd: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Nov 21, 2022 at 11:15 PM
To: "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>

I cannot open it. Please mail via U.S. Mail.
Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
**www.ShawnLuizAttorney.com**

---------- Forwarded message ---------
From: <NoReplyTo@mail.mil>
Date: Sun, Nov 20, 2022 at 7:15 PM
Subject: [DoD SAFE] SOMERVILLE.JOSEPH.SAMUEL.III has dropped off files for you
To: <attorneyluiz@gmail.com>

This is an automated message sent to you by the DoD SAFE service.

---

**This is a reminder about a drop-off sent to you, that no one has picked up.**
**The drop-off will expire in 24 hours after which it will be automatically deleted.**

---

SOMERVILLE.JOSEPH.SAMUEL.III <joseph.somerville@dla.mil> has dropped off 2 files for you.

**IF YOU TRUST THE SENDER** and are expecting to receive a file from them, you may choose to retrieve the drop-off by clicking the following link (or copying and pasting it into your web browser):

https://safe.apps.mil/pickup.php?claimID=uCeyVDsnpo6nFxEi&recipCode=7uBHpF

You will be required to enter the claim passcode, which is:
**NHQMHifGomo39wwY**

**This drop-off is encrypted.** To download any files you must have the correct passphrase, which you can only get from the sender.

You have 24 hours to retrieve the drop-off; after that the link above will expire.

The sender has left you a note:

Certificate of Service
Final Agency Decision to CP and CP REP

Full information about the drop-off:

| | |
|---|---|
| Claim ID: | uCeyVDsnpo6nFxEi |
| Recipient Code: | 7uBHpF |

Claim Passcode:          NHQMHifGomo39wwY
Drop-off Submitted:  2022-11-14 12:40:27 UTC
Drop-off Completed: 2022-11-14 12:40:30 UTC

— Sender —
Name:             SOMERVILLE.JOSEPH.SAMUEL.III
Organization:  DLA
Email Address: joseph.somerville@dla.mil

— Files —
Name:             Certificate of Service_11_8_22_signed.pdf
Size:             89.4 KB
SHA-256 Checksum: 28174FCF320B6D421F1554888A2D452B7469EDD00BD1C3E5AB6E59AF10E6F723
Content Type:  application/pdf

Name:             FAD Asuncion DLAF-20-0424_11_4_22_signed.pdf
Size:             1.4 MB
SHA-256 Checksum: 1D6A85CF4C5F2A054299205BADD1E798D8442FD1ED887BCAE412A49E16DC434B
Content Type:  application/pdf

**EXHIBIT "2"**



shawn A. Luiz <attorneyluiz@gmail.com>

**Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Sat, Dec 3, 2022 at 6:29 PM
To: kimberly.lewis@dla.mil, "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>
Cc: "shawn A. Luiz" <attorney.luiz@gmail.com>, "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

 shawn A. Luiz <attorneyluiz@gmail.com>

**RE: [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.**
1 message

**Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA)** <Kimberly.Lewis@dla.mil> Mon, Dec 5, 2022 at 2:44 AM
To: "shawn A. Luiz" <attorneyluiz@gmail.com>, "McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA)" <Bruce.McCarty@dla.mil>
Cc: "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>, "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>, "Sexton, Cynthia E CIV DLA EEO OFFICE (USA)" <Cynthia.Sexton@dla.mil>

CUI

Good morning Attorney Luiz,

The FAD was emailed to your email address attorneyluiz@gmail.com on November 4, 2022.

Please advise who you reached out to on the dates mentioned in this email and did not receive a response.

Attached is a copy of the FAD. Please acknowledge receipt.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA 22060

Office: (571) 767-9905

Cell: (571) 992-2999

DSN: (392)

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is

strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905

**CUI**

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, December 3, 2022 11:30 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** shawn A. Luiz <attorney.luiz@gmail.com>; dal.attorneyluiz@gmail.com
**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

www.ShawnLuizAttorney.com

---

**FAD Asuncion DLAF-20-0424_11_4_22_signed.pdf**
**1474K**

 shawn A. Luiz <attorneyluiz@gmail.com>

## Re: [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Mon, Dec 5, 2022 at 3:21 PM
To: "Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA)" <Kimberly.Lewis@dla.mil>
Cc: "McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA)" <Bruce.McCarty@dla.mil>, "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>, "Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA)" <Joseph.Somerville@dla.mil>, "Sexton, Cynthia E CIV DLA EEO OFFICE (USA)" <Cynthia.Sexton@dla.mil>, "shawn A. Luiz" <attorneyluiz@gmail.com>

Aloha Ms. Lewis,

I am confirming receipt of the FAD. Thank you for sending it in a format that is not encrypted on DODSafe which I can finally access.

Please confirm my time to respond to the timelines triggered by the FAD starts from today, December 5, 2022. Will I receive a Certificate of Service indicating today's date? Please let me know?

I never received an email on Nov. 4, 2022. The first email giving notice of a DODSafe document was November 8, 2022. I sent the Nov. 11, 14, 21, 2022, notices to the email address Joseph.Somerville@dla.mil. I received more DODSafe notices (Nov. 14 and Nov. 20, 2022) but was still unable to open the documents each time.

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Mon, Dec 5, 2022 at 2:44 AM Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil> wrote:

> CUI
>
> Good morning Attorney Luiz,
>
> The FAD was emailed to your email address attorneyluiz@gmail.com on November 4, 2022.
>
> Please advise who you reached out to on the dates mentioned in this email and did not receive a response.
>
> Attached is a copy of the FAD. Please acknowledge receipt.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA  22060

Office:  (571) 767-9905

Cell:  (571) 992-2999

DSN:  (392)


Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.


Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905


**CUI**


**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, December 3, 2022 11:30 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** shawn A. Luiz <attorney.luiz@gmail.com>; dal.attorneyluiz@gmail.com

**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

www.ShawnLuizAttorney.com

 shawn A. Luiz <attorneyluiz@gmail.com>

**Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.**
1 message

**Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA)** <Kimberly.Lewis@dla.mil> Wed, Dec 14, 2022 at 1:48 AM
To: "shawn A. Luiz" <attorneyluiz@gmail.com>
Cc: "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>, "Sexton, Cynthia E CIV DLA EEO OFFICE (USA)" <Cynthia.Sexton@dla.mil>

CUI

Good morning Attorney Luiz,

According to 29 CFR 1614 the time starts when you as the Attorney received the FAD.

We will not issue a new COS since we have proof you received the FAD via email.

A copy will be placed in the complaint file.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA 22060

Office: (571) 767-9905

Cell: (571) 992-2999

DSN: (392)

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905

**CUI**

---

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Tuesday, December 13, 2022 6:55 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>
**Cc:** McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA) <Bruce.McCarty@dla.mil>; dal.attorneyluiz@gmail.com; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>; Sexton, Cynthia E CIV DLA EEO OFFICE (USA) <Cynthia.Sexton@dla.mil>; shawn A. Luiz <attorneyluiz@gmail.com>
**Subject:** Re: [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha Ms. Lewis,

Please be advised I am still awaiting a response to my email of December 5, 2022 (8 days ago) where I confirmed receipt of the FAD (it was sent in a format that was not encrypted on DODSafe which I could finally access).

My unanswered questions were, "***Please confirm my time to respond to the timelines triggered by the FAD starts from today, December 5, 2022. Will I receive a Certificate of Service indicating today's date? Please let me know?***"

A response would be greatly appreciated. Thank you very much!

Best regards,

Shawn A. Luiz



841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

**www.ShawnLuizAttorney.com**

On Mon, Dec 5, 2022 at 3:21 PM shawn A. Luiz <attorneyluiz@gmail.com> wrote:

Aloha Ms. Lewis,

I am confirming receipt of the FAD. Thank you for sending it in a format that is not encrypted on DODSafe which I can finally access.

Please confirm my time to respond to the timelines triggered by the FAD starts from today, December 5, 2022. Will I receive a Certificate of Service indicating today's date? Please let me know?

I never received an email on Nov. 4, 2022. The first email giving notice of a DODSafe document was November 8, 2022. I sent the Nov. 11, 14, 21, 2022, notices to the email address Joseph.Somerville@dla.mil. I received more DODSafe notices (Nov. 14 and Nov. 20, 2022) but was still unable to open the documents each time.

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

**www.ShawnLuizAttorney.com**

On Mon, Dec 5, 2022 at 2:44 AM Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil> wrote:

CUI

Good morning Attorney Luiz,

The FAD was emailed to your email address attorneyluiz@gmail.com on November 4, 2022.

Please advise who you reached out to on the dates mentioned in this email and did not receive a response.

Attached is a copy of the FAD.  Please acknowledge receipt.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA  22060

Office: (571) 767-9905

Cell: (571) 992-2999

DSN: (392)

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905

**CUI**

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, December 3, 2022 11:30 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** shawn A. Luiz <attorney.luiz@gmail.com>; dal.attorneyluiz@gmail.com
**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,

Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

www.ShawnLuizAttorney.com

 shawn A. Luiz <attorneyluiz@gmail.com>

# Re: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Thu, Dec 15, 2022 at 11:05 PM
To: "Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA)" <Kimberly.Lewis@dla.mil>
Cc: "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>, "Sexton, Cynthia E CIV DLA EEO OFFICE (USA)" <Cynthia.Sexton@dla.mil>

Thank you!

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

On Wed, Dec 14, 2022 at 1:48 AM Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil> wrote:

CUI

Good morning Attorney Luiz,

According to 29 CFR 1614 the time starts when you as the Attorney received the FAD.

We will not issue a new COS since we have proof you received the FAD via email.

A copy will be placed in the complaint file.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA 22060

Office: (571) 767-9905

Cell: (571) 992-2999

DSN: (392)

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905

**CUI**

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Tuesday, December 13, 2022 6:55 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>
**Cc:** McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA) <Bruce.McCarty@dla.mil>; dal.attorneyluiz@gmail.com; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>; Sexton, Cynthia E CIV DLA EEO OFFICE (USA) <Cynthia.Sexton@dla.mil>; shawn A. Luiz <attorneyluiz@gmail.com>
**Subject:** Re: [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha Ms. Lewis,

Please be advised I am still awaiting a response to my email of December 5, 2022 (8 days ago) where I confirmed receipt of the FAD (it was sent in a format that was not encrypted on DODSafe which I could finally access).

My unanswered questions were, "***Please confirm my time to respond to the timelines triggered by the FAD starts from today, December 5, 2022. Will I receive a Certificate of Service indicating today's date? Please let me know?***"

A response would be greatly appreciated. Thank you very much!

Best regards,

Shawn A. Luiz

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

www.ShawnLuizAttorney.com

On Mon, Dec 5, 2022 at 3:21 PM shawn A. Luiz <attorneyluiz@gmail.com> wrote:

Aloha Ms. Lewis,

I am confirming receipt of the FAD. Thank you for sending it in a format that is not encrypted on DODSafe which I can finally access.

Please confirm my time to respond to the timelines triggered by the FAD starts from today, December 5, 2022. Will I receive a Certificate of Service indicating today's date? Please let me know?

I never received an email on Nov. 4, 2022. The first email giving notice of a DODSafe document was November 8, 2022. I sent the Nov. 11, 14, 21, 2022, notices to the email address Joseph.Somerville@dla.mil. I received more DODSafe notices (Nov. 14 and Nov. 20, 2022) but was still unable to open the documents each time.

Best regards,

Shawn A. Luiz

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

**www.ShawnLuizAttorney.com**

On Mon, Dec 5, 2022 at 2:44 AM Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil> wrote:

CUI

Good morning Attorney Luiz,

The FAD was emailed to your email address attorneyluiz@gmail.com on November 4, 2022.

Please advise who you reached out to on the dates mentioned in this email and did not receive a response.

Attached is a copy of the FAD.  Please acknowledge receipt.

Thank you

Kimberly R. Lewis

Deputy Director, Equal Employment Opportunity & Diversity & Inclusion Office

Defense Logistics Agency

Fort Belvoir, VA  22060

Office:  (571) 767-9905

Cell:  (571) 992-2999

DSN:  (392)

Statement of Confidentiality: The information contained in this electronic mail message and any attachments is intended only for the official use of the individual or entity to who it is addressed and may contain legally privileged, confidential information or work product. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution, or forwarding of this email is strictly prohibited. If you have received this message in error, please notify me by email reply and delete the original message from your system.

Controlled by: DO-DOC

CUI Category: Privacy

Distribution/Dissemination Controls: FED ONLY

POC: Kimberly Lewis / 571-767-9905

**CUI**

**From:** shawn A. Luiz <attorneyluiz@gmail.com>
**Sent:** Saturday, December 3, 2022 11:30 PM
**To:** Lewis, Kimberly Ranae CIV DLA EEO OFFICE (USA) <Kimberly.Lewis@dla.mil>; Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
**Cc:** shawn A. Luiz <attorney.luiz@gmail.com>; dal.attorneyluiz@gmail.com
**Subject:** [URL Verdict: Neutral][Non-DoD Source] Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,

Shawn A. Luiz

 Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200

Honolulu, HI 96813

Tel. 808.538.0500 Text 808.538.0800

www.ShawnLuizAttorney.com

**EXHIBIT "3"**

 shawn A. Luiz <attorneyluiz@gmail.com>

## Fwd: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.

1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Sat, Dec 3, 2022 at 6:31 PM
To: "McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA)" <Bruce.mccarty@dla.mil>
Cc: "shawn A. Luiz" <attorneyluiz@gmail.com>, "dal.attorneyluiz@gmail.com" <dal.attorneyluiz@gmail.com>

Aloha Bruce,

FYI. Please see email below. If you have a copy of the FAD, would you please be kind and email it to me? Thank you!

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
**www.ShawnLuizAttorney.com**

---------- Forwarded message ---------
From: **shawn A. Luiz** <attorneyluiz@gmail.com>
Date: Sat, Dec 3, 2022 at 6:29 PM
Subject: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.
To: <kimberly.lewis@dla.mil>, Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
Cc: shawn A. Luiz <attorney.luiz@gmail.com>, dal.attorneyluiz@gmail.com <dal.attorneyluiz@gmail.com>

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
**www.ShawnLuizAttorney.com**

EXHIBIT "4"



shawn A. Luiz <attorneyluiz@gmail.com>

**Fwd: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.**
1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Sat, Dec 3, 2022 at 6:32 PM
To: rodolfo asuncion <rodolfo.asuncion31@gmail.com>

FYI.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

---------- Forwarded message ---------
From: **shawn A. Luiz** <attorneyluiz@gmail.com>
Date: Sat, Dec 3, 2022 at 6:29 PM
Subject: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.
To: <kimberly.lewis@dla.mil>, Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
Cc: shawn A. Luiz <attorney.luiz@gmail.com>, dal.attorneyluiz@gmail.com <dal.attorneyluiz@gmail.com>

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,
Shawn A. Luiz

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

 shawn A. Luiz <attorneyluiz@gmail.com>

**Fwd: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.**

1 message

**shawn A. Luiz** <attorneyluiz@gmail.com> Sat, Dec 3, 2022 at 6:32 PM
To: rodolfo asuncion <rodolfo.asuncion31@gmail.com>

FYI.

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

---------- Forwarded message ---------
From: **shawn A. Luiz** <attorneyluiz@gmail.com>
Date: Sat, Dec 3, 2022 at 6:31 PM
Subject: Fwd: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.
To: McCarty, Bruce T CIV DLA GENERAL COUNSEL (USA) <Bruce.mccarty@dla.mil>
Cc: shawn A. Luiz <attorneyluiz@gmail.com>, dal.attorneyluiz@gmail.com <dal.attorneyluiz@gmail.com>

Aloha Bruce,

FYI. Please see email below. If you have a copy of the FAD, would you please be kind and email it to me? Thank you!

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

---------- Forwarded message ---------
From: **shawn A. Luiz** <attorneyluiz@gmail.com>
Date: Sat, Dec 3, 2022 at 6:29 PM
Subject: Re Non-receipt to date of the Final Agency Decision in Rodolpho Asuncion v. DLA.
To: <kimberly.lewis@dla.mil>, Somerville, Joseph Samuel III CIV DLA EEO OFFICE (USA) <Joseph.Somerville@dla.mil>
Cc: shawn A. Luiz <attorney.luiz@gmail.com>, dal.attorneyluiz@gmail.com <dal.attorneyluiz@gmail.com>

Aloha,

Please be advised I gave notice on Nov. 11, 14, 21, 2022, that I could not open the file for the Final Agency Decision in *Rodolpho Asuncion v. DLA*. It has been 3 weeks. ***Would someone please email me a FAD PDF that is not encrypted OR mail to me via U.S. MAIL a hard copy?*** Thank you.

Best regards,
Shawn A. Luiz

Shawn A. Luiz
ATTORNEY AT LAW

841 Bishop Street, Suite 200
Honolulu, HI 96813
Tel. 808.538.0500 Text 808.538.0800
www.ShawnLuizAttorney.com

EXCERPT OF RECORD, TAB 6

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500 Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants. | CIVIL NO. ________________<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

COMPLAINT

NOW COMES the Plaintiff, complaining of the Defendants, and alleges and says:

NATURE OF CLAIMS

1. Plaintiff Rodolfo "Rudy" T. Asuncion, Jr. (Rudy or Plaintiff), is a citizen of the United States and is a resident of the City and County of Honolulu, State of Hawaii.

2.     Plaintiff is employed in federal service as a Defense Logistics Agency (DLA) civilian employee and has been in the position for approximately 30 years.

3.     DLA is a component of the United States' Department of Defense (DOD).

4.     As indicated in the Final Agency Decision, dated November 4, 2022, DOD has determined that the Honorable Lloyd J. Austin, III, Secretary of Defense, shall be named as the defendant in any civil action filed against a DOD component.

5.     During the time period at issue, Plaintiff is at all times an Electronic Duplicating System Technician with the DLA at Defense Logistics Agency Indo-Pacific (DLA) located at 1025 Quincy Avenue, Pearl Harbor, Hawaii 96860-4512.

6.     Plaintiff is a handicapped person within the meaning of the Rehabilitation Act of 1973 by reason of his impairments that makes it difficult and burdensome for Plaintiff to complete his work tasks without a reasonable accommodation such as having a cart and table and to assemble documents.

7.     Defendant, the Honorable Lloyd J. Austin, III, Secretary of Defense (Secretary, Agency or Defendants) is sued as the principal and employer of Defendants' agents, employees, and the Plaintiff.

8.     Rudy's direct supervisor at the Pearl Harbor Location is Ms. Colleen R. Weaver (Ms. Weaver), Supervisor, Production Operations Specialist, DLA

Strategic Data Services, 1025 Quincy Ave, Bldg. 479, 3rd Fl., Pearl Harbor, HI 96860.

9. Defendants are an executive agency, department, or instrumentality of the Federal Government, subject to the laws of the United States including § 501 of the Rehabilitation Act of 1973, 29 U.S.C.A. Section 791 et seq.

9. Defendants at all times pertinent hereto, were and are located in the District of Hawaii.

10. At all relevant times, the Defendants have been a covered entity under the foregoing law.

11. Plaintiff is entitled to bring this action under §§ 501 and 505 of the Rehabilitation Act of 1973 (29 U.S.C.A. § 791, 29 U.S.C.A. § 794a). This Court has jurisdiction pursuant to 28 U.S.C.A. §§1331, 1343 and 42 U.S.C. § 1981a.

12. The unlawful employment practices complained of in this complaint occurred, and the employment records relevant to this matter are maintained and administered, within the District of Hawaii, and venue is proper within this District pursuant to 28 U.S.C. § 1391 (b) and the foregoing laws.

13. Within 90 days prior to the filing of the Complaint, Plaintiff was issued and received a Notice of Right to File a civil action[1] in an appropriate

[1] Plaintiff's Counsel received the Final Agency Decision on December 4, 2022, which was dated November 4, 2022, due to being unable to access the document

United States District Court with respect to Plaintiff's charges as set forth below (Final Agency Decision).

14.    Plaintiff's direct supervisors prior to Ms. Weaver becoming Plaintiff's direct supervisor, informally reasonably accommodated Plaintiff's qualifying disabilities with a table and cart on an "as needed" basis.

15.    The subject incidents set forth in greater detail below occurred at DLA Document Services, (J67F) Western Division, Pearl Harbor, Hawaii.

16.    The ease at which Plaintiff was informally reasonably accommodated changed when Ms. Weaver became Plaintiff's direct supervisor.

17.    Defendants adopted strict informal policies with respect to Plaintiff's job assignment.

18.    Those informal policies failed to reasonably accommodate Plaintiff's handicap, although Plaintiff's handicap had been informally reasonably accommodated throughout Plaintiff's career prior to Ms. Weaver becoming Plaintiff's direct supervisor.

19.    Ms. Weaver (Supervisor, Production Operations Specialist, GS-0301-11, was Plaintiff's first-level supervisor and the management official Plaintiff has maintained discriminated against and harassed him.

earlier through the DODSafe (DLA Case Number DLAF-20-0424) due to an encryption.  DLA emailed counsel an unencrypted version on December 4, 2022.

20. Ms. Weaver admitted during the EEO Investigation that she knows of Plaintiff's prior EEO activity but denied ever making derogatory remarks about veterans with disabilities.

21. According to Ms. Weaver, the essential function of Plaintiff's job is to run the Xerox d110 black ink only copier.

22. Ms. Weaver claimed during the EEO Investigation she is not aware of any limitations the Plaintiff's disability imposes on his ability to perform the essential functions of his job because he never provided any paperwork supporting his disability.

23. Ms. Weaver said she learned of Plaintiff's disability status when she once asked him why he was not wearing his safety shoes at work.

24. Plaintiff told Ms. Weaver that he was not able to wear them due to a foot injury he acquired while with the National Guard.

25. Plaintiff told Ms. Weaver that he provided his paperwork to Bobby Kadamoto (former Director) and Claire Terada (former Supervisor and Director).

26. Plaintiff also told Ms. Weaver she can find the paperwork in his Electronic Official Personnel File (EOPF).

27. Ms. Weaver claimed Plaintiff never provided her with any paperwork but that is misleading as the Agency has a record of it.

28.     Ms. Weaver admitted the second time she asked Plaintiff about his disability was when he needed a job cut in half.

29.     According to Ms. Weaver, the day prior she advised Plaintiff that either she would assist him, or she would find someone to help him because his colleague needed to focus on a specific task.

30.     That next day Plaintiff approached Ms. Weaver for assistance, as part of the interactive process, to which she directed him to cut it himself.

31.     Plaintiff objected and informed Ms. Weaver the noise from the cutter negatively impacts the post-traumatic stress disorder (PTSD) he developed from his deployment in Iraq.

32.     Ms. Weaver again asked Plaintiff for documentation concerning his disability instead of checking for a record of Plaintiff's impairments and informal reasonable accommodations.

33.     Ms. Weaver then directed Plaintiff's colleague to assist him.

34.     According to Ms. Weaver, during the February 2019 site visit of Mr. Mark Shadinger, Production Manager, GS-0303-13; Plaintiff's third level Supervisor, Plaintiff informed Mr. Shadinger that he has PTSD.

35.     When Mr. Shadinger asked for verifying paperwork, Plaintiff informed Mr. Shadinger that he provided it to previous management.

36.     Mr. Shadinger claimed that he checked for paperwork that may have been on file regarding Plaintiff's disability but was unsuccessful.

37.     Defendants refused Plaintiff's request for reasonable accommodations and failed to engage in the interactive process in good faith.

38.     The acts of Defendant and its agents constitute discriminatory conduct prohibited under federal law.

39.     Plaintiff was subjected to harassment and disparate treatment on the basis of his disability (Mental – PTSD), or reprisal for the filing of the instant complaint.

40.     Plaintiff should be identified as an individual with a disability in DLA records because he provided the Agency with forms related to his disability, and his disability rating of 5.0, which he received when he exited the military.

41.     Plaintiff also gave the agency a letter from his physician when he returned from war.

42.     Plaintiff's disabilities include PTSD and anxiety, and he had a heart attack.

43.     Plaintiff's disabilities impact his interactions with others because they perceive him as having something wrong with him, see him as being 'off' and are fearful of him because he has PTSD.

44.     Plaintiff has interacting with others results from his PTSD.

45.　Plaintiff's disabilities impact his ability to perform his daily job activities depending on the circumstance.

46.　Plaintiff talks to whomever approaches him about his job.

47.　Plaintiff tells them he will run the job and provides them with a sample.

48.　However, Ms. Weaver opposes how Plaintiff does his job.

49.　After Ms. Weaver and Plaintiff discuss a specific request without time restriction, Plaintiff runs a sample.

50.　Plaintiff is not the fastest at doing his job because of how he interacts, but he succeeds in getting his job done.

51.　Plaintiff explained to Ms. Weaver that he needs time for his monthly appointments with his doctor.

52.　As a reasonable accommodation for his medical condition, Plaintiff requested both a desk and wagon to help him with organization.

53.　However, Ms. Weaver denied his request shortly after she arrived.

54.　This was after Ms. Weaver told staff to come to her office if they had any questions.

55.　The first time Plaintiff requested his Reasonable Accommodation was in front of everyone.

56.   Plaintiff's protected statuses motivated management's decisions as but for Plaintiff's disabilities mental handicap and PTSD, he would not have been removed from the workplace.

57.   Defendants engaged in stereotypical assumptions and found Plaintiff to be a direct threat to the health and safety of others when he was not.

58.   Ms. Weaver falsely claimed that Plaintiff made a hostile work environment for her, because of her animus towards Plaintiffs and disabled veterans.

59.   Ms. Weaver has made hostile and derogatory statements concerning disabled veterans to Plaintiff at times and claims that veterans with mental illness are a danger to society.

60.   Plaintiff tied to help Ms. Weaver understand that each disabled veteran has their own unique circumstances and usually just need understanding n and assistance in their lives.

61.   As a direct result of the Defendant and its agents' discriminatory conduct described above, Plaintiff suffered humiliation, emotional pain, anguish, and distress as a result of the failure to accommodate and failure to engage in the interactive process in good faith that led to the proposed and final removal of Plaintiff from his position.

62.     Defendants have engaged in the following discriminatory acts set forth below in greater detail. Plaintiff incorporates all like and related claims that flow directly from the failure to accommodate and intentional discrimination and animus against Plaintiff for his metal handicap who suffers from Post Traumatic Distress from serving in the Army during times of war.   PIP and proposed removal (Defendants affirming the proposed removal) as allowed by federal precedent.

63.     This case demonstrates that an ounce of prevention is worth a pound of cure. Defendants only needed to reasonably accommodate Plaintiff to allow him to fulfill his job duties but instead were petty and vindictive and refused to allow Plaintiff simple reasonable accommodations that would have cost the Defendants nothing while yet affording Plaintiff the dignity of a reasonable accommodation that is required by federal law.

64.     Ms. Weaver took part in depriving Plaintiff of a reasonable accommodation at one time or another leading directly to Plaintiff's removal from the workplace based on her animus towards Rudy because of his mental disabilities.

65.     Plaintiff was subjected to discrimination based upon his disability (mental), and/or reprisal for prior protected EEO activity when:

66.     In examining the allegation of harassment, there was direct evidence that Weaver discriminated against Plaintiff and made stereotypical assumption that

because he was a disabled war vet suffering from PTSD that he was a direct threat to the health and safety of others.

67. Weaver has made derogatory comments about and concerning disabled vets and stated affirmatively that disabled vets are a danger to society.

68. Weaver lacks a medical degree to determine if one is a direct threat to the health and safety of others based upon the nature of the threat, the duration of the threat and whether there are reasonable accommodations that can alleviate the perceived threat.

69. Weaver's discriminatory admissions to Plaintiff demonstrated that Plaintiff was subjected to conduct that was unwelcome due to his membership in a statutorily protected class.

70. On or about December 17, 2019, Ms. Weaver asked if Rudy had any weapons on him or illegal drugs.

71. On or about February 11, 2020, Ms. Weaver called based police on Rudy.

72. The base police who responded to Ms. Weaver's complaint did not find Rudy to be a danger to the health and safety of himself or others[2].

[2] It should be obvious and a matter of common sense that Rudy would not seek assistance from the perpetrators of the discrimination, i.e., Ms. Weaver, although this appeared to escape Ms. Weaver, or she used it as a pretext to discriminate/retaliate further against Rudy based on his perceived disabilities.

73. On March 2, 2020, Ms. Weaver and Mr. Mark Shadinger, the supervisor from the mainland, berated Rudy over why he would jump the chain of command with his complaints.

74. On or about September 14, 2020, Ms. Weaver told Rudy that he did not receive an annual cash or time off award because he was all 1's on his performance evaluations[3].

75. The undersigned considers these actions by Ms. Weaver to be retaliation for Rudy initiating an EEO Complaint against Ms. Weaver.

76. On or about December of 2019, Rudy filed an EEO claim (DLAF-20-0424) regarding disability discrimination.

77. On or about December 10, 2020, DLA acknowledged in writing Rudy's right to file a formal complaint as informal resolution attempts had failed.

78. On February 12, 2021, within just two months of DLA acknowledging in writing Rudy's right to file a formal complaint for alleged disability discrimination, Rudy was placed on paid administrative suspension status.[4]

79. DLA was already on notice that Rudy was pursuing EEO claims at the time of the February 12, 2021, adverse action.

[3] Rudy later discovered that Ms. Weaver's statement was false and that he had received all 3's which are "fully successful" not all 1's which would be "unacceptable".
[4] No specification or details of the alleged misconduct was provided at that time.

80. That raises a triable issue of fact based on the temporal proximity between the two events.

81. Then on February 26, 2021, Ms. Karyn Runstrom, Deputy Director, DLA Information Operations (J6), suspended Rudy's access to classified information and Rudy's assignment to duties that have been designated national security sensitive.

82. After Rudy was notified of his right to file a formal EEO Complaint, this was followed closely on its heals by two more accusations of wrongdoing, January 2020 and March 10, 2020[5].

83. Ms. Weaver has treated Rudy, a decorated disabled veteran with utter contempt based on stereotypical assumptions.

84. Congress, in its findings in enacting the Americans with Disabilities Act[6], found that persons with disabilities are relegated to lesser opportunities regarding employment, housing[7], etc.

[5] An earlier allegation of wrongdoing allegedly occurred in December 2019.
[6] The Rehabilitation Act of 1973, prohibits discrimination on the basis of disability by federal employers, federal contractors, and recipients of federal aid. Although, not in the statute itself, the federal courts developed an anti-retaliation doctrine to further protect persons with disabilities from unlawful retaliation for opposing disability discrimination.

[7] 42 U.S.C. §12101. Findings and purpose

(a) Findings

The Congress finds that—

85.    This was followed shortly thereafter March 16, 2021, with an

indefinite suspension status without pay.

(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

86. The reasons given included that on February 26, 2021, Karyn Runstrom, Deputy Director, DLA Information Operations (J6), suspended Rudy's access to classified information and his assignment to duties that have been designated national security sensitive, citing security concerns arising from a report of investigation which allegedly substantiated that he made threatening statements in the workplace in December 2019 and January 2020, and in March 2020[8].

87. The letter further stated there were no alternatives to this proposed indefinite suspension, such as assigning Rudy to duties which do not require a clearance. Moreover, as there are not currently any non-sensitive duties available to assign Rudy, and because his access has been revoked and he can no longer be assigned to his current position, his retention in an active-duty status would not be in the best interests of this organization. The indefinite suspension was alleged proposed to promote the efficiency of the Federal service.

88. Finally, on April 21, 2021, Rudy was provided a Notice of Decision-Indefinite Suspension (Non-Disciplinary). The letter stated it was an official notice that it was decided that Rudy be indefinitely suspended without pay from his position of Electronic Duplicating System Technician and the federal service for Failure to Maintain Access to Classified and Sensitive Information.

[8] Rudy disputes this finding.

89.    The indefinite suspension will be effective on the earlier of either (1) August 1, 2021, or (2) the date the Joint Base Pearl Harbor-Hickam (JBPHH) rescinds or otherwise lifts its current bar upon Rudy entering JBPHH. The letter noted the indefinite suspension will remain in effect as follows: Upon the end of the DoD Consolidated Adjudications Facility (CAF) process (including the resolution of any appeal to the DoD Clearance Appeals Board (CAB)), the Agency will either promptly terminate the indefinite suspension or promptly proceed to take further administrative action (including removal), as warranted.

90.    If the Agency takes further administrative action, this suspension will continue from the end of the DoD CAF process (including the resolution of any appeal to the DoD CAB) through any necessary notice, reply, and decision-making periods. The letter further stated the action was initiated by a Notice of Proposed Indefinite Suspension, mailed to Rudy's residence of record March 16, 2021, and delivered on March 17, 2021. The four corners of the March 16, 2021, letter did not provide for rebuttal or a response prior to the suspensions taking effect.

91.    On April 5, 2021, Rudy provided an email reply to the Proposing Official (Mr. Nicholas Janik). It appears on April 7, 2021, Mr. Janik forwarded Rudy's April 5th reply to the designated DLA Deciding Official, Mr. Richard Tebeau, and noted replies should be made directly to the designated DLA Deciding Official.

92. Based on his medical conditions, Rudy was unable to provide any further written or oral replies. In his April 5th reply, Rudy stated that he was never hostile, nor did he threaten anyone. Rudy also mentioned that he had a medical condition for which he is receiving treatment.

93. Despite Rudy's April 5, 2021, response, and the fact that the alleged reasons for the adverse actions taken against Rudy morphed over time from letter to letter, you upheld the Agency's actions. Allegedly, after careful consideration of the Notice of Proposed Indefinite Suspension, the evidence described therein and attached to the notice, and Rudy's April 5th reply, it was determined that the charge of Failure to Maintain Access to Classified and Sensitive Information[9] was allegedly supported by a preponderance of the evidence and was, therefore, sustained.

94. The temporal proximity, along with admissions by Rudy's first level supervisor, raises a mixed motives case that Rudy was retaliated against for opposing unlawful discrimination rather than for allegedly raising his voice in the workplace. Ms. Weaver has also stereotyped Rudy and exhibited animus against him based on his perceived disabilities, treating Rudy as if he were "toxic goods" which he is not. The suspension is alleged to be non-Disciplinary in nature

[9] The initial reason was threatening behavior in the workplace, a vastly different charge. Using Ms. Weaver's disability discrimination against Rudy to revoke his

however, it appears punitive in nature by the timing of events. A quick amicable resolution of this matter is therefore requested.

96.     Rudy has a serious Heart condition (is a heart attack survivor), has high blood pressure from too much stress at work. In addition, Rudy has PTSD, and physical disabilities as well, a 70% disability rating for anxiety, a 10% disability rating for a back injury, and a 10% disability rating for a rotary cuff injury for a total 90 % disability rating[10]. Rudy has been under his doctor's care for his mental disabilities[11] to the charges at all relevant times in this matter. Rudy is diligent in his medical care and regularly attends all doctor advised appointments and always remains medication compliant. Rudy was unable to respond further previously due to his disabilities. For example, Rudy was hospitalized at Tripler for one week (April 2021-- 6 days) (March 2021--1-2 days) (March 2021--same day discharge) and did not know how to best respond to the allegations that he was faced with due to his disabilities, including but not limited to high anxiety because could not find an attorney to represent him after 41 years of service.

clearance level is extremely prejudicial, unfair, and a denial of procedural and substantive due process.

[10] Rudy's disabilities have gotten worse over time as indicated by his original ratings which were PTSD 10%, back 5% and rotary cuff 5% for a total disability rating of 15%.

[11] Rudy suffers from (per OSM-5): Bereavement, major depressive disorder, unspecified anxiety disorder, ethyl alcohol use disorder, in partial remission; cluster B trait (Individuals with cluster B personality disorders often have

97. On or about 2019, 2020 and 2021, Rudy was exhibiting behaviors in the workplace that triggered the interactive process in accordance with federal law. You should know that Rudy has years of military service[12] and is a disabled veteran[13]. Rudy regularly seeks treatment at the Veteran's Affairs Clinic at Tripler Army Medical Center. All treating physicians who have worked with Rudy has not found him to be a direct threat to the safety and health of others[14]. Even if they had done so, and they did not, DLA would be required in accordance with federal law to engage in the interactive process in good faith and explore the nature of the risk, the severity of the risk, the duration of the risk and whether any reasonable accommodation(s) could help alleviate the risk.

98. A reasonable accommodation could include Rudy being given extra breaks when his anxiety is at a high level to go make a telephone call to check on his mother or taking an extra break and making up the work time. This is

difficulties maintaining healthy relationships and may display emotional and impulsive symptoms).

[12] Rudy has received awards for Driver and Mechanic Badge, Mechanic, Army Good Conduct Medal, Army Reserve Components Achievement Medal (6th Award), National Defense Service Medal (3rd Award), Global War On Terrorism Expeditionary Medal, Global War On Terrorism Service Medal, Humanitarian Service Medal, Overseas Service Bar, Commissioned Officer Professional Development Ribbon (3rd Award), Army Service Ribbon/Armed Forces Reserve Medal (2nd Award), Army Reserve Component Oversea Training Ribbon (3rd Award), Armed Forces Reserve Medal.

[13] Rudy received an Honorable Discharge from military service for his disabilities.

[14] Moreover, Rudy does not own any weapons, does not taking any illicit substances, and is a "war-related" disabled veteran.

consistent with the implementing regulations that mandate altered work schedules as a reasonable accommodation under the Rehabilitation Act's implementing guidelines.

99. Rudy did not violate the cellphone use policy intentionally[15]. At the time, Rudy resided with his 90-year-old aged mother (who has dementia) in their family home located in Mililani, Hawaii. Rudy is not a danger or threat to anyone as evidenced by the fact that he has never been accused of abuse or neglect or accused of a crime of violence. Due to his anxiety, coupled with the fact that his mother has dementia, Rudy called his mother's caregiver to make sure everything was okay at home. Rudy calls his mother's caregiver daily while he is at work to make sure everything is okay on the "Homefront". Any violation of the cellphone policy would have been unintentional and harmless are Rudy never used his cellphone during the time at issue to do anything other than call to check on his mother.

100. Rudy is not a danger or threat to anyone as evidenced by the fact that he has never been accused of abuse or neglect or accused of a crime of violence. Rudy never exhibited hostility to anyone at any time. Rudy never threatened anyone at any time. Moreover, DLA changed the reason why Rudy's clearance

[15] This was not used as a basis for the removal, but because Ms. Weaver included this incident in her annual 2020 evaluation for Rudy, Rudy explains the facts and circumstances surrounding his use of his cell phone during the alleged incident.

was allegedly taken away over a several month period. Plaintiff was removed and barred to from base without sufficient due process.

101. Colleen found fault and nitpicked Rudy for three years even though Rudy has 41 years of federal service and was even Colleen's supervisor in Rudy's past 41 years of dedicated service. Despite these facts, Colleen repeatedly gave Rudy the lowest evaluations he ever had. ***Evidencing a guilty conscious for Rudy's mistreatment at her hands, Colleen specifically asked Rudy not to name her in his complaints of workplace discrimination***.

102. Therefore, on behalf of Rudy, counsel respectfully requested that Rudy's indefinite suspension be lifted, and the Agency work with Rudy and his treating physicians in accordance with the interactive proves to reasonably accommodate Rudy's disabilities[16] and allow him to continue his employment with the DLA for a few more years.

103. On April 21, 2021, CP was issued a "Notice of Decision – Indefinite Suspension (non-disciplinary)" letter, effective August 1, 2021, from his Electronic

[16] Rudy would of course agree to having all meaningful and effective reasonable accommodations agreed upon and implemented prior to resuming work to put his employer at ease and to show good faith on his part of his eagerness to return to work full time for the federal government. Rudy's treating physicians would be willing to provide regular updates and compliance reports as well to verify that Rudy is always not a danger to himself or others as Ms. Weaver appeared to have such an erroneous belief.

Duplicating System Technician position and the federal service for failure to maintain access to classified and sensitive information.

104. Plaintiff remains on suspension to the current date for Ms. Weaver setting into motion a series of events that Rudy is a direct threat to the health and safety of others when he is in fact not.

105. Ms. Weaver allowed stereotypical assumptions and animus towards Rudy and disabled war veterans to color her judgment and consider disabled wear vets as a danger to society based on a base shooting at Pearl Harbor Hickam Naval Shipyard,

106. Ms. Weaver fabricated that Rudy was a danger in the workplace by making multiple reports to base police until she found an officer that would side with her and find Rudy to be a danger.

107. Instead of reasonably accommodating Plaintiff, Ms. Weaver fabricated a case against Plaintiff to remove what she perceived as a damage from the workplace without any specific evidence that Rudy was a direct threat to the health and safety of others, which adversely affected Plaintiff’s job performance further from the immense emotional distress Defendants caused Plaintiff.

108. During the very processing of an EEO complaint Ms. Weaver retaliated against Rudy and made up the allegations that Rudy was a direct threat to the health and safety of others using information going months back.

109. Ms. Weaver's actions were in direct retaliation from Rudy filing an EEO claim naming her the chief discriminator.

110. Defendant discriminated against Plaintiff by claiming he was a direct threat and failed to provide meaningful and effective accommodations and violated the Rehabilitation Act of 1973 (Section 504).

111. Rather than cease and desist from further discrimination and retaliation, Defendants, through its agents, doubled down in the failure to accommodate and engage in good faith in the interactive process and removed Rudy from the workplace.

112. Prohibited discrimination was the motivating factor in the actions of Defendants' agents including but not limited to actions and omissions of Ms. Weaver and the individuals who assisted her in discriminating and retaliating against Rudy.

113. As a direct and proximate result of the intentional discriminatory acts and practices of the Agency, the Agency's management level agents and Plaintiff's supervisors, Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation and other past and future pecuniary losses.

WHEREFORE, the Plaintiff demands judgment as follows:

(a)     Declaring that the acts and practices complained of here are in violation of the Plaintiffs rights as secured by the foregoing laws.

(b)     Awarding the Plaintiff injunctive relief, back-pay, front pay, interest and appropriate recovery for lost employment benefits, and other affirmative relief.

(c)     Awarding the Plaintiff compensatory damages against the Defendants jointly and severally liable, as a result of Defendants' discrimination against the Plaintiff on the grounds set forth herein.

(d)     For the recovery of costs and attorney fees as provided by statute.

(e)     For such other and further relief as the Court may deem just, fit, and proper.

DATED:  Honolulu, Hawaii, March 3, 2023.

/s/ SHAWN A. LUIZ
SHAWN A. LUIZ
Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RODOLFO T. ASUNCION, JR.

**(b)** County of Residence of First Listed Plaintiff ____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SHAWN A. LUIZ 6855Attorney at Law
841 Bishop Street, Suite 200Honolulu, Hawaii 96813
Tel. (808) 538-0500 E-mail: attorneyluiz@gmail.com

## DEFENDANTS

THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE

County of Residence of First Listed Defendant ____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
29 U.S.C.A. § 791, 29 U.S.C.A. § 794a and 42 U.S.C. § 1981a

Brief description of cause:
Discrimination based on Disability

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE
03/03/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Shawn A. Luiz

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants.<br>______________________________ | ) | CIVIL NO. ______________<br><br>DEMAND FOR JURY TRIAL |

DEMAND FOR JURY TRIAL

The Plaintiff, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands a trial by jury in this action.

DATED: Honolulu, Hawaii, March 3, 2023.

/s/ SHAWN A. LUIZ
SHAWN A. LUIZ
Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| RODOLFO T. ASUNCION, JR.<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendants.<br>_______________________________ | ) | CIVIL NO. _______________<br><br><br><br><br><br>**SUMMONS IN A CIVIL CASE** |

**SUMMONS IN A CIVIL CASE**

**TO: ALL NAMED DEFENDANTS**

A lawsuit has been filed against you.
Within 21 days after service of this summons upon you (exclusive of the day of service), or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Federal Rule Civil Procedure, Rule 12(a)(2) or (3)-you must serve on the plaintiff an answer to the attached Complaint or a motion under Rule 12 of the Federal Rules Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street
Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500
Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint. You must also file your answer or motion with the court.

___________________________ ______________________
CLERK DATE

__________________________
DEPUTY CLERK

EXCERPT OF RECORD, TAB 7

SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500
Fax (808) 564-0010
E-mail: attorneyluiz@gmail.com

Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RODOLFO T. ASUNCION, JR.,<br><br>Plaintiff,<br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendant. | CIVIL NO. 23-00119 LEK-KJM<br><br>PLAINTIFF RODOLFO T. ASUNCION, JR.'S NOTICE OF APPEAL; REPRESENTATION STATEMENT; EXHIBITS "1"-"3"; CERTIFICATE OF SERVICE<br><br>Honorable Leslie E. Kobayashi |

PLAINTIFF RODOLFO T. ASUNCION, JR.'S NOTICE OF APPEAL

NOW COMES the Plaintiff, by and through counsel of record, Shawn A. Luiz, Esq., and hereby appeals to the United States Court of Appeals for the Ninth Circuit from (1), the Judgment in a Civil Case, filed on October 31, 2023, attached hereto as Exhibit "1"; (2) the "Order Granting Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment", ECF No. 20, filed on September 14, 2023, attached hereto as Exhibit "2"; and (3), the

"EO: Court Order Denying Plaintiff's Motion for Reconsideration of the Order

Granting Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the

Alternative for Partial Summary Judgment, filed 09/14/23 [Document Number 20],

ECF No. 22, filed October 11, 2023, attached hereto as Exhibit "3".

     This appeal is brought pursuant to Rules 3 and 4(a) of the Federal Rules of

Appellate Procedure.

     Dated: Honolulu, Hawaii, November 30, 2023.

               /S/ SHAWN A. LUIZ
               SHAWN A. LUIZ
               Attorney for Plaintiff
               RODOLFO T. ASUNCION, JR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| RODOLFO T. ASUNCION, JR.,<br><br>Plaintiff,<br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendant.<br>______________________________ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 23-00119 LEK-KJM<br><br><br><br><br>REPRESENTATION STATEMENT<br><br>Honorable Leslie E. Kobayashi |

REPRESENTATION STATEMENT

Plaintiff, RODOLFO T. ASUNCION, JR, hereby identifies the following parties to this action:

*RODOLFO T. ASUNCION, JR.,*
*Plaintiff*
Represented by:
SHAWN A. LUIZ 6855
Attorney at Law
841 Bishop Street
Suite 200
Honolulu, Hawaii 96813
Tel. (808) 538-0500
Fax (808) 564-0010
attorneyluiz@gmail.com

*THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,*
*Defendant*
Represented by:
CLARE E. CONNORS
United States Attorney
District of Hawaii

SYDNEY SPECTOR
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Sydney.Spector@usdoj.gov


　　　　Dated: Honolulu, Hawaii, November 30, 2023.

　　　　　　　　　　/S/ SHAWN A. LUIZ
　　　　　　　　　　SHAWN A. LUIZ
　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　RODOLFO T. ASUNCION, JR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| RODOLFO T. ASUNCION, JR.,<br><br>Plaintiff,<br>vs.<br><br>THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE,<br><br>Defendant.<br>_______________________________ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 23-00119 LEK-KJM<br><br><br><br><br>CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy was served via ECF on the following on November 30, 2023.

CLARE E. CONNORS
United States Attorney
District of Hawaii

SYDNEY SPECTOR
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Sydney.Spector@usdoj.gov

Attorneys for Defendant
THE HONORABLE LLOYD J. AUSTIN, III,
SECRETARY OF DEFENSE

DATED:  Honolulu, Hawaii, November 30, 2023.

/s/ SHAWN A. LUIZ
SHAWN A. LUIZ
Attorney for Plaintiff
RODOLFO T. ASUNCION, JR.

EXCERPT OF RECORD, TAB 8

APPEAL

# U.S. District Court
# District of Hawaii (Hawaii)
# CIVIL DOCKET FOR CASE #: 1:23−cv−00119−LEK−KJM

Asuncion v. Austin
Assigned to: JUDGE LESLIE E. KOBAYASHI
Referred to: MAGISTRATE JUDGE KENNETH J. MANSFIELD
Case in other court: Ninth Circuit Court of Appeals, 23−04044
Cause: 29:0794 Job Discrimination (Handicap)

Date Filed: 03/03/2023
Date Terminated: 10/31/2023
Jury Demand: Plaintiff
Nature of Suit: 445 Civil Rights: Americans with Disabilities − Employment
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Rodolfo T. Asuncion, Jr.** represented by **Shawn A. Luiz**
841 Bishop Street, Suite 200
Honolulu, HI 96813
538−0800
Fax: 524−0010
Email: attorneyluiz@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The Honorable Lloyd J. Austin, III**
*Secretary of Defense* represented by **Sydney Spector**
Office of the United States Attorney
Prince Kuhio Federal Building
300 Ala Moana Blvd Ste 6100
Honolulu, HI 96850
(808) 541−2850
Fax: (808) 541−3752
Email: sydney.spector@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2023 | 1 | COMPLAINT *; DEMAND FOR JURY TRIAL; (PROPOSED) SUMMONS* against Lloyd J. Austin, III ( Filing fee $ 402 receipt number AHIDC−2807371.), filed by Rodolfo T. Asuncion, Jr. (Attachments: # 1 Civil Cover Sheet, # 2 Jury Demand, # 3(Proposed) Summons)(Luiz, Shawn) Modified on 3/6/2023 (eta). (Entered: 03/03/2023) |
| 03/06/2023 | 2 | NOTICE of Case Assignment: Please reflect Civil case number CV 23−00119 LEK−KJM on all further pleadings. (eta) (Entered: 03/06/2023) |
| 03/06/2023 | 3 | Summons Issued as to Lloyd J. Austin, III. (eta) (Entered: 03/06/2023) |
| 03/06/2023 | 4 | Order Setting Telephonic Rule 16 Scheduling Conference is set for 09:30AM on 5/1/2023 before MAGISTRATE JUDGE KENNETH J. MANSFIELD − Signed by CHIEF JUDGE DERRICK K. WATSON on 3/6/2023. **ATTACH THE SCHEDULING ORDER TO THE INITIATING DOCUMENT (COMPLAINT/NOTICE OF REMOVAL). THE SCHEDULING ORDER MUST BE SERVED WITH THE DOCUMENT.** (eta) (Entered: 03/06/2023) |
| 03/06/2023 | 5 | CIVIL Waiver of Service Packet ~ Notice to Parties Regarding Service Pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Attachments: # 1 AO 398 Notice of Lawsuit and Request to Waive Service of Summons, # 2 AO 399 Waiver of Service of Summons)(eta) (Entered: 03/06/2023) |

| | | |
|---|---|---|
| 04/14/2023 | 6 | EO: Assistant U.S. Attorney Sydney Spector informs the Court that they would like to request a 60–day extension of the Rule 16 conference as Defendants deadline to respond to the complaint is June 7, 2023. Plaintiffs counsel, Shawn Luiz, having no objection to the requested continuance. The request is granted.<br><br>The Telephonic Rule 16 Scheduling Conference previously set for 05/01/2023 IS CONTINUED TO 07/03/2023 at 9:30 a.m. before MAGISTRATE JUDGE KENNETH J. MANSFIELD. Scheduling conference statements are due by 06/26/2023.<br><br>Parties are to participate via telephone through our ZOOM Teleconference. Call–in information for this conference is below. Parties must connect to the conference at least five (5) minutes prior to the scheduled start time of the hearing.<br><br>Dial in number is 1–833–568–8864<br><br>Access Code: 160 8983 1896<br><br>*OBSERVERS: Call–in:1–650–479–3207, Code: 160 930 3683*<br><br>(MAGISTRATE JUDGE KENNETH J. MANSFIELD)(bbb) (Entered: 04/14/2023) |
| 04/17/2023 | 7 | NOTICE of Appearance by Sydney Spector on behalf of Lloyd J. Austin, III on behalf of Lloyd J. Austin, III. (Spector, Sydney) (Entered: 04/17/2023) |
| 06/06/2023 | 8 | *Defendant the Honorable Lloyd J. Austin, III, Secretary of Defense's MOTION to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment , ~~MOTION for Partial Summary Judgment~~ ; COS* Sydney Spector appearing for Defendant Lloyd J. Austin, III (Attachments: # 1 Memorandum in Support of Motion to Dismiss Complaint)(Spector, Sydney) Modified on 6/7/2023 (eta). (Entered: 06/06/2023) |
| 06/06/2023 | 9 | *Defendant the Honorable Lloyd J. Austin, III, Secretary of Defense's CONCISE STATEMENT of Facts in Support re 8 MOTION to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment filed by Lloyd J. Austin, III. (Attachments: # 1 Declaration of Joseph S. Somerville III, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Declaration of Kimberly R. Lewis, # 9 Exhibit A, # 10 Declaration of Bruce Mccarty, # 11 Exhibit A)(Spector, Sydney) Modified on 6/7/2023 (eta). (Entered: 06/06/2023)* |
| 06/16/2023 | 10 | EO: COURT ORDER SETTING BRIEFING SCHEDULE<br><br>On 6/6/2023, Defendant The Honorable Lloyd J. Austin III, filed Dkt. 8 ; a Motion to Dismiss.<br><br>Court sets the following Motion hearing and briefing schedule:<br>Opposition memorandum due: 7/18/2023.<br>Reply memorandum due: 7/25/2023.<br><br>Motion Hearing is set for 8/8/2023 at 09:45 AM by Video Conference Hearing before JUDGE LESLIE E. KOBAYASHI.<br><br>(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 06/16/2023) |
| 06/26/2023 | 11 | Scheduling Conference Statement *Defendant the Honorable Lloyd J. AUSTIN, III, Secretary of Defenses Rule 16 Scheduling Conference Statement; COS*. (Spector, Sydney) (Entered: 06/26/2023) |
| 06/26/2023 | 12 | Scheduling Conference Statement *PLAINTIFF RODOLFO T. ASUNCION, JR.S RULE 16 SCHEDULING CONFERENCE STATEMENT*. (Luiz, Shawn) (Entered: 06/26/2023) |
| 06/27/2023 | 13 | EO: In light of the 8 Defendant The Honorable Lloyd J. Austin III's Motion to Dismiss Complaint, or in the Alternative for Partial Summary Judgment set for 08/08/2023, the Telephonic Rule 16 Scheduling Conference previously set for 07/03/2023 IS CONTINUED TO 09/08/2023 at 9:30 a.m. before MAGISTRATE JUDGE KENNETH J. MANSFIELD. If not already filed, scheduling conference statements are due by 09/01/2023. |

| | | |
|---|---|---|
| | | Parties are to participate via telephone through our ZOOM Teleconference. Call–in information for this conference is below. Parties must connect to the conference at least five (5) minutes prior to the scheduled start time of the hearing.<br><br>Dial in number is 1–833–568–8864<br><br>Access Code: 160 8983 1896<br><br>*OBSERVERS: Call–in:1–650–479–3207, Code: 160 930 3683*<br><br>(MAGISTRATE JUDGE KENNETH J. MANSFIELD)(bbb) (Entered: 06/27/2023) |
| 07/18/2023 | 14 | MEMORANDUM in Opposition *PLAINTIFF RODOLFO T. ASUNCION, JR.S OPPOSITION TO 8 DEFENDANT THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT, filed June 6, 2023*;*Certificate of Service* filed by Rodolfo T. Asuncion, Jr. (Luiz, Shawn) Modified on 7/19/2023 to add linkage to underlying motion (eta). (Entered: 07/18/2023) |
| 07/18/2023 | 15 | CONCISE STATEMENT in Opposition *PLAINTIFF RODOLFO T. ASUNCION, JR. CONCISE STATEMENT OF FACTS IN OPPOSITION TO 8 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*; Certificate of Service filed by Rodolfo T. Asuncion, Jr. (Attachments: # 1 Declaration of Plaintiff, # 2 Declaration of Counsel, # 3 Exhibit "1", # 4 Exhibit "2", # 5 Exhibit "3", # 6 Exhibit "4")(Luiz, Shawn) Modified on 7/19/2023 to add linkage to underlying motion (eta). (Entered: 07/18/2023) |
| 07/25/2023 | 16 | MEMORANDUM in Support re 8 MOTION to Dismiss *Complaint, or in the Alternative for Partial Summary Judgment* MOTION for Partial Summary Judgment *Defendant the Honorable Lloyd J. Austin, III, Secretary of Defenses Reply Memorandum in Support of Motion to Dismiss Complaint, or in the Alternative, for Partial Summary Judgment [ECF No. 8]* filed by Lloyd J. Austin, III. (Spector, Sydney) (Entered: 07/25/2023) |
| 07/25/2023 | 17 | CONCISE STATEMENT of Facts re 15 Concise Statement in Opposition to Motion,, *Defendant the Honorable Lloyd J. Austin, III, Secretary of Defenses Counter Concise Statement of Facts in Response to Plaintiffs Concise Statement of Facts in Opposition [ECF No. 15] to Defendants Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment; COS* filed by Lloyd J. Austin, III. (Spector, Sydney) (Entered: 07/25/2023) |
| 08/02/2023 | 18 | EO: The Court determines that the Motion hearing on Defendants Motion to Dismiss (Dkt. No. 8 )is not necessary pursuant to Local Rule 7.1 (c), and hereby VACATES the hearing currently set for 8/8/2023. The matter is taken under advisement on the briefs.<br><br>(JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 08/02/2023) |
| 09/06/2023 | 19 | EO: By joint agreement and at the joint request of the parties, the Telephonic Rule 16 Scheduling Conference previously set for 09/08/2023 IS CONTINUED TO 11/08/2023 at 9:30 a.m. before MAGISTRATE JUDGE KENNETH J. MANSFIELD. Scheduling conference statements are due by 11/01/2023.<br><br>Parties are to participate via telephone through our ZOOM Teleconference. Call–in information for this conference is below. Parties must connect to the conference at least five (5) minutes prior to the scheduled start time of the hearing.<br><br>Dial in number is 1–833–568–8864<br><br>Access Code: 160 8983 1896<br><br>(MAGISTRATE JUDGE KENNETH J. MANSFIELD)(bbb) (Entered: 09/06/2023) |
| 09/14/2023 | 20 | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT re 8 – Signed by JUDGE LESLIE E. KOBAYASHI on 9/14/2023. |

| | | |
|---|---|---|
| | | On the basis of the foregoing, Defendant's Motion to Dismiss Complaint [ECF No. 1 ], or in the Alternative for Partial Summary Judgment, filed June 6, 2023, is HEREBY GRANTED. The Motion is GRANTED to the extent that summary judgment is granted in favor of Defendant. The Clerk's Office is directed to enter judgment and close the case on **September 29, 2023**, unless a timely motion for reconsideration of the instant Order is filed. (eta) (Entered: 09/14/2023) |
| 09/28/2023 | 21 | First MOTION for Reconsideration *by Plaintiff Rodolfo T. Asuncion, Jr.* Shawn A. Luiz appearing for Plaintiff Rodolfo T. Asuncion, Jr (Attachments: # 1 Declaration of Counsel, # 2 Exhibit "1")(Luiz, Shawn) (Entered: 09/28/2023) |
| 10/11/2023 | 22 | EO: COURT ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1 ], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT, FILED 09/14/23 [DOCUMENT NUMBER 20 ] (JUDGE LESLIE E. KOBAYASHI)(afe) (Entered: 10/11/2023) |
| 10/31/2023 | 23 | CLERK'S JUDGMENT entered on 10/31/2023 pursuant to ECF Nos. 20 , 22 . (eta) (Entered: 10/31/2023) |
| 11/30/2023 | 24 | NOTICE OF APPEAL by Rodolfo T. Asuncion, Jr. Filing fee $ 505, receipt number AHIDC−2927894. USCA No. 23−4044. (Attachments: # 1 Exhibit "1", # 2 Exhibit "2", # 3 Exhibit "3")(Luiz, Shawn) Modified on 12/18/2023 (eta). (Entered: 11/30/2023) |
| 12/08/2023 | 25 | Docketing Notice / USCA Case Number 23−4044 for 24 Notice of Appeal filed by Rodolfo T. Asuncion, Jr. (eta) (Entered: 12/18/2023) |
| 12/08/2023 | 26 | USCA Scheduling Order as to 24 Notice of Appeal filed by Rodolfo T. Asuncion, Jr., USCA No. 23−4044. (eta) (Entered: 12/18/2023) |